# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

IN RE:   Uber Technologies, Inc.,            )
Passenger Sexual Assault Litigation          )         MDL Docket No. 3084
                                             )

---

## INTERESTED PARTY RESPONSE AND MEMORANDUM
## OF PLAINTIFF IN SUPPORT OF CENTRALIZED RELATED CASES
## PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Interested Party Plaintiff and Respondent, Jane Doe (*Doe v. Uber*, 1:23-10745), respectfully submits this Interested Party Petition to Transfer Related Cases for Consolidated Pretrial Proceedings. Plaintiff agrees that transfer is useful, necessary, and supported by numerous common questions of fact and law in the Uber Passenger Sexual Assault Litigation. Plaintiff believes all pending actions should be transferred to and consolidated in the United States District Court for the Northern District of California, or in the alternative to the District of Massachusetts. For the reasons stated herein, Plaintiff respectfully requests an Order transferring Uber Passenger Sexual Assault Litigation actions to the Northern District of California for coordinated and pretrial proceedings.

## INTRODUCTION

Respondent incorporates by reference all arguments articulated in *Memorandum in Support of Plaintiffs' Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings* by Plaintiffs A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo (Doc. 24). Respondent agrees that transfer and coordination or consolidation is appropriate

given the common legal and factual issues the cases share. Transfer will avoid inconsistent rulings, preserve judicial and party resources, and aid in the efficient resolution of these cases.

This case, like those identified above, is filed by a survivor of sexual assault at the hands of an Uber driver who was supposed to safely transport Plaintiff to her destination. The cases against Uber are premised on the fact that Uber failed to adequately vet its drivers and failed to take appropriate safety precautions once it had notice that a subset of Uber drivers were sexual predators and were sexually assaulting Uber passengers on a widespread basis. The cases allege that Uber was aware of the problem but nevertheless failed to conduct appropriate background checks, failed to adequately train and supervise its drivers, failed to adequately respond to complaints about predator drivers, failed to adopt safety design changes in the Uber App, and failed to adopt standard safety measures such as video and audio surveillance.

## **ARGUMENT**

**I. Consolidation Is Appropriate Given The Number Of Related Actions Pending And The Likelihood Of Additional Actions To Be Filed.**

Consolidation is warranted given the number of actions already pending, the likelihood that additional actions will be filed, and the common questions of fact and law they share. Respondent understands that there may be over 30 cases filed and potentially hundreds, if not thousands, more to follow. Uber Technologies, Inc. is a worldwide app-based transportation company that provides transportation services throughout the entire United States. Rasier, LLC, is a wholly owned subsidiary of Uber. Together, Uber and Rasier operate the Uber App, founded in 2009, that connects customers to an Uber driver. The number of assaults recognized by Defendants alone in just four out of the fourteen years Uber has been in operation supports consolidation.

Indeed, in 2019, Uber publicly admitted that it had a sexual-assault crisis occurring in its company and in a safety report revealed that 5,981 sexual assaults occurred during Uber trips in

2017 and 2018. Uber released another safety report in 2022 that revealed 3,824 sexual assaults during Uber trips in 2019 and 2020. Extrapolating from what we know about the number of assaults occurring in just four years (9,805), a conservative, yet tragic, estimate of survivors exceeds 25,000. Consolidation now will avoid serial briefing, duplicative discovery, and inconsistent rulings, and will preserve judicial resources across the country.

The threshold requirement of Section 1407 is that there be questions of fact and law common to the cases for which MDL treatment is sought. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

The Actions here share a number of common factual and legal questions. The claims in each of those actions arise from the same course of conduct by the defendants. Among the numerous common questions of fact are:

- Uber's duty to provide passengers with transportation free from assault;
- Uber's knowledge that its drivers have been sexually assaulting its passengers;
- Uber's failure to adopt or improve its safety procedures and policies;
- Uber's failure to require sexual harassment or assault training for its drivers;
- Uber's failure to conduct adequate background checks before hiring its drivers and otherwise failing to ensure that its drivers were fit to drive passengers;
- Uber's failure to implement safety features into its app;
- Uber's failure to address passengers' reports of sexual harassment, assault, and rape by Uber drivers;
- Uber's failure to timely terminate drivers who assaulted passengers or were unfit to perform their duties;

- Uber's marketing tactics and failure to warn passengers of the risks of being sexually assaulted, harassed, or otherwise attacked by an Uber driver;

- Uber's status as a common carrier; and

- Uber's false statements indicating that would provide safe rides to passengers.

In addition to these common questions of fact and law, all of these actions are in the very early stages of litigation. In fact, the first case filed in the Northern District of California was just filed in the spring of this year. In light of the number of cases filed, the number of cases to be filed, the infancy of the litigation and the number of issues common to all of the cases merits consolidation into an MDL.

## II. The Northern District Of California Is A Suitable Forum.

Factors to consider for the most appropriate forum include: (1) the location of parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931–32 (J.P.M.L. 1980) (discussing factors); see also Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21. A forum that satisfies these factors and that already has pending cases is favorable. *Id.* at § 22.33, pp. 366–67. The Panel also looks for a forum that "i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require." *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

Uber is headquartered in Northern California, thus corporate witnesses and documents will be conveniently located. The Uber JCCP is being litigated in the San Francisco Superior Court thus providing further convenience for the Defendants. Finally, the Northern District of California is well versed in the successful oversight of MDL litigation. Respondent is confident that this

requested forum will effectively and efficiently manage the prospective docket should this matter be consolidated.

### III. The District Of Massachusetts Is Also A Suitable Forum.

In the alternative, Massachusetts is also a suitable forum should this Honorable Panel find in favor of consolidation. As of July 2023, the District of Massachusetts oversees only five MDLs, four of which is are in their final phases if not nearly closed. There exists only 837 individually filed cases within the District of Massachusetts' MDL docket. At least two of the larger MDLs in this District have reduced its docket tremendously, from 4,516 cases originally filed in MDL 2428, *In re: Fresenius GranuFlo/Naturalyte Dialysate Products Liability Litig.*, 17 remain. Only 270 cases in MDL 2768, *In re Stryker LFIT V40 Femoral Head Products Liability Litig.* remain out of 1,179 filed cases.

The District of Massachusetts has also shown to be effective and efficient in managing its MDL docket. Moreover, the Court house is essentially within sight of Logan International Airport making it an easily accessible with a number of direct flights from across the country.

### CONCLUSION

Respondent urges transfer and coordination or consolidation to the United States District Court for the Northern District of California. In the alternative, Respondent requests transfer and coordination or consolidation to the United States District Court for the District of Massachusetts.

Respectfully submitted,

**JANE DOE**
By counsel,

*/s/ Benjamin T. Carroll*

---

Benjamin T. Carroll, Esq.  (MA State Bar 703280)
Kenney & Conley, P.C.
100 Grandview Road, Suite 218
Braintree, MA  02184
781.848.9891
benjamin@kenneyconley.com
*Doe v. Uber, USDC of MA, 1:23-10745*

Dated:  August 18, 2023