**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation | MDL Docket No. 3084 |

**UBER'S RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER OF
ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................3

   A. Uber's Business .................................................................................................3

   B.  The California State Cases And Forum Non Conveniens Decision .......................4

   C.  The Federal Court Actions.................................................................................5

III.  ARGUMENT .......................................................................................................5

   A.  Plaintiffs Contractually Agreed To Proceed Only On An Individual Basis...........6

   B.  Centralization Is Not Appropriate Under Section 1407 ........................................6

   1.  Individualized Issues Far Exceed Any Common Issues ......................................7

     a.  The Core Factual Issues Are Individualized ....................................................8

     b.  Supposedly "Overlapping Legal Issues" Do Not Justify Centralization........11

     c.  Different State Laws Require Different Factual Inquiries ............................12

     d.  Any Common Factual Questions Are Not Complex Or Numerous ...............15

   2.  Centralization Will Not Promote Convenience Or Efficiency...........................16

     a.  Centralization Will Be Inconvenient .............................................................16

     b.  Centralization Will Be Inefficient .................................................................17

     c.  Informal Coordination Is Preferable To Centralization..................................18

   3.  Plaintiffs Fail To Show That The Northern District Of California Is The Most Suitable Forum ...........................................................................................19

IV.   CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Prods. Inc. "Thrilsphere" Contract Litig.*,
448 F. Supp. 271 (J.P.M.L. 1978) ...................................................................18

*In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*,
431 F. Supp. 906, 909 (J.P.M.L. 197...............................................................9

*Ayala* v. *Antelope Valley Newspapers, Inc.*,
59 Cal. 4th 522 (Cal. 2014) ...........................................................................13

*In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*,
544 F. Supp. 3d 1375 (J.P.M.L. 2021) .........................................................6, 18, 19

*In re Blair Corp. Chenille Robe Prods. Liab. Litig.*,
703 F. Supp. 2d 1379 (J.P.M.L. 2010) ...........................................................7

*Doe* v. *Uber Techs., Inc.*,
551 F. Supp. 3d 341 (S.D.N.Y. 2021) ..............................................................13

*Edwards* v. *Publishers Circulation Fulfillment, Inc.*,
268 F.R.D. 181 (S.D.N.Y. 2010) .....................................................................13

*In re Electrolux Dryer Products Liability Litig.*,
978 F. Supp. 2d 1376 (J.P.M.L. 2013) ...........................................................7

*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
341 F. Supp. 2d 1381 (J.P.M.L. 2018) ...........................................................9

*In re Hotel Industry Sex Trafficking Litigation*,
433 F. Supp. 3d 1353 (J.P.M.L. 2020) ...........................................................7

*Huang* v. *The Bicycle Casino, Inc.*,
4 Cal. App. 5th 329 (Cal. Ct. App. 2016)...................................................13

*In re Hyundai & Kia GDI Engine Mktg., Sales Practices, and Prods. Liab.
Litig.*,
412 F. Supp. 3d 1341 (J.P.M.L. 2019) ...........................................................15

*In re Iowa Beef Packers*,
309 F. Supp. 1259 (J.P.M.L. 1970) ...........................................................6, 15

*Jackson* v. *Stancil*,
253 N.C. 291 (N.C. 1960)................................................................................13

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
   652 F. Supp. 2d 1378, 1378 (J.P.M.L. 200 ...................................................11

*In re Narconon Drug Rehab. Mktg., Sales Prac. & Prods. Liab. Litig.*,
   84 F. Supp. 3d 1367 (J.M.P.L. 2015) ......................................................10

*In re Nutella Mktg. & Sales Prac. Litig.*,
   804 F. Supp. 2d 1374 (J.P.M.L. 2011) ....................................................15

*In re Scotch Whiskey*,
   299 F. Supp. 543 (J.P.M.L. 1969) ............................................................7

*In re SFPP, L.P., R.R. Prop. Rights Litig.*,
   121 F. Supp. 3d 1360, 1361 (J.P.M.L. 201 ..............................................11

*In re Skinnygirl Margarita Beverage Mktg. & Sales Prac. Litig.*,
   829 F. Supp. 2d 1380 (J.P.M.L. 2011) ..............................................10, 15

*In re Uber Techs., Inc., Wage & Hour Employment Practices*,
   158 F. Supp. 3d 1372 (J.P.M.L. 2016) ............................12, 16, 17, 18

*In re Varsity Spirit Athlete Abuse Litigation*,
   2023 WL 3828645 (J.P.M.L. 2023)....................................................8, 9, 19

**Statutes**

18 Pa. Cons. Stat. § 5702 ...........................................................................14

28 U.S.C. § 1407............................................................................*passim*

Tex. Occ. Code § 2402.114 (2017) ..............................................................13

Mich. Comp. Laws § 257.2107(7)(1)(a) (2016) ...........................................14

GA. CODE ANN. § 40-5-39(e)(5) (2020) .....................................................14

## I.    INTRODUCTION

Plaintiffs move for centralization of twenty-two[1] individual - - and highly individualized - - personal injury suits that are born out of third party criminal actions. The acts alleged by the plaintiffs include a wide range of conduct, from sexual comments to violent, criminal acts of sexual assault. This conduct, where it occurs, represents the worst of humanity and has no place on Uber's platform.

Plaintiffs' motion for centralization should be denied for two independent reasons. First, the plaintiffs contractually agreed in the Uber App Terms of Use agreement to proceed "on an individual basis only," and to not pursue any "coordinated [or] consolidated" action. Ex. J at 7. That alone should dispose of this motion in Uber's favor.

Second, these cases are ill-suited for centralization because they have little in common. Each involves different types of sexual misconduct allegedly committed by different drivers (none employed by Uber) against different plaintiffs, in different time periods and places, with different witnesses and under different circumstances. Plaintiffs' own counsel has stated that "the details and severity of the cases widely vary."[2] The core factual questions are thus unique to each case. To identify just some: Did the type of alleged misconduct involve offensive comments, non-consensual touching, physical violence, or some other heinous behavior?[3] Did the independent driver have any relevant history that was missed in a background check? Did the alleged incident occur inside the vehicle and

---

[1] In addition, Plaintiffs have filed notices of related actions for twenty-five cases. The total cases (including the noticed cases) involve incidents in twenty-two states (including the District of Columbia), and are pending in thirteen federal districts. These figures are based on filings as of August 18, 2023.

[2] *Uber Faces Mounting Sexual Assault, Harassment Lawsuits in San Francisco*, KRON4 (June 30, 2021), <https://tinyurl.com/59uauzjb>.

[3] The types of alleged misconduct span across the taxonomy established by experts for classifying incidents of sexual assault and misconduct. *See Helping Industries to Classify Reports of Sexual Harassment, Sexual Misconduct, and Sexual Assault*, National Sexual Violence Resource Center (2018), <https://tinyurl.com/2mhcn469>.

during a ride, or after the ride was over and the driver was not using the Uber App? What did the case-specific witnesses - - including the driver, any other passengers, law enforcement, treating professionals, and other third-parties - - observe? What kind of harm did the individual plaintiff allegedly suffer?

Even with respect to Uber, there is no common course of conduct and no common theory of causation. A central question will be what, if anything, could Uber have done to prevent the incident before it allegedly occurred - - *e.g.*, use different background checks or specific safety technologies like video cameras. That question depends on the unique circumstances of each case. The Uber App itself - - as well as certain safety features - - is visually and functionally different depending on the App version, location, time frame, and the user's smartphone device, and thus may be unique in each incident.

And that is before considering the different states' laws and regulations that will apply, depending on the place and time of the alleged incident. These cases involve incidents that allegedly took place in twenty-two different states - - none involves a California-resident plaintiff, because they cannot invoke diversity jurisdiction to sue in federal court. Accordingly, there is no common set of laws that apply across the cases.

As the San Francisco Superior Court recently found in the parallel state court cases: "Foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for the injuries." Ex. 1 at 14. The court thus concluded that "non-California cases" should be "refiled in other states, such that the resulting verdicts may more accurately reflect the governing law . . . in the fora with the greatest interest in their resolution." *Id.* at 19. Nevertheless, a number of those plaintiffs have refiled their non-

California cases in, or seek to transfer their cases to, California federal court, including in an estimated 28 cases here - - *i.e.*, the majority of the cases that are implicated by this motion.[4] Just as they did before the San Francisco Superior Court, Plaintiffs "ignore or understate the importance of other states' tort and regulatory laws in setting the standards by which Uber's liability" will be determined. *Id.* at 15.

Apart from all that, there is no cohesion among the plaintiffs: some have cases pending in the San Francisco Superior Court; some have filed a still-pending appeal of the California court's dismissal on forum non conveniens grounds; some have sought dismissal from that appeal; several have sought to stay their district court actions (some of which have been denied), while others are actively litigating Uber's 12(b)(6) motions.

Much more needs to play out before the true nature and extent of this litigation will be clarified. Given the demonstrable lack of commonality, Uber submits that an MDL never will be necessary or appropriate. Accordingly, this motion should be denied.

## II.   FACTUAL BACKGROUND

### A. Uber's Business

Uber is a transportation network company ("TNC") that uses its proprietary software to develop and maintain multi-sided, digital platforms. Through the Uber App, passengers in need of a ride can connect with independent drivers. TNCs like Uber are regulated on the state and local level through varying statutes and regulations, such as state-specific requirements for driver background checks. Uber's business operations and

---

[4] Uber's estimate is based on unique identifiers, including the plaintiff's name, initials, or Doe #s, in combination with factual allegations such as the date of incident.

decisions vary in accordance with local regulations, and regional teams responsible for those operations are generally led by a Regional General Manager. O'Connor Decl. ¶ 24.

Although Uber maintains one of its headquarters in California, it is a Delaware corporation with global operations. Uber's United States operations currently span thirty-seven offices across twenty different states. *Id.* ¶ 22. Uber's Centers of Excellence - - call centers that provide specialized support for critical incidents reported by users of the Uber App (like the various incidents alleged here) - - currently are located only outside California. *Id.* ¶ 23. Uber's executives and heads of various teams (whom Plaintiffs allege are relevant witnesses) are located in different regions all over the nation. *Id.* ¶ 25.

## B.  **The California State Cases And Forum Non Conveniens Decision**

There was a previous attempt to centralize and coordinate cases against Uber from all over the country. That attempt was made in San Francisco Superior Court, and involved almost 1,500 cases alleging sexual misconduct by independent drivers. Although the California cases were ultimately coordinated, the Superior Court granted Uber's motion to dismiss all of the 1,000 or so non-California cases on forum non conveniens grounds.

The Superior Court found that the non-California cases should be litigated in the state-of-injury: "Foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for the injuries," while "California courts have little or no interest in litigation involving injuries incurred outside of California by nonresidents." Ex. 1 at 14 (citation omitted). The Superior Court pointed to the "importance of other states' tort and regulatory law in setting the standards by which Uber's liability" will be determined, including the "key legal issues in these cases" - - *e.g.*, whether Uber is a common carrier or whether it adequately screened independent drivers. *Id.* at 15. The

court thus ordered the out-of-state plaintiffs to refile their individual actions in the courts of "other states" where venue is appropriate. *Id.* at 19. Those plaintiffs appealed the forum non conveniens decision; that appeal is still pending.

### C. <u>The Federal Court Actions</u>

The federal actions here allege that the plaintiffs were sexually assaulted by independent drivers with whom they were connected through the Uber App, and that Uber is liable for the conduct of the drivers in individual incidents that occurred in twenty-two different states.[5]

The federal complaints are substantially similar to the California state court complaints: they allege claims for vicarious liability, negligence, fraud and misrepresentation, and products liability.[6] Indeed, the majority of the federal actions here are cases that originally were filed in - - *and are still pending in* - - the San Francisco Superior Court. Instructed to refile in home states, they now attempt to bring their cases to a centralized California federal court. Every plaintiff here resides outside of California. Uber is a citizen of California for the purposes of diversity jurisdiction, so *none* of these cases involve a California-resident plaintiff.

## III. <u>ARGUMENT</u>

Plaintiffs' motion should be denied for two independent reasons: (1) the plaintiffs' contractual agreement with Uber prohibits centralization and coordination, and

---

[5] One of the recently filed actions that was the subject of a notice of related action, No. 23-cv-11991 (E.D. Mich.), alleges claims by a driver with respect to an alleged assault by a passenger. Dkt. 30. Plaintiff's counsel has now stated that the notice of tag-along into these proceedings was in error and will be withdrawn. Dkt. 60. The centralization proposed by Plaintiffs is inappropriate, including any suggestion that claims brought by drivers should be grouped in.

[6] The San Francisco Superior Court recently granted Uber's demurrer as to vicarious liability, fraud and misrepresentation, and products liability. *See* Ex. 3.

(2) individualized issues predominate over common ones, making centralization inconvenient, inefficient, and inappropriate under 28 U.S.C. § 1407.

A. **Plaintiffs Contractually Agreed To Proceed Only On An Individual Basis**

The Panel need not conduct any analysis under 28 U.S.C. § 1407 because this motion is barred by the plaintiffs' contractual agreement with Uber. Before any rider can use the Uber App, they must assent to Uber's Terms of Use, which establish a "contractual relationship" between Uber and each plaintiff. *E.g.*, Ex. J at 2. The Terms of Use provide that claims may be brought and litigated "on an individual basis only," not as a "collective, coordinated, consolidated, mass and/or representative action against Uber," and that "no action brought by you may be consolidated or joined in any fashion with any other proceeding." *Id.* at 7. Under those plain terms, Plaintiffs' motion - - which seeks to "coordinate[] or consolidate[] pretrial proceedings," Mot. at 1 - - is prohibited.

B. **Centralization Is Not Appropriate Under Section 1407**

A party moving for centralization bears the burden of showing that (1) the actions involve "common questions of fact" that are numerous and complex, (2) centralization would benefit "the convenience of the parties and witnesses," and (3) centralization would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407; *In re Iowa Beef Packers, Inc.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970). "Centralization under Section 1407 should be the last solution after considered review of all other options." *In re: Baby Food Mktg., Sales Prac. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021).

Plaintiffs have failed to meet that burden. These personal injury cases turn on highly individualized questions of fact that predominate over the few common questions.[7] Centralization will require one court to apply the different laws of multiple states-of-injury, and to manage disparate cases in which the vast majority of parties and witnesses are located out-of-state. As a result, centralization will be detrimental to both convenience and efficiency, and contravene the very objectives of Section 1407.[8]

### 1. Individualized Issues Far Exceed Any Common Issues

Centralization is appropriate only where the cases share "common questions of fact" that are "sufficiently complex and/or numerous to justify Section 1407 transfer." *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010). Because these cases and any common questions are not numerous, Plaintiffs must meet a heightened burden to show additional complexity. *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).[9]

Although commonality of *all* factual questions is not required, the Panel frequently denies centralization where "individualized facts . . . will predominate over the common factual issues alleged by plaintiffs." *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013). Here, individualized questions predominate. Indeed, Plaintiffs' counsel has acknowledged that these are "individual cases," and "the details and

---

[7] These types of personal injury cases have historically been filed in local venues (including federal courts where the incident occurred), and have proceeded efficiently as individualized cases without centralization. *See, e.g.*, *Doe* v. *Uber Techs.*, 20-cv-00922 (N.D. Cal.); *Doe* v. *Uber Techs.*, 20-cv-00370 (D. Md.)

[8] Indeed, Judge Martinez-Olguin of the Northern District of California has determined that several of these cases are not related cases under the applicable local rule. *See* Ex. 4.

[9] Plaintiffs speculate that there will be more cases now that the San Francisco Superior Court has granted Uber's forum non conveniens motion as to all non-California cases. Mot. at 1-2. But that decision is pending appeal, and the Panel has made clear that "the mere possibility of additional actions does not support centralization, even where thousands of actions are predicted." *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020).

severity of the cases widely vary." *See* n.2, *supra*. The San Francisco Superior Court also found that these are "individual sexual assault/misconduct cases," and specifically rejected the characterization that the cases are "corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims." Ex. 1 at 11.

      a.  <u>The Core Factual Issues Are Individualized</u>

          *i.  Each Independent Driver's Alleged Conduct*

As the San Francisco Superior Court has explained, to "prevail in [these] cases," each plaintiff "must first prove that an assault took place." *Id.* (citation omitted). Doing so requires individualized factual inquiries about each particular incident, independent driver, and plaintiff. There is no dispute that sexual assault is a deeply personal crime and that each incident is unique to the victim.[10]

The Panel recently denied centralization of individual sexual abuse lawsuits under similar circumstances in *In re Varsity Spirit Athlete Abuse Litigation*, 2023 WL 3828645 (J.P.M.L. 2023). There, the plaintiffs were athletes who competed in various gyms affiliated with defendant Varsity, a cheerleading company, and alleged that they were sexually abused by coaches or other individuals at those gyms. The plaintiffs claimed that the company "represented[ed] Varsity-affiliated gyms and coaches as safe while perpetuating a culture of athlete abuse and frustrating efforts to report abuse," *id.* at *1 - - similar to the allegations here that Uber "put in place a culture and policies that have hurt

---

[10] Experts agree that "[e]very survivor's experience is unique and valid," and "a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community." *Seeing the Whole Survivor: Why It's Necessary to Talk About Identity for Survivors as Individuals and in Groups*, National Sexual Violence Resource Center (Feb. 25, 2019), <https://tinyurl.com/2wbrev26>; *Survivor Stories*, Rape, Abuse & Incest National Network, <https://tinyurl.com/2s459j48> ("No one survivor's experience is the same."); Sarah M. Greathouse et al., *A Review of the Literature on Sexual Assault Perpetrator Characteristics and Behaviors*, RAND (2015), <https://tinyurl.com/p63v3ds7>.

many innocent victims," Dkt. 1-4, ¶ 44. And like here, the *Varsity* plaintiffs sought centralization on the basis that there would supposedly be vast corporate discovery.

The Panel rejected that argument, explaining that "any efficiencies to be gained by centralization may be diminished by unique factual issues." *Varsity*, 2023 WL 3828645, at *1. Despite that the cases shared some "common factual questions regarding" the corporate defendant's alleged scheme in perpetuating a culture of abuse, the Panel found that those common questions would be "overwhelmed by unique factual issues" concerning the individual perpetrators - - *e.g.*, the coaches - - as well as the "particulars of the abuse alleged by each plaintiff." *Id.* "Discovery regarding each individual [perpetrator's] conduct and their relationship to and interactions with the common defendants will not overlap." *Id.*

So too here. Individualized factual questions will overwhelm the common issues, and there will be no overlapping discovery regarding the "particulars of the abuse alleged by each plaintiff," *id.*, which include a wide range of conduct from threatened assault to non-consensual kissing to sexual assault. There also will not be be overlapping discovery as to "highly plaintiff-specific questions of damages" - - each alleged incident and each survivor's experience and injuries are unique, subjective, and highly personal. *In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 341 F. Supp. 2d 1381, 1382 (J.P.M.L. 2018).

### ii. Proving Causation

Factual questions about proximate causation are central to the plaintiffs' claims, and the Panel has long recognized that the "question of causation is an individual issue." *In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 909 (J.P.M.L. 1977). For example, Plaintiffs allege that the third-party background checks used by Uber were inadequate. But that allegation is relevant only if the alleged inadequacy of

a particular background check *caused* an individual plaintiff's injury - - *i.e.*, if the specific driver had any pertinent flags in his background, and if a different background check would have identified those flags and prevented the particular plaintiff's injuries. There is no common answer to those questions; nor can there be overlapping discovery to investigate the background of each individual driver. That lack of commonality is even more apparent when considering that background check requirements, in addition to other laws and regulations governing Uber's conduct, vary depending on the state and the time period.

### iii.  The Claims Against The Independent Drivers

Uber intends to join - - as it has elsewhere - - the independent drivers as third-party defendants, and to raise driver-specific defenses of superseding cause and comparative fault (which, of course, are governed by different laws depending on the state-of-injury). The countless driver-specific inquiries - - *e.g.*, the driver's personal motivations, any prior incidents, and the driver's possible affiliation with other parties, like fleet operators - - are unique to each case. Plaintiffs' counsel's decision to forego claims against the alleged perpetrators of the assaults does not change the reality that unique factual issues concerning the drivers are critical to resolving the claims.

### iv.  Plaintiffs' Fraud And Misrepresentation Claims

Plaintiffs' misrepresentation claims "involve significant case-specific facts, such as the specific representations  .  .  .  made to each plaintiff," *In re Narconon Drug Rehab. Mktg., Sales Prac. & Prods. Liab. Litig.*, 84 F. Supp. 3d , 1367-68 (J.M.P.L. 2015), and each plaintiff's "state of mind or reliance" on the representation that she saw, *In re Skinnygirl Margarita Beverage Mktg. & Sales Prac. Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011). Plaintiffs list *over a dozen* statements made over the course of nearly a

decade, but do not allege which plaintiff saw or heard which specific statement and how, if at all, each plaintiff relied on any statement to enter the particular vehicle.

As the San Francisco Superior Court found: "It is implausible, to state the obvious, that every one of those individual Plaintiffs actually saw and relied on each and every one of the statements." Ex. 3 at 14. Even more implausible is Plaintiffs' contention that "the impact of [Uber's] representations that it provides a 'safe ride' home," Mot. at 4, is a common issue - - *i.e.*, the plaintiffs all believed the same statements and made the decision to enter the vehicle based on those statements. Instead, questions about the "impact" of an alleged false statement - - whether the plaintiff saw the statement and relied on it - - is an exceedingly individualized issue that will require case-by-case discovery and evidence.

b. <u>Supposedly "Overlapping Legal Issues" Do Not Justify Centralization</u>

Plaintiffs do not address these individualized questions of fact. Rather, they contend that centralization is proper because "[t]hese cases against Uber have overlapping *legal* issues" - - including "common carrier liability, vicarious liability, the scope of Uber's duty to its passengers, the scope of Uber's duty to supervise drivers (whom it characterizes as 'contractors'), and the impact of its representations that it provides a 'safe ride' home, as well as other legal issues common" to the cases. Mot. at 4 (emphasis added).

But "seeking a uniform *legal* determination . . . generally is not a sufficient basis for centralization." *In re SFPP, L.P., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015). While Section 1407 expressly requires "common questions of fact," it says nothing about common questions of law. Parties may not use the centralization process "merely to avoid two [or more] federal courts having to decide the same issue." *In re Medi-Cal Reimb. Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009).

c. <u>Different State Laws Require Different Factual Inquiries</u>

Plaintiffs are also incorrect that the legal issues here are "overlapping." Mot. at 4. These cases allege incidents that took place in twenty-two different states. Those states' tort and regulatory laws set "the standards by which Uber's liability" will be determined, and courts in each state are situated to apply state-specific laws. Ex. 1 at 15.

The very issues that Plaintiffs contend are "overlapping" were already found by the San Francisco Superior Court to be the opposite - - they vary from state to state. The court explained: "As Plaintiffs acknowledge, key legal issues in these cases will include, among others, whether Uber is a 'common carrier,' whether it adequately screened drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect them against assailants. It is likely that those issues will be determined under the laws of the states where the alleged incidents occurred, not under California law." *Id.*

For similar reasons, the Panel denied centralization in *In re Uber Technologies, Inc., Wage & Hour Employment Practices*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016). There, the plaintiffs were drivers who claimed they were misclassified by Uber as independent contractors. The Panel concluded that those claims "rest on state-specific legal and factual inquiries that are not suitable for centralized pretrial proceedings." *Id.* As the Panel explained, the relevant legal standards "vary substantially from state to state and involve a broad range of factors which require consideration of distinct aspects" of the drivers' relationship with Uber. *Id.* Those individualized issues overwhelmed the limited common factual issues, such as Uber's "business practices concerning payment of gratuities and business expenses to drivers." *Id.*

12

### i. Plaintiffs' Vicarious Liability Claims

Plaintiffs contend that vicarious liability is an overlapping legal issue, but it is a prime example of variance in state-by-state legal standards that require different factual inquiries.[11] Indeed, the Panel has already determined that the dispositive threshold issue to the plaintiffs' vicarious liability claims - - whether drivers are employees or independent contractors - - is "not suitable for centralized pretrial proceedings." *Uber Wage & Hour*, 158 F. Supp. 3d at 1373. That issue is governed by widely disparate state laws. Some states have enacted statutes providing that drivers who use ride-share platforms are independent contractors "for all purposes," Tex. Occ. Code § 2402.114 (West 2017), while other states employ varying common law tests that turn on different facts. *Compare, e.g.*, *Edwards* v. *Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y. 2010), *with Ayala* v. *Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 169 (Cal. 2014). And different tests may apply even within the same jurisdiction, depending on whether the incident occurred before or after state statutes' effective dates.

### ii. Plaintiffs' Common Carrier Allegations

Likewise, Plaintiffs are wrong that "common carrier liability" is an "overlapping legal issue." Mot. at 4. The San Francisco Superior Court explained why it is not: states like Texas have "statutes and regulations that govern whether a TNC is a common carrier (it is not)." Ex. 1 at 14. Other jurisdictions apply state-specific multi-factor tests. *Compare, e.g., Huang* v. *The Bicycle Casino, Inc.*, 208 Cal. Rptr. 3d, 591, 598 (Cal. Ct. App. 2016), *with Jackson* v. *Stancil*, 116 S.E.2d 817, 824 (N.C. 1960). State laws also differ on whether

---

[11] As the Superior Court noted, there are numerous issues that are likely governed by varying state laws. Uber discusses a few illustrative, non-exhaustive examples, with a focus on the issues that Plaintiffs identified as "overlapping." Mot. at 4.

common carrier status is relevant for certain claims - - for example, where state law "no longer holds common carriers to a heightened duty of care; the ordinary standard of negligence applies." *Doe* v. *Uber Techs., Inc.*, 551 F. Supp. 3d 341, 357 (S.D.N.Y. 2021).

### iii. Plaintiffs' Negligence Allegations

State-specific laws also govern "the scope of Uber's duty" for negligence claims. Mot. at 4. As the San Francisco Superior Court observed, Plaintiffs claim that Uber breached a duty to, among other things, "adequately screen[] drivers," "install cameras in vehicles," and "warn [Plaintiffs] about or implement other measures to protect them against assailants." Ex. 1 at 15; *see also* Dkt. 1-4, ¶¶ 199-200.

Whether Uber has a duty to take those measures, and the contours of that duty, depend on the statutes, regulations, and laws of each state-of-injury. Even aside from the potential common carrier issues just discussed, the scope of duty is also tied to - - and in some jurisdictions, coextensive with - - state-specific laws governing TNCs, including different regulations as to "what criminal background checks [a TNC] must conduct." Ex.1 at 14. *See also, e.g.*, *Jones* v. *Awad*, 252 Cal. Rptr. 3d 596, 604 (Cal. Ct. App. 2019); GA. CODE ANN. § 40-5-39(e)(5) (2020); MICH. COMP. LAWS. § 257.2107(7)(1)(a) (2016). Varying state laws also govern any duty to implement other measures like in-vehicle cameras, especially because the legality of those measures may be questionable under certain states' consent-to-record laws. *See, e.g.*, 18 PA. CONS. STAT. § 5702 (1988).

### iv. Plaintiffs' Fraud And Misrepresentation Claims

Fraud and misrepresentation claims are governed by "materially different" common law "in the fifty states." *Lewis Tree Serv., Inc.* v. *Lucent Techs.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002). The "elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose."

*Id.* States also vary in whether they recognize certain theories of fraud, such as negligent misrepresentation. *See, e.g.*, *South County, Inc.* v. *First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994).

### d.   Any Common Factual Questions Are Not Complex Or Numerous

Questions justifying Section 1407 transfer must be (1) common, (2) factual, and (3) numerous or complex. Plaintiffs' motion includes a list of purportedly overlapping questions but, as established above, the majority of them are not common among the cases (*e.g.*, the "impact" of Uber's safety-related statements on each plaintiff), and not questions of fact at all (*e.g.*, whether Uber is vicariously liable). The few remaining questions - - even assuming that they are common questions of fact - - are certainly not numerous. *See* Mot. at 8. Nor are they complex, let alone "unusually complex" under Plaintiffs' heightened burden. *Iowa Beef*, 309 F. Supp. at 1260.

Plaintiffs do not even attempt to show that the questions here are complex. They are not. Plaintiffs contend that the cases share common questions about Uber's safety-related statements and "marketing tactics." Mot. at 8. But the Panel frequently denies centralization of misrepresentation actions on the basis that factual inquiries about a company's "marketing practices" and advertising statements are not sufficiently complex. *See, e.g.*, *Skinnygirl Margarita*, 829 F. Supp. 2d at 1381; *In re Nutella Mktg. & Sales Prac. Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011). Plaintiffs also argue that there are common questions about Uber's "knowledge" of statistics and data regarding certain unrelated incidents. Mot. at 8. But Plaintiffs fail to explain why the relevant factual inquiries will be "so complex and the accompanying common discovery so time-consuming" to justify centralization. *Iowa Beef*, 309 F. Supp. at 1260.

## 2. Centralization Will Not Promote Convenience Or Efficiency

Given that there is not a large number of cases here, Plaintiffs bear "a heavier burden to demonstrate that centralization is appropriate" to promote convenience and efficiency. *In re Hyundai & Kia GDI Engine Mktg., Sales Prac., and Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019). Plaintiffs cannot meet that burden.

### a. Centralization Will Be Inconvenient

Centralization will be inconvenient for the parties - - the plaintiffs, Uber, and the independent drivers (whom Uber intends to join as third-party defendants) - - and witnesses to incidents that took place in twenty-two different states. Only one incident alleged here occurred in California, and that case involves a plaintiff resident in Washington State. All of the plaintiffs and, in all likelihood, the vast majority of independent drivers, reside outside of California, as do witnesses like fellow passengers, police officers, healthcare providers, employers, and any eyewitnesses. Bringing all these cases together to one court will be inconvenient for all. In contrast, litigating these cases in the respective states-of-injury would minimize the inconvenience of long-distance travel and associated expenses.

Plaintiffs argue that the Northern District of California is convenient because Uber's "headquarters are in San Francisco." Mot. at 14. But Uber's United States operations span thirty-seven offices across twenty different states, including many of the states-of-injury here. Uber's executives - - whom Plaintiffs allege to be relevant witnesses - - are located all over the nation, as are heads of various teams and regional leadership. And Uber's specialized call centers, which provide support for critical incidents reported by users, are located only outside California. The relevant documents concerning the alleged incidents - - cell phone records of the plaintiffs and independent drivers, healthcare records, law enforcement records - - are also located in the state-of-injury, not in San

Francisco. These cases are thus similar to the cases in *Uber Wage & Hour*, where the Panel denied centralization, reasoning that convenience favored "keep[ing] the actions pending in the states where [driver] plaintiffs . . . worked and where relevant witnesses and documents are likely to be found." 158 F. Supp. 3d at 1373.

      b.  <u>Centralization Will Be Inefficient</u>

Centralizing these cases will require one judge to apply the laws of at least twenty-two states, and/or conduct as many choice-of-law analyses. As a result, centralization will increase complexity and be less efficient. That is precisely why the San Francisco Superior Court granted Uber's forum non conveniens motion, finding that the "adverse effect" of tasking one court with applying multiple states' laws "would be dramatically magnified" by the inclusion of additional out-of-state cases. Ex. 1 at 16. Not only do states-of-injury have a greater interest in "cases involving injuries that occur within their borders," but courts in those states are more familiar with state-specific laws and can more efficiently resolve disputes. *Id.* at 14. That is also why the Panel denied centralization in *Uber Wage & Hour*, concluding that centralization would not "further the just and efficient conduct of the litigation" where the cases involved "state-specific legal and factual inquiries." 158 F. Supp. 3d at 1373.

Plaintiffs contend that centralization will "further fairness and efficiency by avoiding inconsistent pretrial rulings," arguing that "numerous identical motions have been filed (or are anticipated to be filed)," for which "[i]nconsistent rulings" will be "inevitable." Mot. at 11. That is simply not true. The filed motions are not "identical" or even similar - - Uber moved to dismiss the entire complaint in some cases, but only a subset of claims in others. *Compare* Ex. 5, *with* Ex. 6. The motions are also not "identical" because they are based on entirely different laws. For example, one motion relies on an Illinois statute

providing that TNCs like Uber are not common carriers, and argued that the negligence claims should be dismissed on that basis. *See* Ex. 5 at 4. By contrast, others do not challenge the common carrier allegation at the pleading stage, but argue that certain claims (for example, vicarious liability) cannot be sustained even assuming common carrier status. *See* Ex. 6 at 8-9. The point is that no rule or principle guarantees identical results under different laws and different legal theories. If courts reach different rulings under different state laws, that makes the rulings different, not "inconsistent."

Plaintiffs incorrectly argue that these cases "involve the same core discovery" about the same "underlying factual allegations and injuries." Mot. at 10. As in *Varsity Spirit*, the core discovery will be about the particulars of the incident as to each plaintiff, which Plaintiffs' counsel has admitted "widely vary" with respect to "details and severity." *See* n.2, *supra.* Plaintiffs contend there will be common "fact witnesses, and general liability and causation experts," Mot. at 10 - - but provide no basis for that assertion and do not address the case-specific witnesses discussed above. And there will be no "general liability and causation experts" - - these are not toxic tort cases implicating "general causation."

Overwhelming case-specific inquiries are necessary in each case, and centralization will do little to save work or minimize duplicative discovery. Instead, centralization - - by tasking one judge with managing and adjudicating individual cases based on different parties, different tortfeasors, different facts, different evidence, and different laws - - will only serve to increase complexity and decrease efficiency.

c.   Informal Coordination Is Preferable To Centralization

"Centralization under Section 1407 should be the last solution after considered review of all other options." *Baby Food*, 544 F. Supp. 3d at 1377. Where it is possible,

informal or "voluntary coordination," is "preferable to centralization." *Uber Wage & Hour*, 158 F. Supp. 3d at 1373.

To the extent there is any risk for duplicative "corporate discovery," Mot. at 4, informal coordination can "minimize the possibility of duplicative discovery." *In re 21st Century Prods. Inc. "Thrilsphere" Cont. Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). Informal coordination measures can be efficiently tailored to address the particular discovery issue, and unlike indiscriminate centralization, will avoid the concerns of inconvenience and inefficiency that led the San Francisco Superior Court to decline nationalizing these individual cases. Uber is willing to work to make discovery efficient for all parties and the various courts in the states where these incidents allegedly occurred.

Informal coordination is particularly achievable here, given the limited number of involved counsel and actions. Further, the "parties and the involved courts already have demonstrated they are willing to informally coordinate, as they implemented a staggered briefing schedule across the actions for motions to dismiss." *Varsity*, 2023 WL 3828645, at *2. There is thus no reason to resort to the "last solution" of centralization. *Baby Food*, 544 F. Supp. 3d at 1377.

### 3. Plaintiffs Fail To Show That The Northern District Of California Is The Most Suitable Forum

Even assuming that centralization is appropriate, there is no principled basis to select the transferee court proposed by Plaintiffs: the Northern District of California. That district actually makes the least sense because no plaintiff resides in California. Multiple cases involve incidents in states such as Texas and North Carolina. Forums in those states would thus be more convenient for a greater number of parties and witnesses. Counsel may

choose for tactical reasons to file out-of-state cases in the Northern District, but that does not make that district a suitable forum for the parties.[12]

There is nothing about the Northern District of California that renders it uniquely suited to oversee these diversity jurisdiction cases, which necessarily involve plaintiffs who reside *outside of California*. If the Panel grants centralization, it should consider the many capable judges - - for example, Judge James C. Dever of the Eastern District of North Carolina - - that have ably managed these pending cases in judicial districts across the country, and that have significantly lighter caseloads. No MDLs are currently pending in the Eastern District of North Carolina, in contrast to the seventeen MDLs centralized in the Northern District of California - - the highest number of any federal judicial district - - with cumulative active cases totaling well over 10,000.[13]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Panel should deny Plaintiffs' motion.

---

[12] For that reason, the San Francisco Superior Court granted Uber's forum non conveniens motion, holding that the substantial majority of cases filed in the California court (roughly 1,000 out of 1,500) involved non-California incidents and should have been filed in the states-of-injury. *See* Ex. 1.
[13] *MDL Statistics Report*, J.P.M.L. (Aug. 15, 2023) <https://tinyurl.com/ms8x9kkf>. One of the joining plaintiffs has suggested, without explanation, the District of Massachusetts as a venue. That district is distant from the vast majority of the plaintiffs, and the district already has been assigned five MDLs spanning in excess of 5,000 cases (nearly 1,000 of them active). *Id.*

DATED:  August 18, 2023

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**


By:     _/s/ Robert Atkins_
        **ROBERT ATKINS**
        1285 Avenue of the Americas
        New York, NY 10019
        ratkins@paulweiss.com
        Telephone: (212) 373-3183
        Facsimile: (212) 492-0183

*Counsel for Defendant-Respondents*
UBER TECHNOLOGIES, INC.
and RASIER, LLC