# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation | )<br>) MDL Docket No. 3084<br>)<br>) |

# REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

## I. INTRODUCTION

Uber Technologies, Inc. ("Uber") opposes Plaintiffs' motion for consolidation and centralization based on the erroneous assertion that the Terms of Use Agreement in Uber's App contractually prohibits Plaintiffs from pursuing coordination, and that Plaintiffs' cases lack the requisite commonality and thus are "ill-suited" for centralization. Both arguments fail.

Nothing in Uber's Terms of Use Agreement ("TSU"), even if enforceable, would constitute a contractual commitment to forgo judicial coordination of these cases. Indeed, Uber made the same argument in an attempt to avoid coordination of the California state-court sexual assault litigation. The California Judicial Council for Coordinated Proceedings ("JCCP") rejected Uber's argument and coordinated the hundreds of cases alleging sexual assault by Uber drivers in California state courts into a single proceeding. The Panel should do the same here.

Likewise, in deciding whether coordination is appropriate, the Panel should disregard Uber's red-herring arguments that state-specific issues predominate over common ones and recognize that transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases. Consolidation will eliminate duplicative discovery, avoid conflicting rulings and schedules, reduce litigation costs, and conserve the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth), § 20.131, at 219.

Nevertheless, Uber contends that federal coordination and centralization is improper. Its position is perplexing, however, as Uber made a completely contradictory argument during oral argument on Uber's Motion to Dismiss non-California resident plaintiffs from the JCCP based on *Forum Non Conveniens*. When Judge Ethan P. Schulman was weighing the potential consequences of Uber's *FNC* Motion, Uber's counsel, Robert Atkins, stated:

> It's true of every national personal injury product liability litigation…**it will convert this court into a magnet for what they call complex national litigation.** It won't just be this case. **This court and the other courts of the state will become the MDL center of what is supposed to be a federalized judicial system**…"[1]

Uber cannot have it both ways. When appearing before the state court, Uber argued that a federal MDL is the proper avenue for consolidation. Now Uber contends that a federal MDL is improper. Apparently, Uber's consolidation argument depends on what forum it is addressing.

## II.  ARGUMENT

### A.  Uber's Terms of Use Does Not Preclude Coordination.

Uber insists the "Panel need not conduct any analysis under 28 U.S.C. § 1407 because this motion is barred by the plaintiffs' contractual agreement with Uber."  Uber's Response at p. 6. Rather than prohibiting consolidation, however, this argument instead identifies another common issue that should be decided by the transferee court, if coordination is granted. To the extent the merits of this argument are to be decided by the JPML, Uber's argument fails for two reasons.

First, the TSU is unenforceable in light of Uber's failure to provide Plaintiffs with adequate and reasonable notice of the terms purportedly barring "coordinated, consolidated, mass and/or representative action against Uber." *Id*. Reasonable notice is a prerequisite to enforceability. *See*

---

[1] *See* January 4, 2023, Transcript from JCCP proceedings on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*, (p. 50: 9-10, and 13-18), attached as Exhibit 1 (emphasis added).

*e.g. Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st Cir. 2018) (holding that Uber failed to reasonably and conspicuously notify plaintiffs of arbitration clause in part because terms were "filled with other very noticeable terms that diminished the conspicuousness" of the arbitration clause); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) (holding user was not reasonably notified because the Terms of Use Agreement presented in a browsewrap manner did not prompt users to take affirmative action to demonstrate assent to the terms and conditions).

Second, the TSU is in direct conflict with the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFASASHA), 9 U.S.C. § 402, which explicitly states that predispute arbitration agreements and joint-action waivers are unenforceable in sexual harassment and sexual assault disputes. The EFASASHA provides, in pertinent part:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute… no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C.A. § 402(a). Uber's opposition ignores, however, that the coordination language in its TSU exists as part of its mandatory arbitration agreement,[2] which is unenforceable as to sexual harassment and sexual assault cases like those brought by Plaintiffs. *Id.*

Critically, the EFASASHA provides that no "predispute joint-action waiver" shall be valid or enforceable." *Id.* As defined therein, a "predispute joint-action waiver" is "an agreement … that would prohibit, or waive the right of, one of the parties to the agreement to participate in a joint, class, or collective action…" 9 U.S.C. § 401(2)). Thus, the provisions of Uber's TSU prohibiting consolidated actions are not valid and enforceable and do not require denial of consolidation here.

---

[2] *See* Uber's Terms of Use dated December 16, 2021, attached as Exhibit J to the Declaration of Alejandra O'Connor, Doc. 65-2.

To the contrary, the United States Congress has mandated that these claims be litigated according to the election of sexual assault and harassment survivors.

Notwithstanding the unenforceability of the joint-action waiver under the EFASASHA, Uber's own TSU states that Uber will honor a plaintiff's forum choice. ("Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election."). Section 2(b) of the TSU, pertaining to arbitration, provides:

> Notwithstanding the foregoing, this Arbitration Agreement shall not require arbitration of the following claims: . . . ii) individual claims of sexual assault or sexual harassment occurring in connection with your use of the Services. Such claims may be brought and litigated in a court of competent jurisdiction by you on an individual basis only . . .

Additionally, section 2 of the TSU contains a severability clause. Specifically, section 2(i) provides: "If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (1) the unenforceable or unlawful provision shall be severed from these Terms …" Thus, a fair reading of the TSU, drafted and unilaterally imposed on customers by Uber, is that Uber has promised to "honor" Plaintiffs' choice of forum. Moreover, on May 15, 2018, Uber expressed its purported commitment to "do the right thing, period" with respect to survivors of sexual assault.[3] As part of its commitment to "do the right thing," Uber announced that it was voiding the arbitration requirements in its TSU because it is "important to give sexual assault and harassment survivors control of how they pursue their claims." *Id.* Despite Uber's representations to the public, however, Uber now seeks to backtrack its position and impose unconscionable terms on sexual violence victims.

---

[3] *See* Tony West, *Turning the lights on*, (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on/ (last visited August 25, 2023).

Uber's joint-action prohibition is not clearly presented to consumers in the TSU and clearly conflicts with federal law and Uber's own messaging to its customers. As a result, the Panel should disregard Uber's misplaced joint-action waiver argument. Further, regardless of whether Uber's TSU is valid or enforceable, 28 U.S.C. § 1407 empowers the Panel to centralize these cases in a single district court for pretrial proceedings, and all underlying claims and defenses should be determined by the transferee judge.

### B. Transfer and Coordination of these Cases is Appropriate Pursuant to 28 U.S.C. § 1407.

#### 1. Common Factual and Legal Issues Predominate.

The threshold requirement of §1407 is that there be questions of fact and law common to the cases for which MDL treatment is sought. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

Here, *all* of the actions involve Plaintiffs who were sexually assaulted by Uber drivers who were supposed to safely transport Plaintiffs to their destinations. The same facts apply to all cases: (1) Uber created a platform allowing predator Uber drivers to sexually assault Plaintiffs; (2) all Plaintiffs were sexually assaulted by Uber drivers; and (3) Uber failed to provide safety measures to prevent Plaintiffs from sexual assaults by their drivers. Uber opposes centralization on the basis that Plaintiffs reside in different states and were assaulted by different drivers[4] at different times, while ignoring the overwhelming commonality among the issues presented in these actions.

---

[4] Except for one case, Uber drivers are *not* defendants in these actions. (*Jane Doe v. Uber Technologies, Inc. and Edward Roe*, 23-cv-10745 (USDC MA)).

Uber attempts to portray these cases as inherently different from other personal-injury consolidated actions and disregards the fact that *all* personal-injury MDLs — including pharmaceutical and medical-device litigations — involve case-specific facts. Pharmaceutical and medical-device coordinated proceedings always include cases with different individual facts, such as each plaintiff's medical history, prescribing or implanting physicians, injury-treating medical providers, different factors relevant to specific causation, and individualized damages. Indeed, the JPML addressed this precise issue in consolidating fluoroquinolone cases:

> In these circumstances, the existence of individualized factual issues does not negate the efficiencies gained by centralization. Almost all personal injury litigation involves questions of causation that are plaintiff-specific. Those differences are not an impediment to centralization when common questions of fact are multiple and complex. *See, e.g., In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.,* 65 F. Supp. 3d 1402, 1403 (J.P.M.L.2014). Once discovery and other pretrial proceedings related to the common issues have been completed, the transferee judge may suggest Section 1407 remand of actions to their transferor courts for more individual discovery and trial, if necessary. *See In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.,* 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).

*In re: Fluoroquinolone Prod. Liab. Litig.,* 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). Ultimately, if the Panel were to adopt Uber's position, no cases involving personal injuries would ever be consolidated, as *every* such MDL involves injured plaintiffs from different states who were harmed under different circumstances at different times.[5]

Uber's reliance on the Panel's denial of coordination in *In re Varsity Spirit Athlete Abuse Litigation*, 2023 WL 3828645 (J.P.M.L. 2023) is unfounded and without merit. The only similarity between the 9 plaintiffs in the *Varsity Spirit* cases and the numerous Uber Plaintiffs here is that

---

[5] Uber states that "these types of personal injury cases have historically been filed in local venues (including federal courts where the incident occurred) and have proceeded efficiently as individualized cases without centralization." *See* Uber's Response, note 7. Notably, Uber cites only 2 cases, both filed in 2020. *Id.*

the injuries involve an underlying sexual assault. The *Varsity Spirit* cases presented "unique factual issues concerning the various individual gym and coach defendants named in each action and the particulars of the abuse alleged by each plaintiff." *Id.* (MDL No. 3077, Doc. 128). The Panel further differentiated the proposed *Varsity Spirit* coordination by stating that "[w]hile the eight common defendants are named in all actions, there are approximately 30 individual coaches, gyms, and choreographers named as defendants in these actions. Most are named in just one action, and none are named in more than one district." *Id.* The Panel further distinguished the *Varsity Spirit* cases, noting that "(1) plaintiffs in all actions share counsel, (2) there are a limited number of involved actions and districts, and (3) the parties have been successfully informally coordinating the actions." *Id.* Here, there are at least 55 Uber Plaintiffs in 14 district courts, represented by at least 14 different firms, and apart from one case, Uber is the only Defendant.[6]

Uber further argues that because "sexual assault is a deeply personal crime and that each incident is unique to the victim," cases involving sexual assaults, like Plaintiffs, should not be coordinated. *See* Uber's Response, p. 8. Uber's argument fails. There are dozens of consolidated bankruptcy cases involving numerous individual sexual assault plaintiffs. *See, e.g., In re USA Gymnastics,* No. 1:18-bk-09108 (Bankr. S.D. Ind. Dec. 5, 2018); *In re Boy Scouts of America and Delaware BSA*, LLC, No. 20-bk-110343 (Bankr. D. Del.). Defendants filed for bankruptcy in these cases **because consolidation was preferred over litigating cases on an individual basis.**[7]

---

[6] See *supra* note 2. Uber claims that it may add its drivers as defendants. *See* Uber's Response, p. 10. Uber's mere hypothetical joinder of drivers should not bar coordination.

[7] *See* https://sfarchdiocese.org/press-release-the-roman-catholic-archbishop-of-san-francisco-files-for-chapter-11-bankruptcy-to-facilitate-settlements-with-abuse-survivors/ ("The Archdiocese has neither the financial means nor the practical ability to litigate all of these abuse claims individually and therefore, after much consideration, concluded that the bankruptcy process was the best solution for providing fair and equitable compensation to the innocent survivors who have been harmed.")

Uber's Response focuses heavily on the various causes of action and legal theories presented in these cases, alleging that these somehow are uncommon among Plaintiffs. But the common legal issues that pervade all Plaintiffs' cases are extensive, including common-carrier liability, vicarious liability, the scope of Uber's duties to its passengers, the scope of Uber's duty to screen and supervise its drivers, and the impact of its representations that it provides a "safe ride" home. These cases should be coordinated to centrally address those common issues, rather than requiring the parties to proceed piecemeal in numerous separate federal actions.

### a. Differing State Laws Do Not Prohibit Coordination.

Uber contends that legal theories such as vicarious liability, common-carrier allegations, negligence, fraud, and misrepresentation vary "state-to-state" and that "states' tort and regulatory laws set 'the standards by which Uber's liability' will be determined." *See* Uber's Response, p. 12. But the majority (if not all) MDLs involve plaintiffs residing and/or injured in different states, and thus involve varying state laws. In *In re Tepezza Marketing, Sales Practices, and Products Liability Litigation*, the Panel examined the defendant's motions to dismiss brought under varying state laws and stated "[w]e view having multiple judges resolve these common preemption arguments about the same drug as a highly inefficient arrangement that undermines judicial economy and needlessly increases the risk of inconsistent rulings." --- F. Supp. 3d ---, 2023 WL 3829248, *1 (J.P.M.L. June 2, 2023).

In alleging state-law differences, Uber relies heavily on the Uber JCCP proceedings in California. But notwithstanding Judge Schulman's *Forum Non Conveniens* ruling, the JCCP clearly recognized the many reasons why coordinating Uber passenger sexual assault cases is appropriate. As the presiding coordination judge of the San Francisco Superior Court (Judge Andrew Y.S. Cheng) stated, coordination is warranted because the cases:

> [S]hare similar facts and issues concerning the same central claims: whether Uber failed to adequately vet and train drivers regarding sexual assault, implement adequate safety measures to protect its passengers from being sexually assaulted, and adequately respond to driver complaints…Other overlapping questions on liability including common carrier liability, vicarious liability, the scope of Uber's duty (if any), Uber's breach (if any), causation, liability of drivers whether drivers are independent contractors or employees, whether Uber's app is defective, and the impact of Uber's public representations are also present…Liability centers on [Uber] not it's drivers…the parties will likely benefit from uniformly resolving the common factual and legal questions that predominate all issues.[8]

### b. There are Numerous Cases Involving Complex Issues.

There are currently 55 Plaintiffs filed in 14 federal districts around the country. As previously noted, hundreds, if not thousands, of similar cases likely will be filed. These cases are clearly complex. The complexity inherent in this litigation revolves around the corporate-liability case, which encompasses Uber's course of conduct over many years and involves hundreds of thousands of documents, multiple databases, scores of current and former corporate witnesses, multiple third-party companies, and extensive expert testimony on issues such as the safety standards for transportation companies, video surveillance, handling passenger complaints, and a host of other issues passenger safety issues. These factors weigh heavily in favor of coordination.

### 2. Coordination Will Promote Convenience and Efficiency.

Now is the most appropriate time to consolidate these actions. The litigation of these cases is not advanced in any court, but Uber has filed motions to transfer venue and motions to dismiss in several jurisdictions. Further, despite Plaintiffs' counsel's repeated efforts to informally coordinate actions, Uber has refused requests for informal coordination and opposed Plaintiffs' motion to relate cases in the Northern District of California. *See* Uber's Response, Exhibit 4. The Panel should not wait for inconsistent rulings or inefficient discovery to

---

[8] See JCCP Coordination Order p. 3, lines 9-21, attached as Exhibit 2.

commence before it transfers and consolidates these actions. Instead, it should act now in furtherance of § 1407's goal of avoiding such inefficiency in the first instance. Here, as in the Uber JCCP, "coordination will promote judicial efficiency, streamline discovery among a myriad of Plaintiffs (including avoiding duplicative deposition and trial testimony), facilitate settlement, and eradicate the possibility of different courts deciding on novel and overlapping issues with the same defendants."[9]

### 3. The Northern District of California Is a Suitable, Appropriate and Logical Forum for Coordination.

As discussed in Plaintiffs' transfer motion, the Northern District of California is convenient, accessible, and has ample MDL experience and docket capacity. At the time of filing this motion, there are 38 Uber Passenger Sexual Assault cases pending in the Northern District Court of California. Moreover, Uber is headquartered in San Francisco, and its top executives and most of its current and former employees also reside there. Thus, the Northern District of California is the most convenient forum in which to coordinate common discovery for these cases, resolve any related disputes, and conduct any trials in the MDL, as it has the best access to parties and witnesses. In light of these facts, Uber's assertion that "[t]here is nothing about the Northern District of California that renders it uniquely suited to oversee these diversity jurisdiction cases" is nonsensical. *See* Uber's Response, p. 20.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer these Uber Passenger Sexual Assault actions to the United States District Court for Northern District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

---

[9] See JCCP Coordination Order p. 4, lines 9-21, attached as Exhibit 2.

Dated: August 25, 2023                    Respectfully submitted,

*/s/ Rachel Abrams*
Rachel Abrams (Cal. Bar No. 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: rabrams@peifferwolf.com

***Counsel for Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo, D.P., Ashley Jones, S.D.***