**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| In re: Uber Technologies, Inc., Passenger | ) | |
| Sexual Assault Litigation | ) | MDL Docket No. 3084 |
| | ) | |
| | ) | |

---

**DECLARATION OF RACHEL ABRAMS IN SUPPORT OF PLAINTIFFS' REPLY**
**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR TRANSFER OF ACTIONS TO THE NORTHERN**
**DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407**
**FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

I, RACHEL ABRAMS, hereby declare and state:

1.      I am over 18 years of age, of sound mind, and capable of making this declaration. I have personal knowledge of the facts stated herein and could testify competently thereto if called as a witness.

2.      I am an attorney at the law firm of Peiffer Wolf Carr Kane Conway & Wise, LLP, attorneys of record for Plaintiffs-Movants. I am in good standing and a member of the Bar of the State of California. I submit this declaration in support of Plaintiffs' Reply in Support of Plaintiffs' Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

3.      Attached as Exhibit 1 is a true and correct copy of January 4, 2023, Transcript from JCCP proceedings on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*.

4.      Attached as Exhibit 2 is a true and correct copy of the Superior Court of California for the County of San Francisco's December 9, 2021, Order Granting Petition for Coordination in Uber Sexual Assault Cases.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 25th day of August 2023, at San Francisco, California.

*/s/ Rachel Abrams*

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE PRESIDING

DEPARTMENT NUMBER 304

---oOo---

| | |
|---|---|
| COORDINATION PROCEEDING | ) JUDICIAL COUNCIL |
| | ) COORDINATION PROCEEDING |
| | ) CASE NO. 5188 |
| | ) |
| IN RE:  UBER RIDESHARE CASES | ) No. CJC-21-005188 |
| | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

HEARING FOR MOTIONS TO STAY AND MOTIONS TO SEAL

WEDNESDAY, JANUARY 4, 2023

STENOGRAPHICALLY REPORTED BY:

ANGELA POURTABIB, CSR NO. 13714, RPR

JOB NO. 80175

**TRANSCRIPT OF PROCEEDINGS**

```
 1    APPEARANCES

 2

 3    FOR PLAINTIFFS:

 4          LEVIN SIMES ABRAMS, LLP
            BY:  WILLIAM A. LEVIN, Attorney at Law
 5          1700 Montgomery Street, Suite 250
            San Francisco, California 94111
 6          (415) 429-0700
            Wlevin@levinsimes.com
 7
            CUTTER LAW P.C.
 8          BY:  C. BROOKS CUTTER, Attorney at Law
                 CELINE CUTTER, Attorney at Law
 9          401 Watt Avenue, Suite 100
            Sacramento, California 95864
10          (916) 290-9400
            Bcutter@cutterlaw.com
11
            WILLIAMS HART BOUNDAS EASTERBY LLP
12          BY:  WALT CUBBERLY, Attorney at Law
            8441 Gulf Freeway, Suite 600
13          Houston, Texas 77017
            (703) 230-2200
14          Wcubberly@whlaw.com

15    FOR DEFENDANTS:

16          PAUL, WEISS, RIFKIND, WHARTON & GARRISON
            BY:  ROBERT A. ATKINS, Attorney at Law
17               ANDREA KELLER, Attorney at Law
            1285 Avenue of the Americas
18          New York, New York 10019
            (212) 373-3000
19          Ratkins@paulweiss.com
            Akeller@paulweiss.com
20
            PAUL, WEISS, RIFKIND, WHARTON & GARRISON
21          BY:  KYLE SMITH, Attorney at Law
            2001 K Street, NW
22          Washington, D.C. 20006
            (202) 223-7300
23          Ksmith@paulweiss.com

24

25
```

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

```
 1  Wednesday, January 4, 2023                    1:29 p.m.
 2                    P R O C E E D I N G S
 3                          ---oOo---
 4          THE COURT:  Good afternoon, everybody.  This is
 5  a hearing in the Uber Rideshare cases.  May I have
 6  appearances, please.
 7          MR. LEVIN:  Good afternoon, Your Honor.  Bill
 8  Levin for the plaintiffs.
 9          MR. CUTTER:  Good afternoon, Your Honor.  Brooks
10  Cutter for Jane Doe WHBE 3.
11          MS. CUTTER:  Celine Cutter also for Plaintiffs.
12          MR. CUBBERLY:  Walt Cubberly for Plaintiffs.
13  And, Your Honor, my friend and co-counsel, Mr. Cutter, is
14  going to be arguing today on behalf of Jane Doe WH 3.
15          THE COURT:  Thank you.
16          MR. ATKINS:  Robert Atkins on behalf of the
17  Uber defendants and with my colleagues Kyle Smith and
18  Andrea Keller.
19          THE COURT:  All right.  Welcome, everybody.  I'm
20  sorry to bring you out in such lousy weather.  Hopefully
21  it won't adversely affect any of you, but I do want to
22  get through the hearing expeditiously.  The court
23  actually has closed early this afternoon because of the
24  concerns about the storm which has not yet hit with full
25  force, but I don't want to put anybody certainly in
```

TRANSCRIPT OF PROCEEDINGS

1   harm's way, so -- or interfere with travel plans.  So

2   we'll do our best here, but if at any point anybody has a

3   concern, please let me know.

4          So before we get to the main topic before us,

5   which are the -- what I'll call for sake of abbreviation

6   the FNC motions, that is, the forum non conveniens

7   motions, I wanted to raise just a couple of housekeeping

8   issues, if you will, just to get some confirmation that I

9   understand what's going on in the cases.

10         First of all, in connection with the briefing on

11  these motions, as I understand it, there were four

12  motions to seal filed:  Two by Uber in connection with

13  its moving and reply papers, and one each by each of the

14  named plaintiffs who are the subject of the motions.

15         And none of those four motions to seal is

16  opposed.  Do I have that correctly?

17         MR. CUBBERLY:  Yes, Judge.

18         THE COURT:  Okay.  Thanks, Mr. Cubberly.

19         MR. SMITH:  Yes, Your Honor.

20         THE COURT:  So with apologies, I haven't had a

21  chance yet to get to them, but I will.  If anybody wants

22  to add any argument to what's already set forth in the

23  moving papers, by all means do so.  I will bring to your

24  attention the --

25         THE CLERK:  There are six motions to seal.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

```
 1            THE COURT:  There is six motions to seal?  The
 2    clerk tells me there's six, not four.
 3            MR. SMITH:  Your Honor, I think there's two -- a
 4    motion associated with Uber's two opening briefs and
 5    Uber's two reply briefs --
 6            THE COURT:  Oh, I see.
 7            MR. SMITH:  -- and two for the opposition
 8    briefs.  I apologize, Your Honor.
 9            THE COURT:  Got it.  Thanks.  It's a little easy
10    to get lost in all the paper here.
11            As I indicated in the -- in a footnote, I think,
12    in the tentative ruling, I made an effort when I drafted
13    the tentative to avoid disclosing or divulging anything
14    that either party -- any party wishes to have filed under
15    seal, but of necessity, I had to address some of the
16    facts.
17            But -- so I'll just invite any of you -- if
18    there's anything set forth in the tentative that you feel
19    uncomfortable with.  I tried to do it at a level of
20    generality where it wouldn't cause discomfort, but let me
21    know if there's a problem, and I'll be happy to fix it.
22            MR. SMITH:  Nothing for the Uber defendants,
23    Your Honor.
24            MR. CUBBERLY:  Nothing for Jane Doe WH 3.
25            THE COURT:  Okay.  Mr. Levin?
```

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1          MR. LEVIN:  Your Honor, nothing.

2          THE COURT:  Okay.  Great.

3          Second, there's another thing that's gotten away

4    from me here a little bit, and that is there are, I

5    believe, pending coordination petitions before me that I

6    have not yet ruled on that is with respect to add-on

7    cases.

8          As I understand it, there's at least one that's

9    unopposed -- indeed, it's stipulated -- that involves a

10   certain number of cases.  I don't know how many.

11         And then there is one that is opposed, and that

12   relates to a case filed by the Dordick Law Corporation in

13   Los Angeles County Superior Court.  So, again, with my

14   apologies for not being totally up to speed on all of

15   this, do I have that right, or are there more than one

16   stipulated petitions that are pending?

17         MR. SMITH:  Your Honor, I'd like to check before

18   I make a firm representation.  I believe you have it

19   exactly right.  Certainly as to the one opposed petition,

20   that's right.  There is one plaintiff who is opposing,

21   and that is the matter Your Honor mentioned.

22         THE COURT:  Okay.  All right.  Well, maybe you

23   can just let the clerk know.  I will catch up on that,

24   but as I say, this case has generated lots of paper, and

25   it's -- it can be a challenge given everything else.

TRANSCRIPT OF PROCEEDINGS

1          MR. SMITH:  Your Honor, if I may ask the court.

2   Is there a procedure for submitting at least the

3   stipulated notices of add-on that would facilitate the

4   court's review or be more convenient for the court?

5          THE COURT:  I mean, it's the procedure that

6   you've been using, which is e-filing them.  And generally

7   speaking, as those things ping across my screen, I pay

8   attention to them.  But as with all of us in this

9   electronic era, at some point, I got snowed under, so --

10  to be candid about that.

11         MR. SMITH:  Thank you, Your Honor.

12         THE COURT:  Okay.  Unless there is any other

13  preliminary matters that anybody wishes to raise -- and

14  seeing none -- we're here primarily to discuss the FNC

15  motions with respect to two of the plaintiffs.

16         I issued -- and I trust you received -- a

17  lengthy written tentative ruling yesterday granting both

18  of those motions for the reasons stated.

19         And, Mr. Levin, am I going to hear from you

20  first?

21         MR. LEVIN:  Yes, Your Honor.

22         THE COURT:  Okay.

23         MR. LEVIN:  In light of the storm and your

24  tentative, I'm going to focus primarily -- is this coming

25  through good enough?

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

 1          THE COURT:  I can hear you fine.

 2          MR. LEVIN:  Okay.  That's important.

 3          THE COURT:  I do know that we have additional

 4     counsel sitting in remotely by phone, and I'm not sure,

 5     frankly, which microphone connects to that.

 6          MR. LEVIN:  I had a 50/50 chance, and I was

 7     wrong.

 8          THE COURT:  Okay.

 9          MR. LEVIN:  Okay.  So I'm going to focus

10     primarily on the public interest factors that the court

11     focused on.

12          Mr. Cutter is going to address and suggest a

13     structural solution that we believe accommodates the

14     court's public interest concerns, Uber's concerns, and

15     the plaintiffs' concerns when he gets up to speak.  But

16     for context, I want to talk a little bit about the public

17     interest factors.

18          And even before that, I want to clarify

19     something because it was in your tentative about the

20     stipulation that Mr. Cubberly and I think we made.

21     Because the tentative suggests that we were somehow in

22     our opposition repudiating it.

23          And the way that, at least, we understood what

24     we agreed to -- and we still agree to it -- is that after

25     Your Honor rules, we will meet and confer with Uber to

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

1  figure out which of the cases the ruling touches and

2  stipulate that that's the fact.  And if there are cases

3  we think it doesn't touch, we'll address that with

4  counsel first and then the court.

5       That's what we think we agreed to, and we do

6  agree to.  We didn't intend to preclude us arguing in our

7  opposition that extrapolation was a bad idea or that it

8  should be case-by-case.  And I think that that's kind of

9  where the confusion may have come in, and we're sorry if

10  we created that confusion.

11       So coming to the public interest factors.  And

12  we really kind of need to start with the context that we

13  are in.  There's a -- you know, upwards of a thousand

14  cases, Your Honor.  There is a coordination order.

15       And if the motion is granted, we all know there

16  will be a large number of cases that will need to be

17  refiled in state courts and federal courts.  Obviously a

18  problem for the plaintiffs, but potentially a problem for

19  the court because other courts will be doing what you're

20  trying to do, which is manage discovery.

21       But -- so starting with Stangvik, which is

22  rooted in fundamental fairness and says we got to

23  consider the public interest, private interest.  We got

24  to do it flexibly, and we think we have a flexible

25  proposal.  And we can't overemphasize, you know, one

TRANSCRIPT OF PROCEEDINGS

1   factor as compared to another.  So that's kind of where

2   we are with Stangvik.

3           Now, Stangvik -- and Your Honor pointed out the

4   number of cases and the court congestion issue in your

5   tentative; right?  But we think a crucial difference here

6   as supposed to Stangvik is that in Stangvik, those cases

7   were not in front of one judge.  They were not

8   coordinated.  And so each and every judge had to address

9   issues like you had to in these cases; right?  With

10  demurrers and stuff like that before there was a

11  coordination.

12          But in Stangvik, there was no alternative.  It

13  was going to be judges, judges, judges, courtrooms,

14  courtrooms, courtroom all dealing with that.  This is

15  somewhat different.

16          The other thing that I think is different from

17  the facts of Stangvik is they were very concerned about

18  the fact that all the evidence and -- was overseas in

19  foreign countries and that foreign countries, they didn't

20  want to interfere with other countries' laws.  And there

21  was no real way to get the evidence to California.  And

22  there were hundreds of people and doctors and medical

23  records.  A little bit different here.

24          In Hansen, which the court discussed, it was

25  very different in that everything happened in Montana,

TRANSCRIPT OF PROCEEDINGS

1    and all of the -- there were 200 asbestos defendants in

2    the case but only two of them were California residents.

3             And the plaintiff was in Montana, but the

4    exposure happened in Montana, and nothing happened in

5    California at all except for the fact that two defendants

6    were domiciled here out of 200 defendants.

7             Now, here, a lot happened in California over a

8    ten-year period.  All of the acts and omissions that we

9    allege and all of the areas that we asked about when we

10   propounded our interrogatories.  Ten subject areas having

11   to do with cameras and vetting drivers.  And there's ten

12   of them.

13            And they identify themselves a thousand-plus

14   witnesses who are no longer Uber employees, who addressed

15   those issues when they were Uber employees, who are

16   California residents.

17            That's not something that was true in Hansen.  A

18   course of conduct -- corporate conduct and lots of

19   witnesses over a ten-year period in California.

20            Similarly, in Morris, there were 14 defendants,

21   only two of which were domiciled in California.  And the

22   toxic exposures occurred in Texas over an extended period

23   of time.  And everything that happened, other than the

24   fact that two defendants resided here, happened in Texas.

25            Similarly, in Boaz in New York, the injuries

TRANSCRIPT OF PROCEEDINGS

1   occurred in New York.  There were a lot of plaintiffs.

2   Only two of them were from California.  Nothing happened

3   in California.  It was a New York corporation.  The

4   witnesses were in New York.  The evidence was in

5   New York.

6           In this case, we don't have multiple defendants.

7   We have one defendant who is headquartered by their own

8   choice in California.  And the reason that I think it

9   maybe got a little bit confusing -- the reason we raised

10  the general jurisdiction argument is not because we think

11  it's the same as forum.  It's -- but they are both based

12  on fundamental fairness and due process, and, really, the

13  -- where this would go is, well, sure.  It's -- it's

14  fundamentally fair to bring the cases in California, but

15  it's fundamentally unfair for them to proceed under forum

16  doctrine.

17          And you could definitely -- we don't disagree

18  that that's an outcome.  That's not a precluded outcome.

19  But we're trying to make a point that -- not only

20  U.S. Supreme Court, but California Supreme Court.

21  They're saying, "Look.  If your headquarter is here, any

22  person can bring any claim from anywhere here because

23  it's -- you're here."

24          Okay.  That's the only reason that we brought it

25  up.

TRANSCRIPT OF PROCEEDINGS

1          So here we have a California company.  A course

2     of conduct over a long period of time that has affected a

3     lot of people, residents and nonresidents.  That

4     implicates a lot of former Uber employees.  That is not

5     where we were in Morris or in Boaz or in Hansen.  And --

6          THE COURT:  So I take your point.  I understand

7     it.

8          MR. LEVIN:  Okay.

9          THE COURT:  But doesn't that lead to the next

10    question, which is, well, which forum has a greater

11    interest in regulating the conduct?

12         And one of the points that the tentative makes

13    is these are companies -- that is, Uber and its

14    competitors are companies that are called by the somewhat

15    awkward title transportation network companies, TNCs,

16    which are regulated on a state-by-state basis, often by

17    -- I think by the public utilities commissions of the

18    different states.

19         So what one company may be required to do in

20    California and another in Texas and another in Montana or

21    New York may be very different.

22         MR. LEVIN:  Okay.  And I understand that.  And

23    so I think I can answer that this way.  I'm going to

24    discuss a little bit why we think California has a more

25    compelling interest than Texas, but, also, I think it's

TRANSCRIPT OF PROCEEDINGS

1   worth noting that we have two cases -- two cases, but a

2   list from Mr. Atkins of, like, 900 some odd cases.  From

3   other states.  Not just Texas.

4          And we don't really know the TNC, you know,

5   issues.  Some of the states don't have TNC regulations.

6   Some of them may have TNC regulations that were passed

7   after the person was assaulted.

8          THE COURT:  Well, and I think that's true of

9   Hawaii, which is the subject of Mr. Cubberly's client's

10  action; right?

11         MR. LEVIN:  Yeah.  It may be, yes.

12         THE COURT:  But then that -- you know, like

13  everything else in a lawsuit, that just leads to further

14  questions.  Well, are those regulations applicable

15  retroactively, or were they meant to restate existing

16  Hawaii tort law?  Or whatever.

17         MR. LEVIN:  And when Mr. Cutter gets up, you

18  know, we'll talk about how this conflict of law issue and

19  choice of law issues, we think, can be favorably

20  addressed by the court and by the parties in a way to

21  obviate and eliminate some of these problems that your

22  question portends.

23         But I think any state is going to have an

24  interest in an injury that occurs in its state.

25         THE COURT:  Mm-hmm.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1      MR. LEVIN:  And so -- and, you know, in the

2  application of its laws.  California also has laws and an

3  interest in regulating the conduct of a corporation

4  headquartered here addressing the injuries to residents

5  and non-residents who were injured from -- by a

6  California corporation.

7      And the thing about rideshare that's -- and the

8  thing about Uber that's really different than most

9  contexts is that I think if the interest of jurors -- if

10  you pulled jurors in and asked them, "Do you only care

11  about sexual assaults that happen to people who are

12  California residents," then they'd say, "No.  My family

13  lives over there.  My business colleagues live over here.

14  We have relatives.  We travel."

15      So I think the interest -- and Uber is a big

16  defendant.  A big company here.  A big employer.  And so

17  I think you can argue that, yes, of course Texas has an

18  interest, but then California has a more compelling

19  interest because Uber decided to set up its headquarters

20  here.  Uber's conduct occurred here.  Uber -- the sexual

21  assault victims began here.  I mean, it just began here.

22      Early -- Uber didn't always become a

23  multinational corporation.  The early days and some of

24  the sexual assault victims, they were just starting in

25  California and branching out to other ones.  So --

TRANSCRIPT OF PROCEEDINGS

1          THE COURT:  Let me ask you a hypothetical

2   question, and then I don't mean it to sound --

3          MR. LEVIN:  No, that's fine.

4          THE COURT:  -- tongue in cheek.  But Uber is --

5   if I recall correctly, is a Delaware corporation or a --

6   it's a Delaware corporation.

7          I assume -- I don't know, but I assume that some

8   of the cases here arose out of incidents that occurred in

9   Delaware.  Which state's interest is greater?

10   California's, where Uber is headquartered, or Delaware,

11   where it's incorporated?  Presumably, that's kind of a

12   draw, isn't it?

13          MR. LEVIN:  That would be.  I don't know whether

14   there are any cases.

15          THE COURT:  I mean, I haven't looked, and,

16   frankly, I didn't -- you know, the math that I did that

17   came up with 925 was an approximation based on the length

18   of that appendix and multiplying the number of entries

19   per page times the number of pages.  So that may be a

20   little bit -- it's an approximation.

21          But Uber tells me that there are cases here that

22   arise out of 50-plus jurisdictions across the

23   United States, so, presumably, that means there is some

24   Delaware cases.

25          MR. LEVIN:  I have no reason to dispute that.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1  I'm willing to assume that there are Delaware cases.

2          You know, and part of that, when you start

3  getting into which state has a bigger interest and try

4  and implement this order with a list, Exhibit A of 900

5  some odd cases, where all we know about them is Uber

6  believes that they were nonresidents.  You know, we don't

7  know a lot more about them.

8          THE COURT:  Well, you know -- you know what your

9  own clients have responded to discovery on in filling out

10  those fact sheets; right?

11          MR. LEVIN:  Yeah.  Sure.  I mean, I'm not saying

12  we know nothing about them.  But the -- since we don't

13  have a final order, the question you asked is, "Okay.

14  Wouldn't it be different if it was Delaware versus

15  California?"

16          THE COURT:  Yeah.  I mean, that's just one

17  example.

18          MR. LEVIN:  Yeah.  Wouldn't it be different if

19  it was California versus a state that didn't have TNC

20  regulations?  Perhaps.

21          Would it be different if the TNC regulations

22  came after the sexual assault?  Perhaps.

23          And that's what I mean about -- not that we

24  can't do it, and we agreed to try to do it.  But if we're

25  going to go down this path, there are some problems just

TRANSCRIPT OF PROCEEDINGS

1    sorting them all out.  That's all.

2            THE COURT:  Okay.  I understand.

3            MR. LEVIN:  If I may turn back to the public

4    interest because I -- the court congestion.  You know,

5    for example, Your Honor, you're assuming certain things

6    about the burden on this court if the cases remain here.

7            And we don't share that view that you're going

8    to -- that the extra -- the non-resident cases is going

9    to create, you know, extra work for you.  And Mr. Cutter

10   can explain how we can structure this so that doesn't

11   happen.  So you don't have to -- there's no extra work.

12           But in Bristol Myers Squibb, the California

13   Supreme Court, when it went up to the U.S. Supreme Court

14   -- which reversed only on personal jurisdiction -- has a

15   section in it that is entitled -- and it's under the

16   forum part of the decision.  It's still good law.  And

17   the section is entitled, "Judicial Economy and the Shared

18   Interest of Interstate Judicial System."

19           And there they say, "BMS argues that it would be

20   a waste of California's judicial resources to provide a

21   forum for the nonresident plaintiffs."

22           They go on to say, "To be sure, a single court

23   hearing the claims of hundreds of plaintiffs is a

24   significant burden on the court, but the overall savings

25   of time and effort to the judicial system, both in

TRANSCRIPT OF PROCEEDINGS

1   California and interstate, far outweigh the burden placed

2   on the individual forum court."

3            And I say that because two things happen.

4            THE COURT:  May I just interrupt and ask you to

5   give me the jump cite to that page --

6            MR. LEVIN:  Yes.

7            THE COURT:  -- that you just cited?

8            MR. LEVIN:  Yes.

9            THE COURT:  Or quoted, I should say.

10           MR. LEVIN:  Yeah.  It is -- it's subsection --

11   it's 1 Cal.5th 783, and this subsection that I am

12   discussing is in 811, and it has -- within 811, there is

13   a little small C and a small D.  Small D is -- discusses

14   the fact that the local court should consider the impact

15   on other courts and judges.

16           And, obviously, there is going to be a

17   tremendous impact on other courts and judges, and we

18   think it's an avoidable impact.  But we also would like

19   to bring Your Honor's attention -- because we're not yet

20   there -- but the fact that you're going to have a lot of

21   judges around the country looking at the same issues that

22   you're looking at, trying to regulate the same discovery

23   that you're trying to regulate, and issuing whatever

24   orders that they issue.  That's a burden on this court

25   too.

TRANSCRIPT OF PROCEEDINGS

1          It's an indirect burden because you're -- you

2    now are in change of the entire litigation that's

3    coordinated in front of you against Uber for sexual

4    assaults.  If you limit that -- your authority and

5    jurisdiction, you know, under this equitable balancing

6    test so that hundreds of cases go elsewhere, you will no

7    longer be in charge.

8          Other judges will be in charge of their cases.

9    And they may not adopt the same protective order.  They

10   may not adopt the same, you know, privilege log

11   protocols.  They may not limit apex depositions the way

12   you might.  They not might deal with, you know, corporate

13   witness discovery in the same way that you would.

14         And so not only do I think Your Honor should

15   respect the other -- the burden on the other courts, I

16   think we need to acknowledge that that reverberates back

17   on you and on the litigants.

18         THE COURT:  Yeah.  I understand the point.  I

19   guess the counterargument that we may hear -- I don't

20   know -- from Mr. Atkins is, well, that's kind of Uber's

21   lookout.  I mean, if they want to subject themselves to

22   burdensome litigation in multiple states with the

23   possibility of inconsistent rulings and inconsistent

24   approaches to various discovery issues of the sort that

25   you've indicated, why -- you know, why should I stop

TRANSCRIPT OF PROCEEDINGS

1   them, in effect?

2        MR. LEVIN:  I understand.  I think it will be

3   Uber's problem.  It will be the plaintiffs' problem.  But

4   I think it will also be Your Honor's problem.

5        THE COURT:  And some of it -- I mean, to be

6   fair, some of it may -- and I have, I'm sure, even less

7   familiarity with FNC regulations and other state's tort

8   laws than some of the folks at counsel table here do, but

9   some of the variation and inconsistency may be the

10  function of differences in state laws in different

11  states; right?

12       Apex depositions, to take one example, may be

13  governed by a different standard in Iowa than they are in

14  Hawaii or in California.  And maybe that's totally

15  appropriate.

16       MR. LEVIN:  Yeah.  I'm not saying that

17  everything that the courts do elsewhere is necessarily a

18  problem.  But just the management of the witnesses and

19  the documents and the discovery issues, I think everyone

20  would agree, works better if there's one judicial officer

21  managing it, which is why the cases were coordinated;

22  right?

23       And I'm not saying that the -- you know,

24  there -- there isn't going to be, you know, I mean, some

25  solutions to some of that along the way.  But I do think

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1   it's a quagmire, and I don't think it's necessary for
2   reasons we'll get to in a moment.
3            The -- you know, Lyft -- I mean Uber; okay?  And
4   by the way, I hate to borrow from Lyft, but we have all
5   of the out-of-state plaintiffs there, and we have had --
6   none of the issues that the motion here raises have
7   actually materialized on the ground.
8            THE COURT:  What's the total number of
9   plaintiffs in the Lyft proceeding?
10           MR. LEVIN:  I think it's like, you know, 600,
11   Your Honor.
12           THE COURT:  Is it that high?
13           MR. LEVIN:  Yeah.  And --
14           MR. CUBBERLY:  Much higher.
15           MR. LEVIN:  Much higher, he says.
16           How much higher?
17           MR. CUBBERLY:  I think my firm alone represents
18   600 of them.
19           MR. LEVIN:  Oh, yes.  Upwards of a thousand.
20           And might I say, you know, just because we're
21   trying to come to some common understanding of what we're
22   dealing here.  Once the forum motion was denied there, we
23   never heard a word one about any of the issues that were
24   raised as the sort of horrible -- imaginary horribles,
25   the hypothetical horribles in the motion.

TRANSCRIPT OF PROCEEDINGS

1          We haven't had any out-of-state witness
2     problems.  We haven't had any thorny, you know, choice of
3     law questions.
4          And so, you know, I think in some ways, this --
5     I guess what I'm saying is the problems that are being
6     anticipated may not be as they seem.  And the problems
7     that are not being foreseen by going down this route are
8     going to be myriad, and they're going to be complicated.
9          And, you know, as we sit here, the cases are
10    stayed, and they're in your hands as to what happens.
11    And they're in your hands for a reason.  Because the
12    judicial panel decided they should be coordinated because
13    they have shared common issues of law and fact.
14          And, you know, the order that established the
15    JCCP discussed all the California centered problems.
16    Failing to adequately vet and train drivers, implement
17    adequate safety measures, and so on.  Whether the app is
18    defective.
19          And so, I mean, those cases are here for a
20    reason under 404.1.  And also to facilitate global
21    settlement.  So it's already been determined -- and
22    convenience of witnesses is addressed in the coordination
23    order.
24          It's already been determined that it's more
25    efficient to manage the cases here.  And so what we've

TRANSCRIPT OF PROCEEDINGS

1   been struggling for is a way to maintain the benefits of

2   that efficiency without causing the problems that

3   Your Honor is concerned about and that Uber is concerned

4   about.

5           THE COURT:  And I'm sensing a segue to

6   Mr. Cutter's argument.

7           MR. LEVIN:  There is, but before I sit down,

8   because I haven't --

9           THE COURT:  Please.  I'm sorry.  I didn't mean

10  to interrupt.

11          MR. LEVIN:  No, it's fine.  I'm happy to.  I

12  want to get you there.  But, you know, due process is a

13  two-way street.  And so there are now hundreds of clients

14  that are -- we have to just start all over again; okay?

15  That will be deprived of the benefit of the coordinated

16  discovery that they are now -- would be part of.  They're

17  going to have to, you know, maybe get new counsel.  Incur

18  separate expenses.

19          And, you know, these women have been sexually

20  assaulted, and they were sexually assaulted, you know,

21  quite some time ago.  And they're now in a forum where

22  they have the opportunity to either get justice in the

23  way that we allege they should, or have it be determined

24  that they're not entitled to compensation, or something

25  in between.

TRANSCRIPT OF PROCEEDINGS

1          If Your Honor were to just dismiss the cases,

2     that whole picture changes for them, and they're really

3     hurt.  They're hurt financially.  They're hurt in being

4     deprived of the evidence that's going to be developed

5     here.  It's all subject to a protective order.  They're

6     deprived of the benefits of what the coordination panel

7     wanted to achieve for all of the litigants.

8          And I think that's pretty much all that I have

9     to say, and I will cede the podium to Mr. Cutter.

10          THE COURT:  Okay.  Thank you.

11          MR. LEVIN:  Thank you.

12          MR. CUTTER:  Good afternoon, Your Honor.

13          THE COURT:  Good to see you again, Mr. Cutter.

14          MR. CUTTER:  Good to see you.  Brooks Cutter

15     appearing along with Celine Cutter in this case for

16     Jane Doe 3, but we also have cases filed in the JCCP, and

17     we will be part of a leadership motion the court

18     considers next month.

19          So today, in this argument, I want to say, first

20     of all, I appreciate the extensive work and thought that

21     went into the tentative.  I'm going to try and address

22     our thoughts to that and focus on what I think a few

23     areas that might be of assistance to the court.

24          The first point would be -- go -- really, I

25     think, weighs upon the private factors, which are not

TRANSCRIPT OF PROCEEDINGS

1   really extensively discussed in the tentative, but I

2   think are entitled to equal weight under Stangvik.

3           And I think the way that I like to think about

4   those private factors is what will the trial look like?

5   So let's consider for a moment what will the trial of

6   Jane Doe WHB 3 -- I'm just going to call her Jane Doe 3

7   from here on out for ease -- what will that consist of?

8           Well, Plaintiff Jane Doe will have the burden of

9   proof to establish Defendant's negligence, a duty to the

10  plaintiff, and causation.  Plaintiff's evidence to meet

11  this burden of proof will consistent almost entirely of

12  testimony of California residents.  Current and former

13  Uber employees.

14          If the trial takes three weeks, which it could,

15  not more than a half day will be consumed by the assault

16  on Jane Doe if that.

17          The fact of the assault is not disputed by Uber,

18  and even if it is, there are no witnesses other than the

19  plaintiff that are likely to testify.  Even the driver,

20  who is a nonparty, will likely take the Fifth.

21          So that's a trial where the convenience of the

22  witnesses, where the evidence is all California-centric

23  and California based.

24          THE COURT:  May I just interrupt?

25          MR. CUTTER:  Yes.

TRANSCRIPT OF PROCEEDINGS

1          THE COURT:  The -- one of the drivers in one of
2    these cases -- but I believe it's in the other case -- if
3    I recall correctly was criminally prosecuted and pled --
4          MR. CUTTER:  Correct.
5          THE COURT:  -- to something.  That's not the
6    case -- that's not true in the case that you're
7    addressing.
8          MR. CUTTER:  That's correct, Your Honor.  There
9    is no judicial -- there is no police investigation of
10   this incident.
11         THE COURT:  Okay.  Yeah.  No, I just want to
12   make sure I wasn't confusing the two cases.
13         MR. CUTTER:  Absolutely right.
14         And so, you know, that is a critical way, I
15   think, of looking at how to analyze the private interest
16   factors here.  The witnesses, the evidence are
17   overwhelmingly in California.
18         And in this respect, I think it's important for
19   me to take issue -- strong issue with the
20   Northern District's opinion that the court cites in the
21   tentative which kind of cavalierly says that the policies
22   and procedures of Uber and their adequacy will not be
23   disputed.
24         Far from true.  They will be hotly disputed.
25   And Plaintiff carries the burden to show that they were

TRANSCRIPT OF PROCEEDINGS

1    inadequate, and it's a burden we take seriously and will

2    carry.

3            But the notion that that's not the focal point

4    of any trial against this defendant is false.  It's --

5    for some reason, the NDCA opinion, you know, treats the

6    incident itself involving a nonparty as being the focal

7    point of the trial.  It will not be.

8            So if I take a step back and look at the -- and

9    summarize the holding of the tentative as it applies to

10   Jane Doe 3, it would go something like the following.

11   The place of assault by nonparty controls forum

12   notwithstanding the plaintiff being a California resident

13   and the vast majority of the trial evidence being located

14   in California.

15           Now, such a rule would be contrary to settled

16   California law that gives a forum presumption to a

17   California resident.  And it's especially wrong where, as

18   here, the only defendant is headquartered where the case

19   is brought.  And the conduct by the defendant issued in

20   the case occurred in California.

21           That rule would be, to borrow a phrase, quote,

22   "seriously inconvenient" for Jane Doe 3.  We would

23   effectively be closing the courthouse to a California

24   resident who is a victim of sexual assault trying to sue

25   a California corporation.

TRANSCRIPT OF PROCEEDINGS

1        The court in its tentative cites to the NFL

2    case, and I think there is instructive language in the

3    NFL case that governs this particular situation.  And

4    that's at 216 Cal.App.4th at 932, where the court says,

5    quote, "We conclude that the phraseology, quote,

6    'seriously inconvenient,' unquote, as used in the

7    Judicial Council comment was intended to describe the

8    quantum of evidence needed to justify a dismissal in the

9    face of the strong presumption favoring a resident

10   plaintiff's choice to sue in its home state court

11   system," unquote.

12        So I think that that is a powerful statement by

13   the courts about keeping the courthouse open to people in

14   Jane Doe's situation.

15        THE COURT:  Let me just interrupt to make sure I

16   understand and also to make sure that I don't have a

17   misunderstanding of what the court was saying there.  My

18   understanding of that has always been that the court was

19   distinguishing -- and that later opinions, indeed, have

20   distinguished between dismissing a case on FNC grounds

21   and merely staying a case on FNC grounds.

22        I take Mr. Levin's point, which is, you know,

23   either way, the consequences for the plaintiff or the

24   plaintiffs are drastic.  But I think "seriously

25   inconvenience," that catchphrase is really talking about

TRANSCRIPT OF PROCEEDINGS

1   the situation where there's a California resident

2   plaintiff, and the court is actually dismissing the

3   action outright as opposed to staying it to allow it to

4   be refiled in another forum.  Am I right about that?

5            MR. CUTTER:  Well, I think you put your finger

6   on an important distinction, but I don't think that -- I

7   think I was with you -- and we'll come to this in terms

8   of the power of the stay mechanism the court has at its

9   disposal.

10           But I think that the fundamental closing the

11  courthouse to a California resident is what's at issue.

12  They're not stayed.  I was with you until you said --

13  with the court until it said, "stay so we can file

14  someplace else."

15           I think a stay -- a more protracted stay so that

16  the litigation overall can progress, you know, might be

17  -- do less violence to the plaintiff in a case like this.

18           THE COURT:  So let me just ask.  How much of

19  your argument here on behalf of Jane Doe 3 is dependent

20  on the fact that she is currently a California resident

21  even though she was not a California resident at the time

22  the incident occurred, and how much of it is independent

23  of that factor?

24           MR. CUTTER:  Yeah.  It's a good question,

25  Your Honor.  Let me speak to it this way.  The private

TRANSCRIPT OF PROCEEDINGS

1   interest factors that I began my argument with, those

2   apply equally to Mr. Levin's client.  To any client

3   proceeding here.  And I think those are critical

4   considerations for the court to reexamine.

5          In terms of Jane Doe 3, I think the tentative

6   also, you know, says that, you know, the happenstance of

7   her being a resident here.  Well, the truth of the matter

8   is Jane Doe 3 is a lifelong Californian who spent two

9   years in Hawaii at the moment at which she got assaulted.

10          She's returned to California.  Her treating

11   physician is in California.  And there are no witnesses

12   -- no party witnesses in Hawaii.  And so I think that in

13   that sense, it's somewhat Jane Doe dependent.  Specific.

14          But I think that many of these principles also

15   apply equally to all the plaintiffs in this case.

16          I think also that I'd like to now speak a little

17   bit about the management possibilities that Mr. Levin

18   promised that I would address.  And I come to this from

19   many years in the trenches in leadership of JCCP

20   proceedings.  And in -- my experience in these cases is

21   that they're uniformly managed around the state in a very

22   similar fashion.

23          And that fashion is that you -- the court

24   selects a bellwether pool with the assistance of the

25   parties of about ten cases give or take.  And those ten

TRANSCRIPT OF PROCEEDINGS

1   cases are the ten cases that proceed to the fulsome

2   discovery.  Depositions on both sides and the full

3   liability cases developed in the context of those ten

4   cases with the idea that that evidence will be available

5   to all the plaintiffs in all the proceedings.

6           Here, Plaintiffs are prepared to stipulate to

7   only selecting California cases for the bellwether pool.

8   If there ends up being an out-of-state case in the

9   bellwether pool, that would be at Uber's invitation, and

10  we're not intending to preclude their right to do that.

11          But we are prepared to stipulate to only putting

12  California cases in the bellwether pool, which I think

13  significantly affects the public interest factors that

14  the court was weighing.

15          THE COURT:  So hang on.  Let me just clarify the

16  proposal here, if you will.

17          MR. CUTTER:  Yes.

18          THE COURT:  When you say, "only California

19  cases," do you mean only cases in which the incident

20  occurred in California and the plaintiff is a current

21  California resident?

22          MR. CUTTER:  Yes.

23          THE COURT:  And was a California resident,

24  presumably, at the time of the incident?

25          MR. CUTTER:  All of the above, Your Honor.

TRANSCRIPT OF PROCEEDINGS

1          THE COURT:  Okay.

2          MR. CUTTER:  As clean as possible.

3          THE COURT:  You can imagine a situation, for

4    example, where somebody flew in from Texas, to pick a

5    random example, to come to California for vacation --

6          MR. CUTTER:  Yup.

7          THE COURT:  -- and was assaulted here;

8    therefore, was not a California resident at the time, but

9    the incident occurred here.  But what you're suggesting

10   is when you say, "California cases," California resident

11   at the time, California incident, and California resident

12   now.

13         MR. CUTTER:  Correct.  And out of the hundreds

14   of cases, we don't think that it will be a problem to get

15   representative cases.  What's sometimes referred to as

16   plaintiff's picks and defense picks out of that pool so

17   that the court can get jury verdicts that help the

18   parties toward resolution.  Because after all, that's the

19   goal of a JCCP; right?  To get -- not to, you know, deal

20   in a meaningful way with a thousand cases, but to guide

21   the parties toward -- to get the parties data points so

22   they can ultimately resolve the cases on an equitable --

23   in an equitable manner for everybody concerned.

24         THE COURT:  Okay.  So let me just think out loud

25   for a minute.  I suppose that the benefits of that

TRANSCRIPT OF PROCEEDINGS

1    proposal -- which I'm hearing for the first time now I

2    think -- are it would eliminate any conflict of law or

3    choice of law issue --

4            MR. CUTTER:  Yes.

5            THE COURT:  -- because, presumably, the incident

6    having occurred in California would be governed by

7    California law.  It would -- as to the selected cases, it

8    would tip the competing interests in the plaintiffs'

9    favor because California necessarily would have the

10   stronger interest in -- both in redressing the

11   plaintiff's injury and in addressing the alleged

12   corporate misconduct by the California headquartered

13   company.

14           MR. CUTTER:  Yes.

15           THE COURT:  But I suppose what I'm going to hear

16   from Mr. Atkins is, "Well, Judge, what they're arguing to

17   you is -- goes to the cases that aren't the subject of

18   the motion in the first place."

19           It goes to -- they're offering to do something

20   that you're going to do anyway; right?  Because should I

21   grant these motions, what I'm going to be left with are

22   California cases.

23           MR. CUTTER:  Yeah, but I think there's more to

24   it than that, Your Honor, and I'll come to it.

25           THE COURT:  Okay.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1            MR. CUTTER:  There's a -- there are a couple of

2    sentences in the tentative where the court alludes to

3    uncertainty about what bellwether cases will be tried.

4    But I want to reinforce from my many years of doing this,

5    and sometimes my chagrin, the court has plenary and

6    absolute power to decide which cases get tried.  So we

7    don't get to decide which cases get put before a jury

8    here.  You have the ultimate say-so on that.

9            And so as much as we might like to try or the

10   defendants might like to see a particular case get tried,

11   we can nominate some suggestions, but you have the final

12   say-so.  So you do have control over that.

13           And the Judicial Council gives you that

14   authority as well as your inherent authority to manage

15   your docket, your case law, your cases.

16           Now, the point that I think addresses the --

17   where would the benefit be here for Uber, we're willing

18   to stipulate that all the non-California cases are

19   stayed.  So during the pendency of this bellwether

20   process, all of those cases are stayed.  Stayed for

21   discovery.  Stayed for all purposes.

22           If a party objects to that, they have an

23   alternative to dismiss their case and proceed, you know,

24   in another forum.  But --

25           THE COURT:  Okay.  Stayed until what?

TRANSCRIPT OF PROCEEDINGS

1           MR. CUTTER:  Until the court has conducted the
2   bellwether trial process and the JCCP concludes, as it
3   does.  You know, JCCPs typically -- I mean, fortunately,
4   a hundred percent of the time end up resolving in the
5   JCCP process, but it's not unheard of for a JCCP to fail
6   to resolve the case, at which point the court essentially
7   remands the cases to the county having done its job.
8   Having effectively managed the discovery process.  Often
9   appointed a discovery referee, which we would, you know,
10  support here to keep some of the paperwork out of this
11  courtroom.
12          And having done that and having given the court,
13  given the parties the data points of one or two or three
14  trials.  The cases go away then.  So at that point,
15  everybody's case would be remanded to the county they're
16  in from which it was filed, and at that point down the
17  road -- super unlikely that we get there, but at that
18  point, forum non would not be waived.  We would not argue
19  that it would be waived.  We would stipulate that it was
20  not -- that a forum non at that point would not be
21  untimely.
22          THE COURT:  Okay.  Again, I'm trying to look at
23  this from both sides.
24          MR. CUTTER:  Yup.
25          THE COURT:  Let me turn the tables on you a

TRANSCRIPT OF PROCEEDINGS

1    little bit.  I mean, Mr. Levin argued quite convincingly,

2    passionately, that, you know, what we're talking about

3    here is depriving hundreds of plaintiffs of redress or,

4    at least, putting further stumbling blocks in their paths

5    to redress because they'll have to hire new counsel.

6    They'll have to refile.  They won't have the benefit of

7    coordinated discovery here and so on.

8           But what you're proposing, at least, in the

9    unlikely event that the coordinated proceeding -- the

10   bellwether trials and the coordinated proceedings don't

11   lead to a global resolution means all of those folks'

12   cases are put on ice for potentially years.

13          MR. CUTTER:  Yeah.

14          THE COURT:  And that's to their detriment, isn't

15   it?

16          MR. CUTTER:  Well, two points on that,

17   Your Honor.  The first point would be that a plaintiff

18   that doesn't like the regimen that we're proposing, if

19   the court adopts it, is free to dismiss tomorrow, you

20   know, and go back to Iowa or wherever and march ahead

21   independently.  We don't control that.

22          But in my experience, Your Honor, Plaintiffs

23   acknowledge that they're part of a large group.  That

24   only the tip of the spear will see its day in court until

25   the case is resolved one way or the other.  That's the

TRANSCRIPT OF PROCEEDINGS

1    reality of it.

2            And so it's typically not an impediment, and the

3    enormous benefit that the plaintiffs get of sharing in

4    the cost of discovery and having the Uber witnesses

5    available to testify because they reside in California --

6    that's 1,112 currently working in Uber in relevant

7    positions and 1,778 former California employees.

8            And those are especially troublesome here

9    weighing the factors because there is no way to ever

10   compel them to do anything unless we're here in

11   California.  To get their depositions, to get them to

12   trial.  And, often, it's the former employees that have

13   the best, most straightforward relevant evidence.  So I

14   think that that is the proposal.

15           Now, the alternative, which Mr. Levin

16   referenced, and I won't belabor it, is sending all the

17   out-of-state cases back to states where the assault

18   occurred, and the defendant's witnesses are not subject

19   to subpoena.  It essentially places all the control of

20   litigation in Uber's hands and the defendant's hands.

21           None of the employees or former employees of

22   Uber will be -- other than in the rare case where there

23   happens to be one in that state -- will be subject to the

24   subpoena power of the court, and all of the liability

25   testimony, 90 percent of the trial will be reading

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1  deposition or showing video as opposed to the kind of

2  fulsome trial you'll have here.

3          None of those cases will be stayed.  There will

4  be a huge amount of coordination, discovery, and trial

5  required as well as the risk of inconsistent discovery

6  and other rulings.  Far more work for this court and the

7  many courts of the other states which Mr. Levin referred

8  to.

9          The thing I'd like to close with is I think that

10 under the -- just to briefly talk about public interest.

11 In my view, California has the greatest interest of any

12 state in this litigation.  One, it's the place where the

13 most women have been assaulted as a result of Uber's

14 negligence and the effect of that.

15         Two, it's where the company is headquartered and

16 where it made virtually all of the relevant decisions to

17 not require cameras, to not fingerprint drivers, to

18 promote its service as a safe ride for impaired

19 passengers.

20         And I think on all of those bases, California

21 has an absolutely compelling interest in driving these

22 cases forward to an effective resolution.  Thank you,

23 Your Honor.

24         THE COURT:  Thank you, Mr. Cutter.

25         Madam Reporter, are you okay without a break?

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1           THE COURT REPORTER:  Yes.  Thank you for asking.

2           THE COURT:  All right.  Mr. Atkins.

3           MR. ATKINS:  Good afternoon, Your Honor.  Why

4    don't I start where we left off on this bellwether, I

5    guess, proposal that none of us have seen before.

6           The whole point, as I understood this exercise

7    and the last year of discovery and motion practice and

8    briefing, was to -- and I think Your Honor said this on

9    the very first day.  What is in the pool from which we

10   will be selecting bellwether trials?  We need to know

11   that.  That they will stipulate to only having California

12   cases or Montana cases, whatever they want to stipulate

13   to.  We have the right to choose cases that we would like

14   to try as bellwethers.

15          And if it turns out that we're wrong, and the

16   tentative ruling is not correct, and those cases are

17   staying here, we need to know that because we may well

18   choose out-of-state cases if they're not dismissed as

19   they should be.  If they're not dismissed and refiled

20   where they should be, then we will have a pool of -- a

21   much larger pool.

22          And that takes -- so Uber cannot be deprived of

23   that right simply because the plaintiffs want to

24   cherry-pick.  Which is the nature of bellwether

25   selection; right?  But, you know, we've got 49 other

TRANSCRIPT OF PROCEEDINGS

1    states to pick from if the cases aren't dismissed.

2              So the motion needs to be decided.  We need to

3    engage in this process to try to determine what's in the

4    pool and not in the pool.  And that's why we're here in

5    any event.

6              And, frankly, and I think Your Honor said as

7    much, if their plan is to only litigate and seek

8    adjudication of cases involving California plaintiffs and

9    California assaults, then why were these cases brought

10   here in the first place?  They don't belong here.  They

11   don't want to try them.

12             I suppose what they want to do is leverage what

13   they're -- they hope to be positive outcomes, which may

14   or may not prove to be the case, to settle other cases

15   elsewhere.  That goal can be achieved whether or not

16   those cases are tried -- the out-of-state cases are tried

17   in other cases, or they just wait in the wings in other

18   states.

19             But the nature of bellwether trials is that they

20   are a way of determining the value of settlement.  If

21   LSA 35 is dismissed and she refiles in Texas, she will

22   get the benefit of whatever cases they choose to try

23   here.  She'll also get what she allegedly is being

24   deprived of, which is the ability to get to trial quickly

25   and get justice and get a remedy in her home court if

TRANSCRIPT OF PROCEEDINGS

1   that's what she seeks and if that's what she's entitled

2   to.

3            But those cases don't need to be here in order

4   for the value of bellwether trials to be achieved.  And

5   as we pointed out in our briefing, having trials in other

6   states where these cases really belong, those are

7   bellwether trials.

8            And as some of the authorities we reference in

9   our papers, Your Honor, say, it's actually better to have

10  a greater selection before different juries and different

11  communities.  That creates better informational input for

12  determining the value of settling all these cases if we

13  ever get there.

14           So the bottom line is their proposal solves none

15  of the problems.  First of all, it doesn't address the

16  standards, the legal standards.  It doesn't change what

17  the outcome of this motion should be.

18           These cases don't belong here.  They should be

19  dismissed, and they should be refiled.  And they can pick

20  California cases, and if those are the only cases we have

21  to pick from, we'll pick from those as well.  So that's

22  my view of that.

23           And just to underscore something, this notion

24  that the plaintiffs have to be here from New Jersey, and

25  Hawaii, Montana -- and Delaware, yes.  And Florida -- in

TRANSCRIPT OF PROCEEDINGS

1  order to get relief is, you know, fallacious.  We -- I
2  hate to say, we are defending cases brought by other
3  plaintiffs who aren't participating in this exercise in
4  other states.  We litigate them.  We defend them.  We win
5  some.
6        It's no different than any other portfolio of
7  personal injury or product liability cases that are being
8  litigated on an individual basis.  People bring claims
9  all the time.  We defend them all the time.  And they
10  resolve, you know, consensually or otherwise.
11        THE COURT:  All right.  But the argument the
12  plaintiffs make, which certainly has some appeal to it,
13  is, look.  To the extent that once one gets past the
14  assault itself and the driver who is perhaps the only
15  other witness other than the named plaintiff to the
16  incident, the vast bulk of the evidence here, the
17  witnesses, the former employees, the documents, and so
18  on, is California-centric to the extent it bears on what,
19  you know, Mr. Cutter characterized as the -- you know,
20  nearly the entirety of the trial in a given case.  What's
21  the response to that?
22        MR. ATKINS:  Several.  First of all, just
23  conceptually, there is no difference between this case
24  and any other product liability or personal injury or
25  mass tort case against a corporation.  Those cases are

TRANSCRIPT OF PROCEEDINGS

1    always about corporate conduct.  That's how plaintiffs
2    try these cases.
3          So corporations are going to be headquartered
4    somewhere, and the law doesn't -- just because decisions
5    are made somewhere, as cases you cite, as cases we cite,
6    there is cases involving California defendants all the
7    time that are dismissed because all the other factors
8    weigh in favor of other states.  The fact that someone
9    has an office in California and makes corporate decisions
10   doesn't change that analysis; otherwise, you'd never be
11   able to make a motion to dismiss and transfer if you were
12   a California company with an office in California.
13         THE COURT:  Well, it may not change the
14   analysis, but depending on the facts, it may affect the
15   weight to which one gives the various factors.  I mean,
16   you know, if you've got one company headquartered in
17   California that's a small company, and there are very few
18   witnesses and documents, and then you've got a
19   multinational like Uber where there are thousands, I
20   mean, those are two different situations, aren't they?
21   And they have to be looked at discretely.
22         MR. ATKINS:  They certainly are, and I'll get to
23   that in a second.  But if you think about the cases,
24   there are cases that involve California corporations,
25   large ones, where motions of this sort have been granted.

TRANSCRIPT OF PROCEEDINGS

1    You cited them.  Stangvik is one of them.

2            And just to this point about California citizens

3    having some kind of extra interest in Uber, is it the

4    case that Californians are not interested in defective

5    heart valves or asbestos?  You know, there's nothing

6    different about Uber than any other company that's

7    accused -- not proven -- accused to engage in wrongful

8    conduct.  But Stangvik was dismissed.  Morris was

9    dismissed.  Hansen was dismissed.  These are all cases

10   involving California companies.

11           But this is very different because the notion

12   that Uber is a California company is way overstated, as

13   Your Honor pointed out, and as I think the record shows.

14           And it's not merely that Uber has offices in

15   other places.  I mean, let's be clear.  We have

16   operations in other states.  And as Your Honor noted, we

17   have operations in other states because this business is

18   regulated on a state and local level in many places.

19           So the decision-making that has been referred

20   to, and it's not clear to me what that is exactly or when

21   it was made, but the bottom line is that decisions

22   relating to the operations of Uber are not necessarily

23   made in California.

24           In the case of LSA 35, there is -- there are

25   nearly 400 Uber employees in Texas.  It's not like -- you

TRANSCRIPT OF PROCEEDINGS

1    know, it's not like a regional sales manager.  It's an

2    entire business operation, a function of which is

3    complying with Texas law, Texas regulations.  It's a

4    Texas business.

5            Same thing as to the thousand employees in

6    New York.  There are a thousand employees in Chicago.

7    And, of course, there is 400 employees in Arizona because

8    Arizona is the place that incidents of the type that are

9    at the heart of these cases are sent to and processed and

10   investigated.  That operation -- the operation that this

11   case is about is not in California.  It's in Arizona.

12           THE COURT:  You're talking about the call

13   centers?

14           MR. ATKINS:  Yeah, but that doesn't quite

15   capture it.  I mean, call center sounds like a, you know,

16   1-800, you know, my potato chip bag was open.  This is a

17   sophisticated -- they call it a specialized team that

18   does intake of complaints.  There's a whole triage

19   process for investigating, reviewing, contacting

20   complainants, et cetera.  That's in Arizona.  That's not

21   in California.

22           THE COURT:  I will say -- and this is meant as

23   an equal opportunity criticism for both sides -- there is

24   precious little in the record, as extensive as it is

25   here, as to the kinds of issues that you're talking

TRANSCRIPT OF PROCEEDINGS

1    about.  I mean, there is some evidence about regional --
2    the number of offices, for example.  I think it's
3    Ms. Gilmore's declaration.  Just the total number of
4    offices and which ones are regional.
5         But it's pretty skimpy in terms of -- on either
6    side.  That, you know, the thousand that -- the 1,112
7    current employees and 1,778 former employees that were
8    just referred to by your friends.  I know that that's a
9    -- sort of an arithmetic process of counting the number
10   of witnesses involved in the various subject matter areas
11   that may bear on the plaintiffs' claims, but I don't
12   really know who they are or what decisions they made and
13   anything else.
14        And, likewise, on your side, you haven't really
15   told me very much about, for example, this Arizona
16   operation.  I just know that there are these call
17   centers.  And so I don't have a -- notwithstanding all
18   the effort that's gone into this on your part and on my
19   part, I don't really have a very detailed factual record
20   on those issues.  Just by way of observation for what
21   it's worth.
22        MR. ATKINS:  That's true, and if it's necessary,
23   obviously, it can be supplemented.
24        But I will say this.  They identified in their
25   papers the topics that they say are important.  Indeed,

TRANSCRIPT OF PROCEEDINGS

1    they identify the topics that are this -- part of this

2    sort of corporate conduct, corporate liability approach

3    that they're advocating.

4            THE COURT:  Right.

5            MR. ATKINS:  And it is not a coincidence that on

6    each one of those topics, the employees or former

7    employees are not in California.  So the specialized

8    team, they identified it.  We pointed out to Your Honor

9    that's in Arizona.

10           The safety report which is important to them,

11   the author is in Washington, DC.  And there are other

12   contributors who are also not in California.

13           Obviously, the Texas operation is managed by

14   folks not in California.

15           So you've seen that.  We address it in our

16   papers.  But, you know, it's -- like I said, it's not

17   blind luck that that played out that way.  It's because

18   the company is not so centralized in California because

19   it is a very localized business.

20           So that's all the way of saying and coming back

21   to the point, you know, is California such a

22   gravitational center that all the other factors

23   Your Honor identified, all the other public interest

24   factors are somehow outweighed?  I think not .  I think

25   it breaks in the opposition direction.

TRANSCRIPT OF PROCEEDINGS

1          If there was ever a case where the presence of a

2   California corporation shouldn't be given, at least,

3   added weight, this is the one because it's really not.

4          Let me turn to some of the burden points.

5          THE COURT:  So maybe I can preface this.

6          MR. ATKINS:  Yes.

7          THE COURT:  The argument I hear from both

8   Mr. Levin and Mr. Cutter, which makes a certain amount of

9   sense, is, Judge, you have to weigh the consequence --

10  the consequences of granting this motion as well as the

11  consequences -- or against, let's say, the consequences

12  of denying it.

13         If you grant it, if one looks at the judicial

14  system writ large across the United States, that is going

15  to be a far more burdensome result, far less efficient,

16  far less likely to result in global settlements because,

17  you know, as Mr. Levin points out persuasively, there

18  won't be a single judge overseeing discovery.  There will

19  be enormous duplication from state to state of the

20  discovery.

21         And as Mr. Cutter argues, the very California

22  witnesses -- and I take your point.  Maybe they're not

23  all -- I can't believe that all 2,000 of them really

24  matter, but some of them clearly matter.  They're not

25  going to be amenable to subpoena power to attend a trial

TRANSCRIPT OF PROCEEDINGS

1    or even necessarily in depositions in Iowa or Montana or

2    other states.  So how do I weigh all of that?

3          Because I think their point is undeniable, which

4    is, yeah, it's much more efficient to do this all in one

5    court than to do it in 50 courts, but in some ways, that

6    reasoning may prove too much; right?

7          MR. ATKINS:  Yeah.  I was going to -- I mean,

8    that's where I come at it.  I mean, it does prove too

9    much because if that's the case, it's true of every

10   national personal injury product liability litigation.

11         THE COURT:  Right.

12         MR. ATKINS:  And it will -- you know, without

13   trying to resort to hyperbole, it will convert this court

14   into a magnet for what they call complex national

15   litigation.  It won't just be this case.  This court and

16   the other courts of the state will become the MDL center

17   of what is supposed to be a federalized judicial system

18   with different state court systems.

19         The JCCP surely wasn't adopted in order for this

20   court system to become flooded with cases from all over

21   the country just because it might be more efficient for

22   lawyers to have them all here.  It's not your job,

23   Your Honor, to be honest, and it's a little -- you know,

24   it's a little backwards for cases to be brought here that

25   shouldn't be brought here in the first place, and then

TRANSCRIPT OF PROCEEDINGS

1   now that they're here, say -- cry foul.

2          "Oh, it's terrible to go back to where we should

3   have brought them in the first place because wouldn't it

4   be great if Judge Schulman was the national judge for all

5   cases against Uber?"

6          Your Honor, that's not your job.  That's not

7   what coordination was created for.  To the contrary,

8   coordination was to lighten the load on California

9   courts, not increase it.

10         The last thing the legislature wanted when it

11  adopted the JCCP was to say, "I'm going to solve one

12  problem by creating a mechanism for bringing the cases

13  from Kern County and LA County to San Francisco before

14  one judge, but as a consequence of that, you're going to

15  have to be -- you're going to have to oversee cases from

16  49 other states."

17         That wasn't -- not only was that not the plan,

18  it would undermine the plan by making the problem worse.

19         THE COURT:  The reason I'm -- in case you're

20  curious, the reason I'm pulling the 5 in 1 treatise here

21  is to see whether the coordination statutes were enacted

22  after Stangvik.  Because Mr. Levin made the point that

23  Stangvik didn't involve coordinated cases.  Anybody know

24  the answer to that?

25         MR. ATKINS:  It was before.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1           THE COURT:  I'm sorry?

2           MR. ATKINS:  Coordination was before.

3           THE COURT:  Okay.  All right.  So it just so

4   happens that the Stangvik cases weren't coordinated

5   cases.

6           MR. LEVIN:  Nobody sought coordination, even

7   though it might have been available.

8           THE COURT:  Okay.  All right.  In all candor,

9   that was more of an academic interest or a historical

10  interest, but I just thought I'd ask the question.

11          MR. ATKINS:  So it may sound appealing, but

12  that's not what this court has been set up for.  It's not

13  what coordination was created.  It's not what the complex

14  court was created for.  It was to reduce your workload,

15  not increase it.  And that's what would happen.

16          And maybe that's a good segue to talk about the

17  burden created by keeping these cases here.  Number one,

18  as I said, if they're here, we're then going to --

19  they're going to be involved in the bellwether selection

20  process, which means there is going to be discovery into

21  cases from out of state, which means, as you suggested

22  before, that's going to raise issues of other state laws

23  with respect to discovery privilege, et cetera.  And you

24  will be overseeing discovery issues and disputes arising

25  in cases from other states involving other state laws.

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1    That's just the bellwether selection process.

2           Lest we forget that before we even get to that,

3    we're still awaiting the pleading stage.  And as we've

4    discussed before, we surely will be filing demurrers and

5    motions to strike, and those will be directed at cases

6    from other states, and, therefore, sooner than later, you

7    are going to have to address -- if this motion is not

8    granted -- demurrers under the laws of potentially 49

9    other states.  On vicarious liability, common carrier,

10   independent contractor, on and on.  Punitive damages.

11          So this is coming, and it's coming soon if these

12   cases aren't dismissed.

13          THE COURT:  Well, now, the argument I hear from

14   the other side as kind of a practical matter rather than

15   a legal matter is, "Look.  This is a parade of horribles,

16   but we -- this isn't the first one of these coordinated

17   proceedings.  There are the Lyft coordinated proceedings

18   pending before Judge Cheng, and none of those horribles

19   has come to pass."

20          MR. ATKINS:  I don't know if that's true or not.

21   We have no record before us.  That's not my case.  That's

22   not my client.  That's not my courtroom.  That's not my

23   judge.  And it's not being litigated the way I'm going to

24   litigate this case.

25          For example, they didn't succeed on the forum

TRANSCRIPT OF PROCEEDINGS

1    motion for reasons that are quite different than what

2    happened here.  We may have made a more persuasive case,

3    and that's going to have a ripple effect.

4         So I don't know what's going on there.  I don't

5    know how they're litigating it.  I don't know what motion

6    practice is.  But I'm not bound by what's going on in

7    that courtroom.

8         THE COURT:  No.  Nor am I, of course.  And to be

9    clear, I have not consulted with Judge Cheng about that

10   case.  I didn't view it as appropriate to do so.  But,

11   you know, neither am I required to close my eyes to

12   practical realities if they're brought to my attention.

13   It's not binding authority, but it's -- it may be

14   suggestive.

15        MR. ATKINS:  Suffice it to say that when we get

16   to the pleading stage, we will be filing demurrers.

17        THE COURT:  I understand.

18        MR. ATKINS:  We will be filing them under laws

19   of other states.

20        THE COURT:  Right.

21        MR. ATKINS:  And that is a burden that's going

22   to fall on Your Honor if these cases are not dismissed

23   and refiled where they belong.  Where we will then make a

24   move to dismiss those under --

25        THE COURT:  And Mr. Cutter's argument then

TRANSCRIPT OF PROCEEDINGS

1    becomes, "Well, but we're only going to select California

2    cases, so you'll be limited in your rulings to California

3    law."

4          MR. ATKINS:  Right.  But I am going to be -- my

5    client is going to be a defendant in 900 cases from

6    plaintiffs from other states about incidents in other

7    states relating to Uber operations in other states.

8          THE COURT:  No, I understand.

9          MR. ATKINS:  And the bellwether selection is

10   going to come after the pleading stage.  So just like we

11   need to know what's in the pool to select the bellwether

12   cases, we first need to decide what cases even have

13   viable causes of action or what those causes of action

14   are.  And that's going to involve the law of numerous

15   other states if these cases are not dismissed.

16         THE COURT:  Mr. Atkins, can I just ask you to

17   raise your mask?

18         MR. ATKINS:  Apologies.

19         THE COURT:  I don't know how concerned we're

20   supposed to be about this, but I'm just trying to enforce

21   our courthouse rule.

22         MR. ATKINS:  So it is -- this issue cannot be

23   swept under the rug.  It has to be confronted.  It has to

24   be confronted now.  And, honestly, Your Honor, I don't

25   see a principled way to distinguish Uber just because

TRANSCRIPT OF PROCEEDINGS

1    it's headquartered here from any other -- any number of

2    other cases where these motions have been granted

3    involving California defendants.

4          Let me turn now to Jane Doe 3 and what that

5    trial would look at because it raises some interesting

6    issues.  I'm sure that's how the plaintiff wants to frame

7    it and try it, but, you know, I get to defend the case.

8          And right now, the principal witness, the

9    principal tortfeasor, the driver, the potential criminal,

10   the cause of why we're here is not here.  You granted his

11   motion to dismiss for lack of personal jurisdiction.  And

12   that case is now pending on our contribution indemnity

13   claims in Hawaii.  So --

14         THE COURT:  I found that a little bit odd.  You

15   don't really have an indemnity claim until you've been

16   held liable, do you?

17         MR. ATKINS:  Well, we have a claim.

18         THE COURT:  Just not a ripe claim?

19         MR. ATKINS:  Well, it's -- assuming that they

20   prevail, we will have a claim.

21         THE COURT:  Right.

22         MR. ATKINS:  But we have a contribution

23   indemnity claim.  You'll recall that they sued him --

24         THE COURT:  Here.

25         MR. ATKINS:  -- because he is the principal

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1  tortfeasor.

2          THE COURT:  Right.

3          MR. ATKINS:  So there is only one forum where

4  the driver can be a party.  The driver can be compelled

5  to testify.  He can be required to come to court and

6  testify live, which is critical to our defense.  We're

7  going to be asking the jury, of course, to hold him

8  responsible.  We're going to be asking the jury to

9  allocate fault to the driver.

10          And I would submit that it's highly prejudicial

11  in the extreme for Uber to be unable to put the driver on

12  the stand in front of the jury, for the jury to judge for

13  themselves who is responsible for this assault.  To have

14  to try the case in the absence of the driver would work

15  an extreme hardship and prejudice to Uber.

16          So there is one forum that's suitable.

17  Available.  It's the only forum in which the entire

18  dispute can be litigated and resolved.  And it's the only

19  forum in which the driver can be brought to the

20  courthouse.  And that's vital to our defense of the case,

21  which will be denied if it's not dismissed and refiled.

22          That the plaintiff intends to put on a

23  streamlined case where it's only going to call -- we

24  don't know who, but we are told a few witnesses.  That's

25  their prerogative.  That's their right.  But they don't

TRANSCRIPT OF PROCEEDINGS

1    get to define the full scope and contours of the case,

2    and they certainly don't get to determine how the defense

3    is going to be put on.

4            And since we're here to talk about fairness and

5    equity, I think all of that weighs in favor of that case

6    belonging in Hawaii.

7            THE COURT:  Wasn't there something in the papers

8    here about whether Hawaii is a comparative fault

9    jurisdiction or not and whether its law differs from that

10   of California in that regard?

11           MR. ATKINS:  Go ahead.

12           MR. SMITH:  Yes, Your Honor.  We do make the

13   point that in Hawaii, there's local regulations.  Whether

14   that's formal TNC regulations or not, I don't think, was

15   at issue.  But Hawaii has an interest in the subject

16   matter.  Its statute of limitations has --

17           THE COURT:  You're not addressing my question.

18   My question is, you know, are they a kind of old style

19   contributory negligence jurisdiction?  Are they a

20   comparative fault jurisdiction?  I thought there was

21   something to that effect.

22           MR. SMITH:  I believe so, Your Honor.  But one

23   moment, if I may.

24           THE COURT:  Sure.

25           MR. SMITH:  Yes, that's exactly right.  It's at

TRANSCRIPT OF PROCEEDINGS

1   page 12 of our opposition papers, footnote 8.  Hawaii is

2   a modified comparative negligence jurisdiction.

3   California is a pure comparative negligence jurisdiction.

4          THE COURT:  All right.  So there is some

5   difference there.  Okay.

6          MR. ATKINS:  The important --

7          THE COURT:  It's a small point.  It's very far

8   down.  I just want to make sure I retained it.

9          MR. ATKINS:  And I think the point that I'd like

10  to stress is whatever the comparative responsibility law

11  is, we need the driver in the stand --

12         THE COURT:  Right.

13         MR. ATKINS:  -- to have a fair trial.  To get a

14  fair --

15         THE COURT:  I fully understand the argument.

16         MR. ATKINS:  Thank you.

17         So unless Your Honor has other questions,

18  obviously, we think, Your Honor, the court should stand

19  by the tentative, and we're ready to meet and confer with

20  the plaintiff as we have done successfully with respect

21  to discovery up to this point and come up with a program

22  for wrapping this whole part of the case up.

23         THE COURT:  All right.

24         MR. ATKINS:  Thank you, Your Honor.

25         THE COURT:  So, Madam Reporter, I'm hoping we've

TRANSCRIPT OF PROCEEDINGS

1    just got 10, 15 minutes left.  5 minutes left.

2              MR. LEVIN:  Well, from me.

3              MR. CUTTER:  I'll be brief too.

4              MR. LEVIN:  We'll be brief.

5              THE COURT:  I just want to make sure our

6    reporter, who is the most important person in the

7    courtroom, as we all know, doesn't need a break because

8    we have been going for almost an hour and a half.

9              MR. LEVIN:  Your Honor, when you ultimately

10   preside over a trial, you will see that the key witnesses

11   are in California.  But their point that there are other

12   offices and other locations and other people misses a big

13   point.  That since they're a California company, we can

14   reach out through California.  But those people aren't in

15   Texas, and they aren't necessarily in Hawaii.

16             And the fact -- every country -- every company,

17   big company has offices and people all over.  I think the

18   showing is that California -- this is California centered

19   in terms of liability.

20             And the reason that cases -- and it's really

21   very few cases that counsel points to -- where it's been

22   a California company, and it's been -- the case is

23   dismissed on forum grounds even though it's a California

24   corporation is really two situations.

25             One, in a single case.  Most of them are single

TRANSCRIPT OF PROCEEDINGS

1   cases.  And that's important because the option of

2   staying is not real.  In other words, you have to --

3   ultimately, the case either goes forward or it doesn't.

4   And so Judge Orrick -- and in all the cases, it's one

5   case; right?  They didn't have the option that you have,

6   which is -- and the power that you have to stay the cases

7   and proceed with cases that don't present any problems.

8           And there is not this national clearinghouse for

9   litigation because for a JCCP to be here, it has to be by

10  virtue of a company choosing to incorporate here or be

11  headquartered here.

12          And many companies choose not to do that, but

13  the ones that do choose to do that do it realizing that

14  they're subject to suit here because they're

15  incorporating or locating their headquarters in a court

16  where they are subject to general jurisdiction by anyone

17  for any claim.

18          Why are we here?  He says, "Well, if they only

19  want to go forward with the California cases, why are

20  these other cases here; okay?"

21          And the reason is, is because Uber is

22  headquartered here.  We didn't know how this forum motion

23  was going to play out.  We wanted all the cases in one

24  place.

25          And we brought them in a place that seemed --

TRANSCRIPT OF PROCEEDINGS

1   under 410.30, you have discretion on the forum to decline

2   to exercise your jurisdiction on the ground that

3   plaintiff has unfairly or unreasonably involved the

4   jurisdiction of an inconvenient forum.  We haven't done

5   that.  We're not forum shopping.  We haven't unfairly

6   invoked the jurisdiction of this court.

7           We brought our claims here because this is the

8   place that the U.S. Supreme Court and California Supreme

9   Court says we should bring them.  Doesn't mean there is a

10  forum issue, but we're here for a reason.  And the reason

11  was we -- and we wanted to have one court coordinate.

12          You're the only judge -- California is the only

13  state -- maybe Delaware would be one -- where you can

14  coordinate the whole litigation.  Texas can't do that.

15  Hawaii can't do that.  Iowa can't do that.  So we're here

16  for good and sufficient reason.

17          And counsel says, "Well, why do you want stay

18  here if the case isn't going to move forward?"

19          The reason we want to stay here is the reason

20  you have the cases under 404.1.  Because it's an enormous

21  burden and cost to prove a case against a big company

22  like Uber over a ten-year period of time, and we want all

23  of our clients to get the benefit of that discovery and

24  that centralized management and that evidence.  Because

25  we do have a protective order that says we can't just,

TRANSCRIPT OF PROCEEDINGS

1    you know, give the evidence elsewhere.

2         So we had a good reason for coming here.  We

3    have a good reason for wanting to stay here and remain

4    here and get the benefit.

5         And you're ultimately in charge.  If counsel is

6    saying, "Well, we really thought it was unfair that we

7    should have to defend out-of-state cases here, but if you

8    go down this road, Your Honor, we're going to be the ones

9    insisting on non-California bellwethers," that's what

10   counsel said.

11        They can say, "Maybe they won't, but we will."

12        And if they choose to do that, it's going to be

13   in a small number of cases.  That's their choice.  It is

14   a little bit inconsistent with what they said, you know,

15   about trying -- having to try out-of-state cases here,

16   but if they pick an out-of-state case, I guess we can't

17   stop them.

18        But you could.  And so it's going to be up to

19   you, Your Honor, to fashion the bellwether orders that

20   you think will obviate as many problems as you can.  It's

21   not a perfect world.

22        That being said, and for the court reporter's

23   benefit, I will yield to Mr. Cutter.

24        THE COURT:  Mr. Cutter, you got the last word.

25        MR. CUTTER:  Thank you, Your Honor.  I'll be

TRANSCRIPT OF PROCEEDINGS

1    brief.  To take one of the last points made by Mr. Atkins

2    in terms of the defendant, the non-defendant, the

3    nonparty driver in the Hawaii case, we don't know if he's

4    going to be in Hawaii at the time of any trial.

5    According to his declaration, he's in the Army.  Who

6    knows where he'll be?

7            Secondly, it's axiomatic even if he's not

8    represented he will take the Fifth.  I mean, it would be

9    malpractice for him not to be advised to take the Fifth.

10   So there won't be any meaningful opportunity to confront

11   him.  They can take his deposition to see if he doesn't

12   take the Fifth.

13           And, moreover, according to Uber's forum

14   discovery responses, in 83 percent of the cases, Uber is

15   unable to identify the last known address of the driver.

16           So the notion that the driver is going to be an

17   important witness in these cases where they're not a

18   party should not in any way, shape, or form drive the

19   court's analysis of where these cases belong.

20           What we heard here was, in my view, a kind of

21   cynical argument that -- send all the cases back, or if

22   we -- if we keep them -- if they are here, then we're

23   going to insist on them being here.  Kind of trying to

24   have it both ways.

25           But at the end of the day, the court has the

TRANSCRIPT OF PROCEEDINGS

1    controlling power.  We don't get -- just like we don't
2    get to decide that the first case to be tried should be a
3    particularly compelling rape case that occurred in
4    Nebraska, Uber doesn't get to decide that the defense
5    pick should be this highly questionable whether the
6    occurrence occurred that happened in Texas.
7            The court can write an order tomorrow that says,
8    "We're going to have ten cases in the bellwether pool.
9    Plaintiff pick five.  Defense pick five.  They all have
10   to meet those three criteria the court discussed before
11   of Plaintiff presides in California, incident occurred in
12   California."
13           I think maybe there's a third.  Essentially,
14   those criteria.  The court is absolute plenary power of
15   that.  And stay all the other -- stay all the
16   out-of-state cases.
17           Those folks can say, "I'm going to dismiss.  I'd
18   rather go somewhere else," or they can stay.
19           Uber said they want cases around the country and
20   how important that is, but in the second -- the next
21   breath, he pointed out that there are cases around the
22   country that they're trying.  So it's not -- it's not
23   going to be the case they're going to be deprived of
24   trials in other cases in other states.
25           The locus of this litigation, the benefit to all

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1    the parties and efficiency will only be preserved if

2    these cases stay here, and it would be -- it's going to

3    be immensely burdensome for the plaintiffs and

4    fundamentally unfair for them to have to circle out and

5    everybody paddle their own canoe with the discovery

6    efforts, and everything else will be very different.

7            Thank you, Your Honor.

8            THE COURT:  Mr. Cutter's final remarks just

9    sparked one thought which prompts a question to you,

10   Mr. Atkins.  And since you're standing up, I'm going to

11   direct it to you.

12           Do I have the power if I were to grant these

13   motions along the lines of the tentative to do so

14   conditionally and specifically by conditioning a stay of

15   the foreign actions, that is, those brought by foreign

16   plaintiffs, on Uber making available to those plaintiffs

17   the discovery that will be conducted in California?

18           I'm kind of springing that on you.  I don't know

19   what the answer to it is, and if you don't, I won't be

20   offended if you say you don't either.  But I'm --

21           MR. ATKINS:  It's just the kind of --

22           THE COURT:  I'm hearing from both sides, in

23   fairness, you know, legitimate concerns about how all of

24   this litigation is going to be conducted.  Whether it's

25   all here or whether it's in multiple fora.  And I just

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1   wonder the extent to which I can help shape that and

2   whether I have the power to do that.

3          MR. ATKINS:  The answer is you have the power.

4   The devil is in the details.  But both between your power

5   to shape a practical discovery regime and the parties'

6   ability to cooperate, there is no reason that we can't

7   address these discovery concerns.

8          You know, I have no intention of making it any

9   more difficult as -- than necessary because I have shared

10  the same interest in cooperation and efficiency.  But

11  they needn't be here, the cases from the other states.

12  They needn't be here to achieve that outcome, which is, I

13  think what you're getting at.

14         So if I -- now that I'm on my feet, if I can

15  take just a couple of seconds to respond.

16         THE COURT:  No, no.  We've heard argument in

17  both directions.

18         Mr. Cutter, did you -- because that was a new

19  issue that I raised.  Was that something you wanted to

20  respond to?

21         MR. CUTTER:  Just in one sentence, Your Honor.

22  I believe that you do have the power to make that kind of

23  discovery ruling, but it would not address in any way the

24  -- where I began my argument, which is what the trial

25  will look like and the importance of the live testimony.

TRANSCRIPT OF PROCEEDINGS

1           THE COURT:  Okay.  I understand.

2           MR. CUTTER:  Thank you.

3           THE COURT:  All right.  In the interest both of

4    relieving our court reporter and getting you-all out

5    before the apocalypse occurs, I have a request and then a

6    suggestion as to where we go from here.

7           And the request is -- well, the observation is

8    the arguments were very helpful to me, as were the

9    briefs, and I hope you can hear from my questions that I

10   fully understand both sides' positions, and I'm grappling

11   with these issues.

12          They're not easy.  There is no -- although

13   there's been a lot of discussion of the relatively

14   limited number of forum non conveniens cases, you know,

15   there is no case directly on point that I can look to

16   that gives me the answer.

17          It's a somewhat amorphous balancing test.  There

18   are some cases that I can look to that give me some data

19   points.  Different judges could conceivably come out

20   different ways.  And so this has all been very helpful to

21   me, and I want to thank you for that.

22          That said, the request that I have is if either

23   party is intending to order a transcript of today's

24   hearing, if you could provide me with a copy of the

25   transcript just by e-mailing it to the clerk, I would be

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

1   grateful.  Because I'm not very good, in all candor, as I

2   listen to counsels' argument, at taking detailed notes

3   that help me reconstruct what all of the questions and

4   answers were and having the transcript would be of real

5   assistance to me.

6            MR. CUBBERLY:  Judge, we're certainly going to

7   order a transcript, and we will provide the court with a

8   copy.

9            THE COURT:  Great.  Thank you, Mr. Cubberly.

10           It seems to me that I need to struggle with this

11   for a while longer once I have the transcript.  I need to

12   issue an order.

13           If the order is -- and I'm not signaling

14   anything one way or the other.  But if the order sticks

15   with the tentative one way or the other, then you-all are

16   going to need some time to figure out, as you said,

17   Mr. Levin, "Okay.  What are the implications for the

18   court's ruling?  How does it touch other cases?"

19           And that's going to take some time just given

20   the number of cases.

21           If, on the other hand, I change the tentative

22   and deny the motions, likewise, the parties are going to

23   have to figure out what the implications are, and that's

24   going to take some time.

25           So it seems to me that what we probably ought to

TRANSCRIPT OF PROCEEDINGS

1    do is set a further case management conference that will

2    give me enough time to issue a ruling.  Give you-all

3    enough time to meet and confer about what it means and

4    how to apply it.  And then we can talk about, "Okay.

5    Where do the cases go from here," whether it's the entire

6    pool of cases or some narrower pool of cases.

7         Does that make sense in concept?

8         MR. ATKINS:  Yes, Your Honor.

9         MR. LEVIN:  Yes, Your Honor.

10        THE COURT:  Okay.  So assuming that I get you an

11   order in the next couple of weeks -- and the reason I say

12   that is I have a court trial starting on January 23rd, so

13   I would hope to get this off my desk before that trial

14   starts.

15        I would imagine you-all would need several weeks

16   to absorb that, talk about it, figure out where to go,

17   and, therefore, that we ought to be thinking about

18   something like late February, early March.  Does that

19   make sense to both sides?  I'm open to an alternative

20   suggestion.

21        MR. CUTTER:  I think Your Honor has already on

22   calendar the leadership motion on February 20th.  I don't

23   know if that's too soon.  Or the 21st.  In that time

24   frame.

25        THE CLERK:  Oh, you do.  The 21st at

TRANSCRIPT OF PROCEEDINGS

1    11:00 o'clock.

2              THE COURT:  And do we have time before it?

3              THE CLERK:  We have an initial CMC before it.

4    So if that was short.

5              THE COURT:  And what about in the afternoon?

6              THE CLERK:  The afternoon is open.

7              THE COURT:  Okay.  That's a great idea.  Thank

8    you, Mr. Cutter.

9              So let's set February 21st as the next CMC with

10   directions to the parties to meet and confer regarding

11   the effect of the court's upcoming ruling on these

12   motions and to come back and tell me where you stand on

13   that.

14             We will endeavor to move -- if this is

15   convenient to both sides -- the 10:00 o'clock matter on

16   our calendar so that you can have two contiguous hours,

17   if need be, to both hear the motion and work through

18   these case management issues.  If we can't, we may have

19   to prevail on you to stay here and have lunch and then

20   come back in the afternoon.

21             Does that work for both sides?

22             MR. ATKINS:  Yes, it does, Your Honor.

23             MR. LEVIN:  Yes.

24             THE COURT:  Okay.  Anything else before I allow

25   you outside with your umbrellas?

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

```
1              MR. CUTTER:  Thank you, Your Honor.
2              MR. LEVIN:  No.  Thank you.
3              THE COURT:  All right.  Please all stay safe and
4   dry, and thank you again for your time.
5              MR. ATKINS:  Thank you, Your Honor.
6              MS. CUTTER:  Thank you, Your Honor.
7              MR. CUBBERLY:  Thank you, Your Honor.
8              (The proceedings were concluded at 3:05 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TRANSCRIPT OF PROCEEDINGS

**January 04, 2023**

```
 1                    COURT REPORTER'S CERTIFICATE

 2    STATE OF CALIFORNIA    )
                             ) ss.
 3    COUNTY OF MARIN        )

 4

 5             I, ANGELA POURTABIB, hereby certify:

 6             I am a duly qualified Certified Shorthand

 7    Reporter in the State of California, holder of

 8    Certificate Number CSR 13714 issued by the Court

 9    Reporters Board of California, and which is in full force

10    and effect.

11             I am not financially interested in this action

12    and am not a relative or employee of any attorney of the

13    parties, or of any of the parties.

14             I am the reporter that stenographically reported

15    the testimony in the foregoing proceeding and the

16    foregoing transcript is a true record of the testimony

17    given.

18

19    Dated:  January 6th, 2023

20

21

22

23    _____
      Angela Pourtabib, CSR No. 13714
24
              Certified Shorthand Reporter
25                 CSR No. 13714, RPR
```

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

---

**-**

**---oOo---**
3:3

**1**

**1**
19:11 51:20

**1,112**
38:6 47:6

**1,778**
38:7 47:7

**1-800**
46:16

**10**
60:1

**10:00**
71:15

**11:00**
71:1

**12**
59:1

**14**
11:20

**15**
60:1

**1:29**
3:1

**2**

**2,000**
49:23

**200**
11:1,6

**2023**

3:1

**20th**
70:22

**216**
29:4

**21st**
70:23,25 71:9

**23rd**
70:12

**3**

**3**
3:10,14 5:24
25:16 26:6
28:10,22
30:19 31:5,8
56:4

**35**
41:21 45:24

**3:05**
72:8

**4**

**4**
3:1

**400**
45:25 46:7

**404.1**
23:20 62:20

**410.30**
62:1

**49**
40:25 51:16
53:8

**5**

**5**
51:20 60:1

**50**
50:5

**50-plus**
16:22

**50/50**
8:6

**6**

**600**
22:10,18

**7**

**783**
19:11

**8**

**8**
59:1

**811**
19:12

**83**
64:14

**9**

**90**
38:25

**900**
14:2 17:4
55:5

**925**
16:17

**932**
29:4

**A**

**abbreviation**
4:5

**ability**
41:24 67:6

**absence**
57:14

**absolute**
35:6 65:14

**absolutely**
27:13 39:21

**absorb**
70:16

**academic**
52:9

**accommodat es**
8:13

**accused**
45:7

**achieve**
25:7 67:12

**achieved**
41:15 42:4

**acknowledge**
20:16 37:23

**action**
14:10 30:3
55:13

**actions**
66:15

**acts**
11:8

**add**
4:22

**add-on**
6:6 7:3

**added**
49:3

**additional**
8:3

**address**
5:15 8:12 9:3
10:8 25:21
31:18 42:15
48:15 53:7
64:15 67:7,23

**addressed**
11:14 14:20
23:22

**addresses**
35:16

**addressing**
15:4 27:7
34:11 58:17

**adequacy**
27:22

**adequate**
23:17

**adequately**
23:16

**adjudication**
41:8

**adopt**
20:9,10

**adopted**
50:19 51:11

**adopts**
37:19

**adversely**

---

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

3:21

advised
64:9

advocating
48:3

affect
3:21 44:14

affected
13:2

affects
32:13

afternoon
3:4,7,9,23
25:12 40:3
71:5,6,20

agree
8:24 9:6
21:20

agreed
8:24 9:5
17:24

ahead
37:20 58:11

allege
11:9 24:23

alleged
34:11

allegedly
41:23

allocate
57:9

alludes
35:2

alternative
10:12 35:23
38:15 70:19

amenable

49:25

amorphous
68:17

amount
39:4 49:8

analysis
44:10,14
64:19

analyze
27:15

Andrea
3:18

Angeles
6:13

answers
69:4

anticipated
23:6

apex
20:11 21:12

apocalypse
68:5

apologies
4:20 6:14
55:18

apologize
5:8

app
23:17

appeal
43:12

appealing
52:11

appearances
3:6

appearing
25:15

appendix
16:18

applicable
14:14

application
15:2

applies
28:9

apply
31:2,15 70:4

appointed
36:9

approach
48:2

approaches
20:24

approximatio
n
16:17,20

areas
11:9,10 25:23
47:10

argue
15:17 36:18

argued
37:1

argues
18:19 49:21

arguing
3:14 9:6
34:16

argument
4:22 12:10
24:6 25:19
30:19 31:1
43:11 49:7
53:13 54:25
59:15 64:21

67:16,24 69:2

arguments
68:8

arise
16:22

arising
52:24

arithmetic
47:9

Arizona
46:7,8,11,20
47:15 48:9

Army
64:5

arose
16:8

asbestos
11:1 45:5

assault
15:21,24
17:22 26:15,
17 28:11,24
38:17 43:14
57:13

assaulted
14:7 24:20
31:9 33:7
39:13

assaults
15:11 20:4
41:9

assistance
25:23 31:24
69:5

assume
16:7 17:1

assuming
18:5 56:19

70:10

Atkins
3:16 14:2
20:20 34:16
40:2,3 43:22
44:22 46:14
47:22 48:5
49:6 50:7,12
51:25 52:2,11
53:20 54:15,
18,21 55:4,9,
16,18,22
56:17,19,22,
25 57:3 58:11
59:6,9,13,16,
24 64:1
66:10,21 67:3
70:8 71:22
72:5

attend
49:25

attention
4:24 7:8
19:19 54:12

author
48:11

authorities
42:8

authority
20:4 35:14
54:13

avoid
5:13

avoidable
19:18

awaiting
53:3

awkward
13:15

TRANSCRIPT OF PROCEEDINGS

axiomatic
64:7

**B**

back
18:3 20:16
28:8 37:20
38:17 48:20
51:2 64:21
71:12,20

backwards
50:24

bad
9:7

bag
46:16

balancing
20:5 68:17

based
12:11 16:17
26:23

bases
39:20

basis
13:16 43:8

bear
47:11

bears
43:18

began
15:21 31:1
67:24

behalf
3:14,16 30:19

belabor
38:16

believes
17:6

bellwether
31:24 32:7,9,
12 35:3,19
36:2 37:10
40:4,10,24
41:19 42:4,7
52:19 53:1
55:9,11 63:19
65:8

bellwethers
40:14 63:9

belong
41:10 42:6,18
54:23 64:19

belonging
58:6

benefit
24:15 35:17
37:6 38:3
41:22 62:23
63:4,23 65:25

benefits
24:1 25:6
33:25

big
15:15,16
60:12,17
62:21

bigger
17:3

Bill
3:7

binding
54:13

bit
6:4 8:16
10:23 12:9

13:24 16:20
31:17 37:1
56:14 63:14

blind
48:17

blocks
37:4

BMS
18:19

Boaz
11:25 13:5

borrow
22:4 28:21

bottom
42:14 45:21

bound
54:6

branching
15:25

break
39:25 60:7

breaks
48:25

breath
65:21

briefing
4:10 40:8
42:5

briefly
39:10

briefs
5:4,5,8 68:9

bring
3:20 4:23
12:14,22
19:19 43:8
62:9

bringing
51:12

Bristol
18:12

Brooks
3:9 25:14

brought
12:24 28:19
41:9 43:2
50:24,25 51:3
54:12 57:19
61:25 62:7
66:15

bulk
43:16

burden
18:6,24 19:1,
24 20:1,15
26:8,11 27:25
28:1 49:4
52:17 54:21
62:21

burdensome
20:22 49:15
66:3

business
15:13 45:17
46:2,4 48:19

**C**

Cal.5th
19:11

Cal.app.4th
29:4

calendar
70:22 71:16

California
10:21 11:2,5,

7,16,19,21
12:2,3,8,14,
20 13:1,20,24
15:2,6,12,18,
25 17:15,19
18:12 19:1
21:14 23:15
26:12,23
27:17 28:12,
14,16,17,20,
23,25 30:1,
11,20,21
31:10,11
32:7,12,18,
20,21,23
33:5,8,10,11
34:6,7,9,12,
22 38:5,7,11
39:11,20
40:11 41:8,9
42:20 44:6,9,
12,17,24
45:2,10,12,23
46:11,21
48:7,12,14,
18,21 49:2,21
51:8 55:1,2
56:3 58:10
59:3 60:11,
13,14,18,22,
23 61:19
62:8,12
65:11,12
66:17

California's
16:10 18:20

California-
centric
26:22 43:18

Californian
31:8

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

Californians
45:4

call
4:5 26:6
46:12,15,17
47:16 50:14
57:23

called
13:14

cameras
11:11 39:17

candid
7:10

candor
52:8 69:1

canoe
66:5

capture
46:15

care
15:10

carrier
53:9

carries
27:25

carry
28:2

case
6:12,24 11:2
12:6 25:15
27:2,6 28:18,
20 29:2,3,20,
21 30:17
31:15 32:8
35:10,15,23
36:6,15 37:25
38:22 41:14
43:20,23,25
45:4,24 46:11

49:1 50:9,15
51:19 53:21,
24 54:2,10
56:7,12
57:14,20,23
58:1,5 59:22
60:22,25
61:3,5 62:18,
21 63:16 64:3
65:2,3,23
68:15 70:1
71:18

case-by-case
9:8

cases
3:5 4:9 6:7,10
9:1,2,14,16
10:4,6,9
12:14 14:1,2
16:8,14,21,24
17:1,5 18:6,8
20:6,8 21:21
23:9,19,25
25:1,16 27:2,
12 31:20,25
32:1,3,4,7,12,
19 33:10,14,
15,20,22
34:7,17,22
35:3,6,7,15,
18,20 36:7,14
37:12 38:17
39:3,22
40:12,13,16,
18 41:1,8,9,
14,16,17,22
42:3,6,12,18,
20 43:2,7,25
44:2,5,6,23,
24 45:9 46:9
50:20,24
51:5,12,15,23
52:4,5,17,21,

25 53:5,12
54:22 55:2,5,
12,15 56:2
60:20,21
61:1,4,6,7,19,
20,23 62:20
63:7,13,15
64:14,17,19,
21 65:8,16,
19,21,24 66:2
67:11 68:14,
18 69:18,20
70:5,6

catch
6:23

catchphrase
29:25

causation
26:10

causing
24:2

cavalierly
27:21

cede
25:9

Celine
3:11 25:15

center
46:15 48:22
50:16

centered
23:15 60:18

centers
46:13 47:17

centralized
48:18 62:24

cetera
46:20 52:23

chagrin
35:5

challenge
6:25

chance
4:21 8:6

change
20:2 42:16
44:10,13
69:21

characterized
43:19

charge
20:7,8 63:5

check
6:17

cheek
16:4

Cheng
53:18 54:9

cherry-pick
40:24

Chicago
46:6

chip
46:16

choice
12:8 14:19
23:2 29:10
34:3 63:13

choose
40:13,18
41:22 61:12,
13 63:12

choosing
61:10

circle

66:4

cite
19:5 44:5

cited
19:7 45:1

cites
27:20 29:1

citizens
45:2

claim
12:22 56:15,
17,18,20,23
61:17

claims
18:23 43:8
47:11 56:13
62:7

clarify
8:18 32:15

clean
33:2

clear
45:15,20 54:9

clearinghouse
61:8

clerk
4:25 5:2 6:23
68:25 70:25
71:3,6

client
31:2 53:22
55:5

client's
14:9

clients
17:9 24:13
62:23

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

close
39:9 54:11

closed
3:23

closing
28:23 30:10

CMC
71:3,9

co-counsel
3:13

coincidence
48:5

colleagues
3:17 15:13

comment
29:7

commissions
13:17

common
22:21 23:13
53:9

communities
42:11

companies
13:13,14,15
45:10 61:12

company
13:1,19 15:16
34:13 39:15
44:12,16,17
45:6,12 48:18
60:13,16,17,
22 61:10
62:21

comparative
58:8,20 59:2,
3,10

compared
10:1

compel
38:10

compelled
57:4

compelling
13:25 15:18
39:21 65:3

compensatio
n
24:24

competing
34:8

competitors
13:14

complainants
46:20

complaints
46:18

complex
50:14 52:13

complicated
23:8

complying
46:3

conceivably
68:19

concept
70:7

conceptually
43:23

concern
4:3

concerned
10:17 24:3
33:23 55:19

concerns
3:24 8:14,15
66:23 67:7

conclude
29:5

concluded
72:8

concludes
36:2

conditionally
66:14

conditioning
66:14

conduct
11:18 13:2,11
15:3,20 28:19
44:1 45:8
48:2

conducted
36:1 66:17,24

confer
8:25 59:19
70:3 71:10

conference
70:1

confirmation
4:8

conflict
14:18 34:2

confront
64:10

confronted
55:23,24

confusing
12:9 27:12

confusion
9:9,10

congestion
10:4 18:4

connection
4:10,12

connects
8:5

consensually
43:10

consequence
49:9 51:14

consequence
s
29:23 49:10,
11

consideration
s
31:4

considers
25:18

consist
26:7

consistent
26:11

consulted
54:9

consumed
26:15

contacting
46:19

context
8:16 9:12
32:3

contexts
15:9

contiguous
71:16

contours

58:1

contractor
53:10

contrary
28:15 51:7

contribution
56:12,22

contributors
48:12

contributory
58:19

control
35:12 37:21
38:19

controlling
65:1

controls
28:11

convenience
23:22 26:21

conveniens
4:6 68:14

convenient
7:4 71:15

convert
50:13

convincingly
37:1

cooperate
67:6

cooperation
67:10

coordinate
62:11,14

coordinated
10:8 20:3
21:21 23:12

**TRANSCRIPT OF PROCEEDINGS**

24:15 37:7,9,
10 51:23 52:4
53:16,17

coordination
6:5 9:14
10:11 23:22
25:6 39:4
51:7,8,21
52:2,6,13

copy
68:24 69:8

corporate
11:18 20:12
34:12 44:1,9
48:2

corporation
6:12 12:3
15:3,6,23
16:5,6 28:25
43:25 49:2
60:24

corporations
44:3,24

correct
27:4,8 33:13
40:16

correctly
4:16 16:5
27:3

cost
38:4 62:21

Council
29:7 35:13

counsel
8:4 9:4 21:8
24:17 37:5
60:21 62:17
63:5,10

counsels'

69:2

counterargu
ment
20:19

counting
47:9

countries
10:19

countries'
10:20

country
19:21 50:21
60:16 65:19,
22

county
6:13 36:7,15
51:13

couple
4:7 35:1
67:15 70:11

court
3:4,15,19,22
4:18,20 5:1,6,
9,25 6:2,13,
22 7:1,4,5,12,
22 8:1,3,8,10
9:4,19 10:4,
24 12:20
13:6,9 14:8,
12,20,25
16:1,4,15
17:8,16 18:2,
4,6,13,22,24
19:2,4,7,9,14,
24 20:18 21:5
22:8,12 24:5,
9 25:10,13,
17,23 26:24
27:1,5,11,20
29:1,4,10,15,

17,18 30:2,8,
13,18 31:4,23
32:14,15,18,
23 33:1,3,7,
17,24 34:5,
15,25 35:2,5,
25 36:1,6,12,
22,25 37:14,
19,24 38:24
39:6,24 40:1,
2 41:25 43:11
44:13 46:12,
22 48:4 49:5,
7 50:5,11,13,
15,18,20
51:19 52:1,3,
8,12,14 53:13
54:8,17,20,25
55:8,16,19
56:14,18,21,
24 57:2,5
58:7,17,24
59:4,7,12,15,
18,23,25 60:5
61:15 62:6,8,
9,11 63:22,24
64:25 65:7,
10,14 66:8,22
67:16 68:1,3,
4 69:7,9
70:10,12
71:2,5,7,24
72:3

court's
7:4 8:14
64:19 69:18
71:11

courthouse
28:23 29:13
30:11 55:21
57:20

courtroom

10:14 36:11
53:22 54:7
60:7

courtrooms
10:13,14

courts
9:17,19
19:15,17
20:15 21:17
29:13 39:7
50:5,16 51:9

create
18:9

created
9:10 51:7
52:13,14,17

creates
42:11

creating
51:12

criminal
56:9

criminally
27:3

criteria
65:10,14

critical
27:14 31:3
57:6

criticism
46:23

crucial
10:5

cry
51:1

Cubberly
3:12 4:17,18
5:24 8:20

22:14,17
69:6,9 72:7

Cubberly's
14:9

curious
51:20

current
26:12 32:20
47:7

Cutter
3:9,10,11,13
8:12 14:17
18:9 25:9,12,
13,14,15
26:25 27:4,8,
13 30:5,24
32:17,22,25
33:2,6,13
34:4,14,23
35:1 36:1,24
37:13,16
39:24 43:19
49:8,21 60:3
63:23,24,25
67:18,21 68:2
70:21 71:8
72:1,6

Cutter's
24:6 54:25
66:8

cynical
64:21

_____

D

damages
53:10

data
33:21 36:13
68:18

**TRANSCRIPT OF PROCEEDINGS**

day
26:15 37:24
40:9 64:25

days
15:23

DC
48:11

deal
20:12 33:19

dealing
10:14 22:22

decide
35:6,7 55:12
65:2,4

decided
15:19 23:12
41:2

decision
18:16

decision-
making
45:19

decisions
39:16 44:4,9
45:21 47:12

declaration
47:3 64:5

decline
62:1

defective
23:18 45:4

defend
43:4,9 56:7
63:7

defendant
12:7 15:16
28:4,18,19
55:5 64:2

defendant's
26:9 38:18,20

defendants
3:17 5:22
11:1,5,6,20,
24 12:6 35:10
44:6 56:3

defending
43:2

defense
33:16 57:6,20
58:2 65:4,9

define
58:1

Delaware
16:5,6,9,10,
24 17:1,14
42:25 62:13

demurrers
10:10 53:4,8
54:16

denied
22:22 57:21

deny
69:22

denying
49:12

dependent
30:19 31:13

depending
44:14

deposition
39:1 64:11

depositions
20:11 21:12
32:2 38:11
50:1

deprived
24:15 25:4,6
40:22 41:24
65:23

depriving
37:3

describe
29:7

desk
70:13

detailed
47:19 69:2

details
67:4

determine
41:3 58:2

determined
23:21,24
24:23

determining
41:20 42:12

detriment
37:14

developed
25:4 32:3

devil
67:4

difference
10:5 43:23
59:5

differences
21:10

differs
58:9

difficult
67:9

direct

66:11

directed
53:5

direction
48:25

directions
67:17 71:10

directly
68:15

disagree
12:17

disclosing
5:13

discomfort
5:20

discovery
9:20 17:9
19:22 20:13,
24 21:19
24:16 32:2
35:21 36:8,9
37:7 38:4
39:4,5 40:7
49:18,20
52:20,23,24
59:21 62:23
64:14 66:5,17
67:5,7,23

discretely
44:21

discretion
62:1

discuss
7:14 13:24

discussed
10:24 23:15
26:1 53:4
65:10

discusses
19:13

discussing
19:12

discussion
68:13

dismiss
25:1 35:23
37:19 44:11
54:24 56:11
65:17

dismissal
29:8

dismissed
40:18,19
41:1,21 42:19
44:7 45:8,9
53:12 54:22
55:15 57:21
60:23

dismissing
29:20 30:2

disposal
30:9

dispute
16:25 57:18

disputed
26:17 27:23,
24

disputes
52:24

distinction
30:6

distinguish
55:25

distinguished
29:20

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

**distinguishing**
29:19

**District's**
27:20

**divulging**
5:13

**docket**
35:15

**doctors**
10:22

**doctrine**
12:16

**documents**
21:19 43:17
44:18

**Doe**
3:10,14 5:24
25:16 26:6,8,
16 28:10,22
30:19 31:5,8,
13 56:4

**Doe's**
29:14

**domiciled**
11:6,21

**Dordick**
6:12

**drafted**
5:12

**drastic**
29:24

**draw**
16:12

**drive**
64:18

**driver**

26:19 43:14
56:9 57:4,9,
11,14,19
59:11 64:3,
15,16

**drivers**
11:11 23:16
27:1 39:17

**driving**
39:21

**dry**
72:4

**due**
12:12 24:12

**duplication**
49:19

**duty**
26:9

——————
**E**
——————

**e-filing**
7:6

**e-mailing**
68:25

**early**
3:23 15:22,23
70:18

**ease**
26:7

**easy**
5:9 68:12

**Economy**
18:17

**effect**
21:1 39:14
54:3 58:21
71:11

**effective**
39:22

**effectively**
28:23 36:8

**efficiency**
24:2 66:1
67:10

**efficient**
23:25 49:15
50:4,21

**effort**
5:12 18:25
47:18

**efforts**
66:6

**electronic**
7:9

**eliminate**
14:21 34:2

**employees**
11:14,15 13:4
26:13 38:7,
12,21 43:17
45:25 46:5,6,
7 47:7 48:6,7

**employer**
15:16

**enacted**
51:21

**end**
36:4 64:25

**endeavor**
71:14

**ends**
32:8

**enforce**
55:20

**engage**
41:3 45:7

**enormous**
38:3 49:19
62:20

**entire**
20:2 46:2
57:17 70:5

**entirety**
43:20

**entitled**
18:15,17
24:24 26:2
42:1

**entries**
16:18

**equal**
26:2 46:23

**equally**
31:2,15

**equitable**
20:5 33:22,23

**equity**
58:5

**era**
7:9

**essentially**
36:6 38:19
65:13

**establish**
26:9

**established**
23:14

**event**
37:9 41:5

**everybody's**
36:15

**evidence**
10:18,21 12:4
25:4 26:10,22
27:16 28:13
29:8 32:4
38:13 43:16
47:1 62:24
63:1

**exercise**
40:6 43:3
62:2

**Exhibit**
17:4

**existing**
14:15

**expeditiously**
3:22

**expenses**
24:18

**experience**
31:20 37:22

**explain**
18:10

**exposure**
11:4

**exposures**
11:22

**extended**
11:22

**extensive**
25:20 46:24

**extensively**
26:1

**extent**
43:13,18 67:1

**extra**
18:8,9,11
45:3

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

extrapolation
9:7

extreme
57:11,15

eyes
54:11

_____

F

face
29:9

facilitate
7:3 23:20

fact
9:2 10:18
11:5,24 17:10
19:14,20
23:13 26:17
30:20 44:8
60:16

factor
10:1 30:23

factors
8:10,17 9:11
25:25 26:4
27:16 31:1
32:13 38:9
44:7,15
48:22,24

facts
5:16 10:17
44:14

factual
47:19

fail
36:5

Failing
23:16

fair
12:14 21:6
59:13,14

fairness
9:22 12:12
58:4 66:23

fall
54:22

fallacious
43:1

false
28:4

familiarity
21:7

family
15:12

fashion
31:22,23
63:19

fault
57:9 58:8,20

favor
34:9 44:8
58:5

favorably
14:19

favoring
29:9

February
70:18,22 71:9

federal
9:17

federalized
50:17

feel
5:18

feet

67:14

figure
9:1 69:16,23
70:16

file
30:13

filed
4:12 5:14
6:12 25:16
36:16

filing
53:4 54:16,18

filling
17:9

final
17:13 35:11
66:8

financially
25:3

fine
8:1 16:3
24:11

finger
30:5

fingerprint
39:17

firm
6:18 22:17

fix
5:21

flew
33:4

flexible
9:24

flexibly
9:24

flooded

50:20

Florida
42:25

FNC
4:6 7:14 21:7
29:20,21

focal
28:3,6

focus
7:24 8:9
25:22

focused
8:11

folks
21:8 48:14
65:17

folks'
37:11

footnote
5:11 59:1

fora
66:25

force
3:25

foreign
10:19 66:15

foreseen
23:7

forget
53:2

form
64:18

formal
58:14

fortunately
36:3

forum
4:6 12:11,15
13:10 18:16,
21 19:2 22:22
24:21 28:11,
16 30:4 35:24
36:18,20
53:25 57:3,
16,17,19
60:23 61:22
62:1,4,5,10
64:13 68:14

forward
39:22 61:3,19
62:18

foul
51:1

found
56:14

frame
56:6 70:24

Francisco
51:13

frankly
8:5 16:16
41:6

free
37:19

friend
3:13

friends
47:8

front
10:7 20:3
57:12

full
3:24 32:2
58:1

**TRANSCRIPT OF PROCEEDINGS**

**fully**
59:15 68:10

**fulsome**
32:1 39:2

**function**
21:10 46:2

**fundamental**
9:22 12:12
30:10

**fundamentally**
12:14,15 66:4

**G**

**general**
12:10 61:16

**generality**
5:20

**generally**
7:6

**generated**
6:24

**Gilmore's**
47:3

**give**
19:5 31:25
63:1 68:18
70:2

**global**
23:20 37:11
49:16

**goal**
33:19 41:15

**good**
3:4,7,9 7:25
18:16 25:12,
13,14 30:24

**fully**
40:3 52:16
62:16 63:2,3
69:1

**governed**
21:13 34:6

**governs**
29:3

**grant**
34:21 49:13
66:12

**granted**
9:15 44:25
53:8 56:2,10

**granting**
7:17 49:10

**grappling**
68:10

**grateful**
69:1

**gravitational**
48:22

**great**
6:2 51:4 69:9
71:7

**greater**
13:10 16:9
42:10

**greatest**
39:11

**ground**
22:7 62:2

**grounds**
29:20,21
60:23

**group**
37:23

**guess**

20:19 23:5
40:5 63:16

**guide**
33:20

**H**

**half**
26:15 60:8

**hand**
69:21

**hands**
23:10,11
38:20

**hang**
32:15

**Hansen**
10:24 11:17
13:5 45:9

**happen**
15:11 18:11
19:3 52:15

**happened**
10:25 11:4,7,
23,24 12:2
54:2 65:6

**happenstance**
31:6

**happy**
5:21 24:11

**hardship**
57:15

**harm's**
4:1

**hate**
22:4 43:2

**Hawaii**
14:9,16 21:14
31:9,12 42:25
56:13 58:6,8,
13,15 59:1
60:15 62:15
64:3,4

**he'll**
64:6

**headquarter**
12:21

**headquartered**
12:7 15:4
16:10 28:18
34:12 39:15
44:3,16 56:1
61:11,22

**headquarters**
15:19 61:15

**hear**
7:19 8:1
20:19 34:15
49:7 53:13
68:9 71:17

**heard**
22:23 64:20
67:16

**hearing**
3:5,22 18:23
34:1 66:22
68:24

**heart**
45:5 46:9

**held**
56:16

**helpful**
68:8,20

**high**

22:12

**higher**
22:14,15,16

**highly**
57:10 65:5

**hire**
37:5

**historical**
52:9

**hit**
3:24

**hold**
57:7

**holding**
28:9

**home**
29:10 41:25

**honest**
50:23

**honestly**
55:24

**Honor**
3:7,9,13 4:19
5:3,8,23 6:1,
17,21 7:1,11,
21 8:25 9:14
10:3 18:5
20:14 22:11
24:3 25:1,12
27:8 30:25
32:25 34:24
37:17,22
39:23 40:3,8
41:6 42:9
45:13,16
48:8,23 50:23
51:6 54:22
55:24 58:12,
22 59:17,18,

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

24 60:9 63:8,
19,25 66:7
67:21 70:8,9,
21 71:22
72:1,5,6,7

**Honor's**
19:19 21:4

**hope**
41:13 68:9
70:13

**hoping**
59:25

**horrible**
22:24

**horribles**
22:24,25
53:15,18

**hotly**
27:24

**hour**
60:8

**hours**
71:16

**housekeeping**
4:7

**huge**
39:4

**hundred**
36:4

**hundreds**
10:22 18:23
20:6 24:13
33:13 37:3

**hurt**
25:3

**hyperbole**
50:13

**hypothetical**
16:1 22:25

---

**I**

---

**ice**
37:12

**idea**
9:7 32:4 71:7

**identified**
47:24 48:8,23

**identify**
11:13 48:1
64:15

**imaginary**
22:24

**imagine**
33:3 70:15

**immensely**
66:3

**impact**
19:14,17,18

**impaired**
39:18

**impediment**
38:2

**implement**
17:4 23:16

**implicates**
13:4

**implications**
69:17,23

**importance**
67:25

**important**
8:2 27:18
30:6 47:25

**hypothetical**
48:10 59:6
60:6 61:1
64:17 65:20

**inadequate**
28:1

**incident**
27:10 28:6
30:22 32:19,
24 33:9,11
34:5 43:16
65:11

**incidents**
16:8 46:8
55:6

**inconsistency**
21:9

**inconsistent**
20:23 39:5
63:14

**inconvenience**
29:25

**inconvenient**
28:22 29:6
62:4

**incorporate**
61:10

**incorporated**
16:11

**incorporating**
61:15

**increase**
51:9 52:15

**Incur**
24:17

**indemnity**
56:12,15,23

**independent**
30:22 53:10

**independently**
37:21

**indirect**
20:1

**individual**
19:2 43:8

**informational**
42:11

**inherent**
35:14

**initial**
71:3

**injured**
15:5

**injuries**
11:25 15:4

**injury**
14:24 34:11
43:7,24 50:10

**input**
42:11

**insist**
64:23

**insisting**
63:9

**instructive**
29:2

**intake**
46:18

**intend**
9:6

**intended**
29:7

**intending**
32:10 68:23

**intends**
57:22

**intention**
67:8

**interest**
8:10,14,17
9:11,23
13:11,25
14:24 15:3,9,
15,18,19 16:9
17:3 18:4,18
27:15 31:1
32:13 34:10
39:10,11,21
45:3 48:23
52:9,10 58:15
67:10 68:3

**interested**
45:4

**interesting**
56:5

**interests**
34:8

**interfere**
4:1 10:20

**interrogatories**
11:10

**interrupt**
19:4 24:10
26:24 29:15

**interstate**
18:18 19:1

**investigated**
46:10

**investigating**
46:19

**TRANSCRIPT OF PROCEEDINGS**

investigation
27:9

invitation
32:9

invite
5:17

invoked
62:6

involve
44:24 51:23
55:14

involved
47:10 52:19
62:3

involves
6:9

involving
28:6 41:8
44:6 45:10
52:25 56:3

Iowa
21:13 37:20
50:1 62:15

issue
10:4 14:18
19:24 27:19
30:11 34:3
55:22 58:15
62:10 67:19
69:12 70:2

issued
7:16 28:19

issues
4:8 10:9
11:15 14:5,19
19:21 20:24
21:19 22:6,23
23:13 46:25
47:20 52:22,

24 56:6 68:11
71:18

issuing
19:23

___ J ___

Jane
3:10,14 5:24
25:16 26:6,8,
16 28:10,22
29:14 30:19
31:5,8,13
56:4

January
3:1 70:12

JCCP
23:15 25:16
31:19 33:19
36:2,5 50:19
51:11 61:9

JCCPS
36:3

Jersey
42:24

job
36:7 50:22
51:6

judge
4:17 10:7,8
34:16 49:9,18
51:4,14
53:18,23 54:9
57:12 61:4
62:12 69:6

judges
10:13 19:15,
17,21 20:8
68:19

judicial
18:17,18,20,
25 21:20
23:12 27:9
29:7 35:13
49:13 50:17

jump
19:5

juries
42:10

jurisdiction
12:10 18:14
20:5 56:11
58:9,19,20
59:2,3 61:16
62:2,4,6

jurisdictions
16:22

jurors
15:9,10

jury
33:17 35:7
57:7,8,12

justice
24:22 41:25

justify
29:8

___ K ___

keeping
29:13 52:17

Keller
3:18

Kern
51:13

key
60:10

kind
9:8,12 10:1
16:11 20:20
27:21 39:1
45:3 53:14
58:18 64:20,
23 66:18,21
67:22

kinds
46:25

Kyle
3:17

___ L ___

LA
51:13

lack
56:11

language
29:2

large
9:16 37:23
44:25 49:14

larger
40:21

late
70:18

law
6:12 14:16,
18,19 18:16
23:3,13 28:16
34:2,3,7
35:15 44:4
46:3 55:3,14
58:9 59:10

laws
10:20 15:2
21:8,10
52:22,25 53:8

54:18

lawsuit
14:13

lawyers
50:22

lead
13:9 37:11

leadership
25:17 31:19
70:22

leads
14:13

left
34:21 40:4
60:1

legal
42:16 53:15

legislature
51:10

legitimate
66:23

length
16:17

lengthy
7:17

level
5:19 45:18

leverage
41:12

Levin
3:7,8 5:25 6:1
7:19,21,23
8:2,6,9 13:8,
22 14:11,17
15:1 16:3,13,
25 17:11,18
18:3 19:6,8,
10 21:2,16

**TRANSCRIPT OF PROCEEDINGS**

22:10,13,15,
19 24:7,11
25:11 31:17
37:1 38:15
39:7 49:8,17
51:22 52:6
60:2,4,9
69:17 70:9
71:23 72:2

**Levin's**
29:22 31:2

**liability**
32:3 38:24
43:7,24 48:2
50:10 53:9
60:19

**liable**
56:16

**lifelong**
31:8

**light**
7:23

**lighten**
51:8

**likewise**
47:14 69:22

**limit**
20:4,11

**limitations**
58:16

**limited**
55:2 68:14

**lines**
66:13

**list**
14:2 17:4

**listen**
69:2

**litigants**
20:17 25:7

**litigate**
41:7 43:4
53:24

**litigated**
43:8 53:23
57:18

**litigating**
54:5

**litigation**
20:2,22 30:16
38:20 39:12
50:10,15 61:9
62:14 65:25
66:24

**live**
15:13 57:6
67:25

**lives**
15:13

**load**
51:8

**local**
19:14 45:18
58:13

**localized**
48:19

**located**
28:13

**locating**
61:15

**locations**
60:12

**locus**
65:25

**log**
20:10

**long**
13:2

**longer**
11:14 20:7
69:11

**looked**
16:15 44:21

**lookout**
20:21

**Los**
6:13

**lost**
5:10

**lot**
11:7 12:1
13:3,4 17:7
19:20 68:13

**lots**
6:24 11:18

**loud**
33:24

**lousy**
3:20

**LSA**
41:21 45:24

**luck**
48:17

**lunch**
71:19

**Lyft**
22:3,4,9
53:17

---

**M**

**Madam**
39:25 59:25

**made**
5:12 8:20
39:16 44:5
45:21,23
47:12 51:22
54:2 64:1

**magnet**
50:14

**main**
4:4

**maintain**
24:1

**majority**
28:13

**make**
6:18 12:19
27:12 29:15,
16 43:12
44:11 54:23
58:12 59:8
60:5 67:22
70:7,19

**makes**
13:12 44:9
49:8

**making**
51:18 66:16
67:8

**malpractice**
64:9

**manage**
9:20 23:25
35:14

**managed**
31:21 36:8
48:13

**management**
21:18 31:17
62:24 70:1

71:18

**manager**
46:1

**managing**
21:21

**manner**
33:23

**march**
37:20 70:18

**mask**
55:17

**mass**
43:25

**materialized**
22:7

**math**
16:16

**matter**
6:21 31:7
47:10 49:24
53:14,15
58:16 71:15

**matters**
7:13

**MDL**
50:16

**meaningful**
33:20 64:10

**means**
4:23 16:23
37:11 52:20,
21 70:3

**meant**
14:15 46:22

**measures**
23:17

**mechanism**

**TRANSCRIPT OF PROCEEDINGS**

30:8 51:12

**medical**
10:22

**meet**
8:25 26:10
59:19 65:10
70:3 71:10

**mentioned**
6:21

**microphone**
8:5

**minute**
33:25

**minutes**
60:1

**misconduct**
34:12

**misses**
60:12

**misunderstan
ding**
29:17

**Mm-hmm**
14:25

**modified**
59:2

**moment**
22:2 26:5
31:9 58:23

**Montana**
10:25 11:3,4
13:20 40:12
42:25 50:1

**month**
25:18

**Morris**
11:20 13:5

45:8

**motion**
5:4 9:15 22:6,
22,25 25:17
34:18 40:7
41:2 42:17
44:11 49:10
53:7 54:1,5
56:11 61:22
70:22 71:17

**motions**
4:6,7,11,12,
14,15,25 5:1
7:15,18 34:21
44:25 53:5
56:2 66:13
69:22 71:12

**move**
54:24 62:18
71:14

**moving**
4:13,23

**multinational**
15:23 44:19

**multiple**
12:6 20:22
66:25

**multiplying**
16:18

**Myers**
18:12

**myriad**
23:8

**N**

**named**
4:14 43:15

**narrower**

70:6

**national**
50:10,14 51:4
61:8

**nature**
40:24 41:19

**NDCA**
28:5

**Nebraska**
65:4

**necessarily**
21:17 34:9
45:22 50:1
60:15

**necessity**
5:15

**needed**
29:8

**needn't**
67:11,12

**negligence**
26:9 39:14
58:19 59:2,3

**network**
13:15

**NFL**
29:1,3

**nominate**
35:11

**non-california**
35:18 63:9

**non-
defendant**
64:2

**non-resident**
18:8

**non-residents**

15:5

**nonparty**
26:20 28:6,11
64:3

**nonresident**
18:21

**nonresidents**
13:3 17:6

**Northern**
27:20

**noted**
45:16

**notes**
69:2

**notices**
7:3

**noting**
14:1

**notion**
28:3 42:23
45:11 64:16

**notwithstandi
ng**
28:12 47:17

**number**
6:10 9:16
10:4 16:18,19
22:8 47:2,3,9
52:17 56:1
63:13 68:14
69:20

**numerous**
55:14

**O**

**objects**
35:22

**observation**
47:20 68:7

**obviate**
14:21 63:20

**occurred**
11:22 12:1
15:20 16:8
28:20 30:22
32:20 33:9
34:6 38:18
65:3,6,11

**occurrence**
65:6

**occurs**
14:24 68:5

**odd**
14:2 17:5
56:14

**offended**
66:20

**offering**
34:19

**office**
44:9,12

**officer**
21:20

**offices**
45:14 47:2,4
60:12,17

**omissions**
11:8

**open**
29:13 46:16
70:19 71:6

**opening**
5:4

**operation**
46:2,10 47:16

TRANSCRIPT OF PROCEEDINGS

January 04, 2023

48:13

**operations**
45:16,17,22
55:7

**opinion**
27:20 28:5

**opinions**
29:19

**opportunity**
24:22 46:23
64:10

**opposed**
4:16 6:11,19
30:3 39:1

**opposing**
6:20

**opposition**
5:7 8:22 9:7
48:25 59:1

**option**
61:1,5

**order**
9:14 17:4,13
20:9 23:14,23
25:5 42:3
43:1 50:19
62:25 65:7
68:23 69:7,
12,13,14
70:11

**orders**
19:24 63:19

**Orrick**
61:4

**out-of-state**
22:5 23:1
32:8 38:17
40:18 41:16
63:7,15,16

65:16

**outcome**
12:18 42:17
67:12

**outcomes**
41:13

**outright**
30:3

**outweigh**
19:1

**outweighed**
48:24

**overemphasize**
9:25

**overseas**
10:18

**oversee**
51:15

**overseeing**
49:18 52:24

**overstated**
45:12

**overwhelmingly**
27:17

———————
**P**
———————

**p.m.**
3:1 72:8

**paddle**
66:5

**pages**
16:19

**panel**
23:12 25:6

**paper**
5:10 6:24

**papers**
4:13,23 42:9
47:25 48:16
58:7 59:1

**paperwork**
36:10

**parade**
53:15

**part**
17:2 18:16
24:16 25:17
37:23 47:18,
19 48:1 59:22

**participating**
43:3

**parties**
14:20 31:25
33:18,21
36:13 66:1
69:22 71:10

**parties'**
67:5

**party**
5:14 31:12
35:22 57:4
64:18 68:23

**pass**
53:19

**passed**
14:6

**passengers**
39:19

**passionately**
37:2

**past**
43:13

**path**
17:25

**paths**
37:4

**pay**
7:7

**pendency**
35:19

**pending**
6:5,16 53:18
56:12

**people**
10:22 13:3
15:11 29:13
43:8 60:12,
14,17

**percent**
36:4 38:25
64:14

**perfect**
63:21

**period**
11:8,19,22
13:2 62:22

**person**
12:22 14:7
60:6

**personal**
18:14 43:7,24
50:10 56:11

**persuasive**
54:2

**persuasively**
49:17

**petition**
6:19

**petitions**
6:5,16

**phone**
8:4

**phrase**
28:21

**phraseology**
29:5

**physician**
31:11

**pick**
33:4 41:1
42:19,21
63:16 65:5,9

**picks**
33:16

**picture**
25:2

**ping**
7:7

**place**
28:11 34:18
39:12 41:10
46:8 50:25
51:3 61:24,25
62:8

**places**
38:19 45:15,
18

**plaintiff**
6:20 11:3
26:8,10,19
27:25 28:12
29:23 30:2,17
32:20 37:17
43:15 56:6
57:22 59:20
62:3 65:9,11

**plaintiff's**
26:10 29:10
33:16 34:11

**TRANSCRIPT OF PROCEEDINGS**

**plaintiffs**
3:8,11,12
4:14 7:15
9:18 12:1
18:21,23
22:5,9 29:24
31:15 32:5,6
37:3,22 38:3
40:23 41:8
42:24 43:3,12
44:1 55:6
66:3,16

**plaintiffs'**
8:15 21:3
34:8 47:11

**plan**
41:7 51:17,18

**plans**
4:1

**play**
61:23

**played**
48:17

**pleading**
53:3 54:16
55:10

**pled**
27:3

**plenary**
35:5 65:14

**podium**
25:9

**point**
4:2 7:9 12:19
13:6 20:18
25:24 28:3,7
29:22 35:16
36:6,14,16,
18,20 37:17

40:6 45:2
48:21 49:22
50:3 51:22
58:13 59:7,9,
21 60:11,13
68:15

**pointed**
10:3 42:5
45:13 48:8
65:21

**points**
13:12 33:21
36:13 37:16
49:4,17 60:21
64:1 68:19

**police**
27:9

**policies**
27:21

**pool**
31:24 32:7,9,
12 33:16
40:9,20,21
41:4 55:11
65:8 70:6

**portends**
14:22

**portfolio**
43:6

**positions**
38:7 68:10

**positive**
41:13

**possibilities**
31:17

**possibility**
20:23

**potato**
46:16

**potential**
56:9

**potentially**
9:18 37:12
53:8

**power**
30:8 35:6
38:24 49:25
61:6 65:1,14
66:12 67:2,3,
4,22

**powerful**
29:12

**practical**
53:14 54:12
67:5

**practice**
40:7 54:6

**precious**
46:24

**preclude**
9:6 32:10

**precluded**
12:18

**preface**
49:5

**prejudice**
57:15

**prejudicial**
57:10

**preliminary**
7:13

**prepared**
32:6,11

**prerogative**
57:25

**presence**

49:1

**present**
61:7

**preserved**
66:1

**preside**
60:10

**presides**
65:11

**presumption**
28:16 29:9

**pretty**
25:8 47:5

**prevail**
56:20 71:19

**primarily**
7:14,24 8:10

**principal**
56:8,9,25

**principled**
55:25

**principles**
31:14

**private**
9:23 25:25
26:4 27:15
30:25

**privilege**
20:10 52:23

**problem**
5:21 9:18
21:3,4,18
33:14 51:12,
18

**problems**
14:21 17:25
23:2,5,6,15

24:2 42:15
61:7 63:20

**procedure**
7:2,5

**procedures**
27:22

**proceed**
12:15 32:1
35:23 61:7

**proceeding**
22:9 31:3
37:9

**proceedings**
31:20 32:5
37:10 53:17
72:8

**process**
12:12 24:12
35:20 36:2,5,
8 41:3 46:19
47:9 52:20
53:1

**processed**
46:9

**product**
43:7,24 50:10

**program**
59:21

**progress**
30:16

**promised**
31:18

**promote**
39:18

**prompts**
66:9

**proof**
26:9,11

**TRANSCRIPT OF PROCEEDINGS**

proposal
9:25 32:16
34:1 38:14
40:5 42:14

proposing
37:8,18

propounded
11:10

prosecuted
27:3

protective
20:9 25:5
62:25

protocols
20:11

protracted
30:15

prove
41:14 50:6,8
62:21

proven
45:7

provide
18:20 68:24
69:7

public
8:10,14,16
9:11,23 13:17
18:3 32:13
39:10 48:23

pulled
15:10

pulling
51:20

Punitive
53:10

pure
59:3

purposes
35:21

put
3:25 30:5
35:7 37:12
57:11,22 58:3

putting
32:11 37:4

___

**Q**

quagmire
22:1

quantum
29:8

question
13:10 14:22
16:2 17:13
30:24 52:10
58:17,18 66:9

questionable
65:5

questions
14:14 23:3
59:17 68:9
69:3

quickly
41:24

quote
28:21 29:5

quoted
19:9

___

**R**

raise
4:7 7:13
52:22 55:17

raised
12:9 22:24
67:19

raises
22:6 56:5

random
33:5

rape
65:3

rare
38:22

reach
60:14

reading
38:25

ready
59:19

real
10:21 61:2
69:4

realities
54:12

reality
38:1

realizing
61:13

reason
12:8,9,24
16:25 23:11,
20 28:5
51:19,20
60:20 61:21
62:10,16,19
63:2,3 67:6
70:11

reasoning
50:6

reasons
7:18 22:2
54:1

recall
16:5 27:3
56:23

received
7:16

reconstruct
69:3

record
45:13 46:24
47:19 53:21

records
10:23

redress
37:3,5

redressing
34:10

reduce
52:14

reexamine
31:4

referee
36:9

reference
42:8

referenced
38:16

referred
33:15 39:7
45:19 47:8

refile
37:6

refiled
9:17 30:4
40:19 42:19

54:23 57:21

refiles
41:21

regard
58:10

regime
67:5

regimen
37:18

regional
46:1 47:1,4

regulate
19:22,23

regulated
13:16 45:18

regulating
13:11 15:3

regulations
14:5,6,14
17:20,21 21:7
46:3 58:13,14

reinforce
35:4

relates
6:12

relating
45:22 55:7

relatives
15:14

relevant
38:6,13 39:16

relief
43:1

relieving
68:4

remain
18:6 63:3

**TRANSCRIPT OF PROCEEDINGS**

remanded
36:15

remands
36:7

remarks
66:8

remedy
41:25

remotely
8:4

reply
4:13 5:5

report
48:10

reporter
39:25 40:1
59:25 60:6
68:4

reporter's
63:22

representation
6:18

representative
33:15

represented
64:8

represents
22:17

repudiating
8:22

request
68:5,7,22

require
39:17

required

13:19 39:5
54:11 57:5

reside
38:5

resided
11:24

resident
28:12,17,24
29:9 30:1,11,
20,21 31:7
32:21,23
33:8,10,11

residents
11:2,16 13:3
15:4,12 26:12

resolution
33:18 37:11
39:22

resolve
33:22 36:6
43:10

resolved
37:25 57:18

resolving
36:4

resort
50:13

resources
18:20

respect
6:6 7:15
20:15 27:18
52:23 59:20

respond
67:15,20

responded
17:9

response
43:21

responses
64:14

responsibility
59:10

responsible
57:8,13

restate
14:15

result
39:13 49:15,
16

retained
59:8

retroactively
14:15

returned
31:10

reverberates
20:16

reversed
18:14

review
7:4

reviewing
46:19

ride
39:18

rideshare
3:5 15:7

ripe
56:18

ripple
54:3

risk
39:5

road
36:17 63:8

Robert
3:16

rooted
9:22

route
23:7

rug
55:23

rule
28:15,21
55:21

ruled
6:6

rules
8:25

ruling
5:12 7:17 9:1
40:16 67:23
69:18 70:2
71:11

rulings
20:23 39:6
55:2

———

**S**

safe
39:18 72:3

safety
23:17 48:10

sake
4:5

sales
46:1

San
51:13

savings
18:24

say-so
35:8,12

Schulman
51:4

scope
58:1

screen
7:7

seal
4:12,15,25
5:1,15

seconds
67:15

section
18:15,17

seek
41:7

seeks
42:1

segue
24:5 52:16

select
55:1,11

selected
34:7

selecting
32:7 40:10

selection
40:25 42:10
52:19 53:1
55:9

selects
31:24

send
64:21

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

sending
38:16

sense
31:13 49:9
70:7,19

sensing
24:5

sentence
67:21

sentences
35:2

separate
24:18

service
39:18

set
4:22 5:18
15:19 52:12
70:1 71:9

settle
41:14

settled
28:15

settlement
23:21 41:20

settlements
49:16

settling
42:12

sexual
15:11,20,24
17:22 20:3
28:24

sexually
24:19,20

shape
64:18 67:1,5

share
18:7

shared
18:17 23:13
67:9

sharing
38:3

She'll
41:23

sheets
17:10

shopping
62:5

short
71:4

show
27:25

showing
39:1 60:18

shows
45:13

side
47:6,14 53:14

sides
32:2 36:23
46:23 66:22
70:19 71:15,
21

sides'
68:10

signaling
69:13

significant
18:24

significantly
32:13

similar

31:22

Similarly
11:20,25

simply
40:23

single
18:22 49:18
60:25

sit
23:9 24:7

sitting
8:4

situation
29:3,14 30:1
33:3

situations
44:20 60:24

skimpy
47:5

small
19:13 44:17
59:7 63:13

Smith
3:17 4:19 5:3,
7,22 6:17 7:1,
11 58:12,22,
25

snowed
7:9

solution
8:13

solutions
21:25

solve
51:11

solves
42:14

someplace
30:14

sooner
53:6

sophisticated
46:17

sort
20:24 22:24
44:25 47:9
48:2

sorting
18:1

sought
52:6

sound
16:2 52:11

sounds
46:15

sparked
66:9

speak
8:15 30:25
31:16

speaking
7:7

spear
37:24

specialized
46:17 48:7

Specific
31:13

specifically
66:14

speed
6:14

spent
31:8

springing
66:18

Squibb
18:12

stage
53:3 54:16
55:10

stand
57:12 59:11,
18 71:12

standard
21:13

standards
42:16

standing
66:10

Stangvik
9:21 10:2,3,6,
12,17 26:2
45:1,8 51:22,
23 52:4

start
9:12 17:2
24:14 40:4

starting
9:21 15:24
70:12

starts
70:14

state
9:17 14:23,24
17:3,19 21:10
29:10 31:21
38:23 39:12
45:18 49:19
50:16,18
52:21,22,25
62:13

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

state's
16:9 21:7

state-by-state
13:16

stated
7:18

statement
29:12

states
13:18 14:3,5
16:23 20:22
21:11 38:17
39:7 41:1,18
42:6 43:4
44:8 45:16,17
49:14 50:2
51:16 52:25
53:6,9 54:19
55:6,7,15
65:24 67:11

statute
58:16

statutes
51:21

stay
30:8,13,15
61:6 62:17,19
63:3 65:15,18
66:2,14 71:19
72:3

stayed
23:10 30:12
35:19,20,21,
25 39:3

staying
29:21 30:3
40:17 61:2

step
28:8

sticks
69:14

stipulate
9:2 32:6,11
35:18 36:19
40:11,12

stipulated
6:9,16 7:3

stipulation
8:20

stop
20:25 63:17

storm
3:24 7:23

straightforwa
rd
38:13

streamlined
57:23

street
24:13

stress
59:10

strike
53:5

strong
27:19 29:9

stronger
34:10

structural
8:13

structure
18:10

struggle
69:10

struggling
24:1

stuff
10:10

stumbling
37:4

style
58:18

subject
4:14 11:10
14:9 20:21
25:5 34:17
38:18,23
47:10 58:15
61:14,16

submit
57:10

submitting
7:2

subpoena
38:19,24
49:25

subsection
19:10,11

succeed
53:25

successfully
59:20

sue
28:24 29:10

sued
56:23

Suffice
54:15

sufficient
62:16

suggest
8:12

suggested

52:21

suggesting
33:9

suggestion
68:6 70:20

suggestions
35:11

suggestive
54:14

suggests
8:21

suit
61:14

suitable
57:16

summarize
28:9

super
36:17

Superior
6:13

supplemente
d
47:23

support
36:10

suppose
33:25 34:15
41:12

supposed
10:6 50:17
55:20

Supreme
12:20 18:13
62:8

surely
50:19 53:4

swept
55:23

system
18:18,25
29:11 49:14
50:17,20

systems
50:18

**T**

table
21:8

tables
36:25

takes
26:14 40:22

taking
69:2

talk
8:16 14:18
39:10 52:16
58:4 70:4,16

talking
29:25 37:2
46:12,25

team
46:17 48:8

tells
5:2 16:21

ten
11:10,11
31:25 32:1,3
65:8

ten-year
11:8,19 62:22

tentative
5:12,13,18

**TRANSCRIPT OF PROCEEDINGS**

January 04, 2023

7:17,24 8:19,
21 10:5 13:12
25:21 26:1
27:21 28:9
29:1 31:5
35:2 40:16
59:19 66:13
69:15,21

**terms**
30:7 31:5
47:5 60:19
64:2

**terrible**
51:2

**test**
20:6 68:17

**testify**
26:19 38:5
57:5,6

**testimony**
26:12 38:25
67:25

**Texas**
11:22,24
13:20,25 14:3
15:17 33:4
41:21 45:25
46:3,4 48:13
60:15 62:14
65:6

**thing**
6:3 10:16
15:7,8 39:9
46:5 51:10

**things**
7:7 18:5 19:3

**thinking**
70:17

**thorny**

23:2

**thought**
25:20 52:10
58:20 63:6
66:9

**thoughts**
25:22

**thousand**
9:13 22:19
33:20 46:5,6
47:6

**thousand-
plus**
11:13

**thousands**
44:19

**time**
11:23 13:2
18:25 24:21
30:21 32:24
33:8,11 34:1
36:4 43:9
44:7 62:22
64:4 69:16,
19,24 70:2,3,
23 71:2 72:4

**times**
16:19

**tip**
34:8 37:24

**title**
13:15

**TNC**
14:4,5,6
17:19,21
58:14

**TNCS**
13:15

**today**
3:14 25:19

**today's**
68:23

**told**
47:15 57:24

**tomorrow**
37:19 65:7

**tongue**
16:4

**topic**
4:4

**topics**
47:25 48:1,6

**tort**
14:16 21:7
43:25

**tortfeasor**
56:9 57:1

**total**
22:8 47:3

**totally**
6:14 21:14

**touch**
9:3 69:18

**touches**
9:1

**toxic**
11:22

**train**
23:16

**transcript**
68:23,25
69:4,7,11

**transfer**
44:11

**transportatio
n**
13:15

**travel**
4:1 15:14

**treating**
31:10

**treatise**
51:20

**treats**
28:5

**tremendous**
19:17

**trenches**
31:19

**triage**
46:18

**trial**
26:4,5,14,21
28:4,7,13
36:2 38:12,25
39:2,4 41:24
43:20 49:25
56:5 59:13
60:10 64:4
67:24 70:12,
13

**trials**
36:14 37:10
40:10 41:19
42:4,5,7
65:24

**troublesome**
38:8

**true**
11:17 14:8
27:6,24 47:22
50:9 53:20

**trust**
7:16

**truth**
31:7

**turn**
18:3 36:25
49:4 56:4

**turns**
40:15

**two-way**
24:13

**type**
46:8

**typically**
36:3 38:2

---

**U**

**U.S.**
12:20 18:13
62:8

**Uber**
3:5,17 4:12
5:22 8:25
11:14,15
13:4,13 15:8,
15,19,20,22
16:4,10,21
17:5 20:3
22:3 24:3
26:13,17
27:22 35:17
38:4,6,22
40:22 44:19
45:3,6,12,14,
22,25 51:5
55:7,25
57:11,15
61:21 62:22
64:14 65:4,19

**TRANSCRIPT OF PROCEEDINGS**

66:16

**Uber's**
5:4,5 8:14
15:20 20:20
21:3 32:9
38:20 39:13
64:13

**ultimate**
35:8

**ultimately**
33:22 60:9
61:3 63:5

**umbrellas**
71:25

**unable**
57:11 64:15

**uncertainty**
35:3

**uncomfortable**
5:19

**undeniable**
50:3

**undermine**
51:18

**underscore**
42:23

**understand**
4:9,11 6:8
13:6,22 18:2
20:18 21:2
29:16 54:17
55:8 59:15
68:1,10

**understanding**
22:21 29:18

**understood**

8:23 40:6

**unfair**
12:15 63:6
66:4

**unfairly**
62:3,5

**unheard**
36:5

**uniformly**
31:21

**United**
16:23 49:14

**unopposed**
6:9

**unquote**
29:6,11

**unreasonably**
62:3

**untimely**
36:21

**upcoming**
71:11

**upwards**
9:13 22:19

**utilities**
13:17

—————

**V**

**vacation**
33:5

**valves**
45:5

**variation**
21:9

**vast**
28:13 43:16

**verdicts**
33:17

**versus**
17:14,19

**vet**
23:16

**vetting**
11:11

**viable**
55:13

**vicarious**
53:9

**victim**
28:24

**victims**
15:21,24

**video**
39:1

**view**
18:7 39:11
42:22 54:10
64:20

**violence**
30:17

**virtually**
39:16

**virtue**
61:10

**vital**
57:20

—————

**W**

**wait**
41:17

**waived**
36:18,19

**Walt**
3:12

**wanted**
4:7 25:7
51:10 61:23
62:11 67:19

**wanting**
63:3

**Washington**
48:11

**waste**
18:20

**ways**
23:4 50:5
64:24 68:20

**weather**
3:20

**Wednesday**
3:1

**weeks**
26:14 70:11,
15

**weigh**
44:8 49:9
50:2

**weighing**
32:14 38:9

**weighs**
25:25 58:5

**weight**
26:2 44:15
49:3

**WH**
3:14 5:24

**WHB**
26:6

**WHBE**

3:10

**win**
43:4

**wings**
41:17

**wishes**
5:14 7:13

**witnesses**
11:14,19 12:4
21:18 23:22
26:18,22
27:16 31:11,
12 38:4,18
43:17 44:18
47:10 49:22
57:24 60:10

**women**
24:19 39:13

**word**
22:23 63:24

**words**
61:2

**work**
18:9,11 25:20
39:6 57:14
71:17,21

**working**
38:6

**workload**
52:14

**works**
21:20

**world**
63:21

**worse**
51:18

**worth**
14:1 47:21

**TRANSCRIPT OF PROCEEDINGS**

**wrapping**
  59:22

**writ**
  49:14

**write**
  65:7

**written**
  7:17

**wrong**
  8:7 28:17
  40:15

**wrongful**
  45:7

---

Y

---

**year**
  40:7

**years**
  31:9,19 35:4
  37:12

**yesterday**
  7:17

**yield**
  63:23

**York**
  11:25 12:1,3,
  4,5 13:21
  46:6

**you-all**
  68:4 69:15
  70:2,15

**Yup**
  33:6 36:24

# EXHIBIT 2

F I L E

Superior Court of California
County of San Francisco

DEC 9 - 2021

CLERK OF THE COURT

BY: _____
Deputy Clerk

E-SERVICE
67156612
Dec 09 2021
02:34PM
File & ServeXpress

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10                        DEPARTMENT 613

11

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550(c)] **UBER SEXUAL ASSAULT CASES** | Case No. CJC-21-005188 JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188 ORDER GRANTING PETITION FOR COORDINATION AND REQUEST FOR A STAY |
| This Order Relates to the Petition for Coordination | |

## INTRODUCTION

This matter came on regularly for hearing on November 3, 2021 in Department 613, the

Honorable Andrew Y.S. Cheng, presiding.  William Levin, Samira Bokaie, Walt Cubberly, and Jessica

Dayton appeared for Petitioners.  Robert Atkins appeared for Uber Technologies, Inc.  All other

appearances are as noted in the record.

Having reviewed and considered the arguments, pleadings, and written submissions of all parties,

the Court **GRANTS** petitioners' petition for coordination and **GRANTS** petitioners' motion to stay.

## BACKGROUND

Petitioner requests coordination of eighty-six (86) sexual assault claims against Uber.[1]  These

---

[1] Uber opposes the coordination motion.

- 1 -

1   actions are pending in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties. All

2   eighty-six actions arise out of Plaintiffs' use of the Uber app resulting in alleged sexual assault and/or

3   rape of Petitioner by their Uber driver. All actions allege that Uber failed to implement appropriate safety

4   precautions to protect its passengers, such as adequate screening of their employees, adequate safety

5   features of the application, and adequate training of employees regarding sexual harassment and/or sexual

6   assault. The actions assert claims of general negligence; negligent hiring, retention, and supervision;

7   common carrier negligence; negligent failure to warn and failure to recall; vicarious liability for the torts

8   of Uber's drivers, sexual assault, sexual battery, and false imprisonment; intentional and negligent

9   misrepresentation; negligent and intentional infliction of emotional distress; breach of contract; strict

10  product liability for design defect and failure to warn; intentional concealment; negligence by misfeasance

11  and nonfeasance; and fraud.

12      Petitioners seek to coordinate the San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles

13  actions and ask that the San Francisco Superior Court be designated as the site for the coordinated

14  proceedings.[2]

15                    **STANDARD FOR COORDINATION**

16      A petition for coordination of civil actions must be supported by facts showing that the actions are

17  complex and that the actions meet the standards specified in section 404.1 of the Code of Civil

18  Procedure. (Code Civ. Proc. § 404.) Coordination of civil actions sharing a common question of fact or

19  law is appropriate if it "will promote the ends of justice taking into account whether the common

20  question of fact or law is predominating and significant to the litigation; the convenience of parties,

21  witnesses, and counsel; the relative development of the actions and the work product of counsel; the

22  efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of

23  duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the

24  actions." (Code Civ. Proc. § 404.1.)

25  ///

26

27  [2] The parties also briefed Plaintiffs' two Notices of Potential Add-On Cases for Coordination
    Consideration ("Notices"), filed September 28, 2021 and October 28, 2021. The Notices are properly
28  reserved for the coordination trial judge.

**DISCUSSION**

I.     **Code of Civil Procedure §§ 404, 404.1 Factors.**

The factors under Code Civ. Proc. § 404.1 dictate that coordination is proper.

First, while the eighty-six cases have not all been designed as complex, the Court concludes that they are complex. The actions will likely involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve. They will require management of a large number of witnesses and substantial amounts of documentary evidence. They will involve management of a multitude of separately represented Petitioners. (California Rules of Court, rule 3.400.)

Second, all eighty-six cases[3] share similar facts and issues concerning the same central claims: whether Uber failed to adequately vet and train drivers regarding sexual assault, implement adequate safety measures to protect its passengers from being sexually assaulted, and adequately respond to driver complaints. (Petition, 14.) Other overlapping questions on liability including common carrier liability, vicarious liability, the scope of Uber's duty (if any), Uber's breach (if any), causation, liability of drivers, whether drivers are independent contacts or employees, whether Uber's app is defective, and the impact of Uber's public representations are also present. The Court rejects Uber's arguments that *forum non conveniens*, choice of law, and liability determinations are unavoidably individualized. Rather, liability questions center on Lyft, not its drivers. Further, while *forum non conveniens*, choice of law, and interpretation of Uber's Terms of Use may have individualized components, they address identical threshold and central legal questions that should be decided by one judge.[4] Because the liability questions for each case are similar, parties will likely benefit from uniformly resolving the common and significant factual and legal questions that predominate in all actions. This factor weighs in favor of coordination.

Third, the actions are spread throughout five different counties in California. Specifically, the cases are filed in Sacramento, San Francisco, Santa Clara, Kern, and Los Angeles counties; the bulk of

---

[3] An additional seventy-nine (79) cases have been filed since this petition was filed. (Reply, 4.)

[4] The Court also finds this action substantially similar to the Lyft Rideshare JCCP, such that coordination should also follow here.

*Uber Sexual Assault Cases* JCCP 5188 Order Granting Petition for Coordination and Motion to Stay

1   cases are filed in San Francisco County. (*Id.* at 17.) The convenience of parties, witnesses, and counsel

2   weigh in favor of coordination.

3        Fourth, the California actions are in similarly early stages of litigation. Almost all parties have not

4   taken any depositions or conducted any discovery.[5] (*Id.* at 16.) This weighs in favor of coordination.

5        Lastly, coordination will promote judicial efficiency, streamline discovery among a myriad of

6   Plaintiffs (including avoiding duplicate deposition and trial testimony), facilitate settlement, and eradicate

7   the possibility of different courts deciding on novel and overlapping issues with the same defendants.

8   This factor weighs in favor of coordination.

9        For the reasons stated above, the Court **GRANTS** the petition for coordination in the cases listed.

10             **i.  The Appropriate Situs for Coordination.**

11        Petitioner argues the appropriate situs for assignment of the coordinated proceeding is San

12   Francisco Superior Court. Defendants do not oppose. The relevant factors in determining the site for the

13   coordination proceedings are set forth in Rule 3.530 of the California Rules of Court. The bulk of the at-

14   issue cases were filed in San Francisco County. (Petition at 3.) Petitioners and Defendants counsel are

15   located in San Francisco.[6] Uber's headquarters is located in San Francisco, and many of the likely

16   witnesses, current employees, corporate management, and documentary evidence will be located in San

17   Francisco County. (*Id.* at 16.) The Court recommends that the most appropriate situs for assignment of

18   the coordinated proceedings is San Francisco Superior Court, and the Court of Appeal, First Appellate

19   District, be designated as the reviewing court.

20            **ii.  Request for a Stay Pending Resolution of the Petition.**

21        "When an order granting coordination is filed in an included action, all further proceedings in that

22   action are automatically stayed, except as directed by the coordination trial judge or by the coordination

23   motion judge under (c). The stay does not preclude the court in which the included action is pending from

24   accepting and filing papers with proof of submission of a copy to the assigned judge or from exercising

25

26   [5] The parties that filed actions before May 2021 have conducted some discovery, and those claimants have joined this petition. (Reply, 3-4.)

27   [6] Petitioners' counsel is Levin Simes Abrams, LLP, a firm in San Francisco. Defendants are represented by Buchalter and Paul, Weiss, Rifkind, Wharton & Garrison, LLP. Buchalter is located in Irvine and

28   Paul, Weiss, Rifkind, Wharton & Garrison, LLP is located in San Francisco.

- 4 -

jurisdiction over any severable claim that has not been ordered coordinated." (C.R.C., rule 3.529(b) [emphasis supplied].)  "Pending any determination of whether coordination is appropriate, the judge making that determination *may stay* any action being considered for, or affecting an action being considered for, coordination." (C.C.P. § 404.5 [emphasis supplied].)  In deciding a motion to stay, the judge must determine whether the stay will promote the ends of justice.  (See C.R.C., rule 3.529(c); see also C.R.C., rule 3.515(f), (h).)

The Court stays all included actions until the completion of coordinated proceedings, and the assignment of the coordinated proceeding judge.

## **CONCLUSION AND ORDER**

The Court **GRANTS** the petition for coordination and request for a stay in the Uber Sexual Assault actions and recommends San Francisco Superior Court as the site for the coordinated proceedings and that the Court of Appeal, First Appellate District, be designated as the reviewing court. All further proceedings in the included actions are stayed until and at such time as directed by the coordination trial judge pursuant to California Rules of Court, Rule 3.529(b).  The Petitioners must promptly file a copy of this order in each included action, serve it on each party appearing in the included actions, and submit it to the Chair of the Judicial Council.  (C.R.C., Rule 3.529(a).)

IT IS SO ORDERED.

Dated:  December 9, 2021

ANDREW Y.S. CHENG
Judge of the Superior Court

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)

I, CLARK BANAYAD, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On December 9, 2021, I electronically served the ATTACHED DOCUMENT(S) via File&ServeXpress on the recipients designated on the Transaction Receipt located on the File&ServeXpress website.

Dated:   December 9, 2021

T. Michael Yuen, Clerk

By:   _____
        CLARK BANAYAD, Deputy Clerk